RECEIVED
IN CLERK'S OFFICE

APR 0 3 2014

U. S. DISTRICT COURT
MID. DIST. TENN.

## THE UNITED STATES FEDERAL COURT
## MIDDLE DISTRICT AT NASHVILLE, TENNESSEE

Calvin Tankesly, Jr. )
   Plaintiff )
)
vs. )
)
)
Corrections Corporation of America, )
a Public Held Corporation )
Damon Hiniger, Chief Executive Officer )
of Correction Corp. of America )
Dr. Garriga, A.K.A. John/Jane Doe )
Director Health Services, )
Correction Corp. of America )
Ms. Susan Martin, Nurse Practitioner )
of Correction Corp. of America )
Ms. Karen Orton, Nurse )
of Correction Corp. of America )
Ms. Keaton, Nurse )
of Correction Corp. of America )
Dr. Coble, Contract Doctor for )
Correction Corp. of America )
Lisa Crum, Security Officer )
at Correction Corp. of America )
Jessica McElroy, Grievance Chair )
of Correction Corp. of America )
Daniel Prichard, Assistant Warden )
South Central Correctional Facility )
Arvil Chapman, Warden, )
South Central Correctional Facility )
   Defendant['s] )

CASE NO. _____
U.S.C. 1983 Civil Rights Complaint
**JURY DEMAND**

### VERIFIED CIVIL RIGHTS COMPLAINT JURISDICTION AND VENUE

This is a verified civil action authorized by 42 U.S.C §§ 12101-12213; U.S.C. §1983; Title VII of the Civil Rights Act of 1964; §§ 504 and 704 (a) of the Rehabilitation Act of 1973; 42 U.S.C. §2000e-3(a); 42 U.S.C. §§ 1981 (a) & 1981 2 (b) (3), and the Due Process Clause of the 14th Amendment to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States.

The Court has jurisdiction under 28 U.S.C. §§1331 and 1343 (a) (3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§2201 - 2202. Plaintiff's claim for injunctive relief are authorized by 28 U.S.C §§2283 & 2284 and Rule 65 of the F.R.Civ.P.. Plaintiff also seeks; General, Compensatory and Punitive Damages.

1

## I. PREVIOUS LAWSUITS

**A.** There has been no other litigation in state or federal court relating to the same facts listed herein.

## II. PLACE OF CONFINEMENT

Plaintiff Calvin Tankesly, Jr., is presently housed at South Central Correctional Facility [hereafter SCCF] at 555 Forrest Ave., P.O. Box 279, Clifton, TN 38425.

**II.** **A.** There is a grievance procedure at this Facility.

    **B.** Plaintiff presented the Facts herein to the grievance board at this Facility.

    **C. 1.** Plaintiff cited Deliberate Indifference denying Medical Care, Medical Malfeasance and Medical Negligence in his grievances & Deliberate Indifference.

→ →  **C. 2.** Every Grievance was Dismissed citing Non-Grievable, Appeal was taken.

    **D. & E. N / A**

    **F. 1.** Plaintiff wrote Damon Hiniger, C.E.O. of Corrections Corporation of America, [hereto forth CCA], Dr. Garriga, [A.K.A. John/Jane Doe] Director Health Services for CCA, and several others advising all parties of the Denial of Basic Medical Care under the Deliberate Indifference standard.

    **F. 2.** No one Replied to Plaintiff's numerous Letters requesting Correction.

## III. PARTIES

**A.** **Plaintiff,** Calvin Tankesly, Jr. is at all times mentioned herein the Plaintiff, a prisoner in the custody of the Tenn. Department of Corrections, [hereto forth TDOC], currently confined at South Central Correctional Facility, [hereto forth SCCF]. Plaintiff Calvin Tankesly, Jr. mailing address is: <u>Calvin Tankesly, #90944 P.O. Box 279 at 555 Forrest St. Clifton, TN 38425</u>.

### DEFENDANTS:

**B. Defendant No. 1,** Corrections Corporation of America, [C.C.A.] is a Publicly held Corporation, contracted with the state of Tennessee and TDOC, legally responsible for providing Adequate and Proper Medical Care to Plaintiff through and in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. C.C.A.'s Responsibility is 'aggrandized' through the Contract with the State of Tennessee, and the State Legislature and the TN Dept. of Corrections. Defendant C.C.A. is sued in it's Individual and Corporate Capacity. Defendant C.C.A.'s address is: <u>Corrections Corporation of America, 10 Burton Hills Blvd. Nashville, TN 37215</u>

2

**C. Defendant No. 2,** Damon Hiniger, is the Chief Executive Officer, [hereto forth CEO] of C.C.A.. By Signature he contracted with the State of Tennessee and TDOC, and is legally responsible for overseeing his subordinates, providing Adequate and Proper Medical Care to Plaintiff in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. Damon Hiniger's Responsibility is 'aggrandized' through the Contract with the State of Tennessee and the State Legislature and the TN Dept. of Corrections. Defendant Hiniger is sued in his Individual and Corporate Capacity. Defendant Hiniger's employment address is: Damon Hiniger, C.E.O. C.C.A. 10 Burton Hills Blvd. Nashville, TN 37215

**D. Defendant No. 3.** Dr. Garriga, [A.K.A. John/Jane Doe] is the Medical Director for C.C.A.. By Signature he/she contracted with the State of Tennessee and TDOC and is legally responsible for overseeing his/her subordinates and assuring Adequate and Proper Medical Care of Plaintiff in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. Defendant Garriga's [A.K.A. John/Jane Doe's] Responsibility is 'aggrandized' through the authority of a Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Garriga [A.K.A. John/Jane Doe] is sued in his/her Individual and Corporate Capacity.[1] Defendant Garriga's employment address is: Dr. Garriga, [A.K.A. John/Jane Doe] Corrections Corporation of America, Medical Director 10 Burton Hills Blvd. Nashville, TN 37215

**E. Defendant No. 4.** Susan Martin, ~~was~~ the Nurse Practitioner at South Central Correctional Facility where Plaintiff Resides. By Signature she is legally responsible for assuring Adequate and Proper Medical Care to Plaintiff in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. Defendant Martin's Responsibility is 'aggrandized' through the Contract with the State of Tennessee the State Legislature and the TN Dept. of Corrections. Defendant Martin, is sued in her Individual, and Corporate Capacity. Defendant Martin's employment address is: Susan Martin, Nurse Practitioner: _____

---

[1] Exhibits will show that Plaintiff has written to Defendant['s] Damon Hiniger, C.E.O. of C.C.A., Arvil Chapman, Warden SCCF, Daniel Prichard, Asst. Warden SCCF, and Dr. Garriga requesting the name (Identity) of the Medical Director for CCA to no avail. *For that reason Plaintiff identified* the Medical Director as *Dr. Garriga, and [A.K.A. John/Jane Doe]* until such time as Discovery will permit Plaintiff to Compel the Defendant's to reveal the Identity of the Medical Director for CCA.

Case 3:14-cv-00911   Document 1   Filed 04/03/14   Page 3 of 37 PageID #: 3

**F. Defendant No. 5,** Defendant Orton is a Nurse at SCCF the Correctional Facility where Plaintiff Resides. By Signature she contracted with C.C.A., TDOC and the State of Tennessee, and is legally responsible for providing Adequate and Proper Medical Care to Plaintiff in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. Defendant Orton's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Orton, is sued in her Individual, and Corporate Capacity. Defendant Orton's employment address is: Karen Orton, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425.

**G. Defendant No. 6,** Defendant Nurse Keaton is a nurse at SCCF the Correctional Facility where Plaintiff resides. By signature she contracted with C.C.A., T.D.O.C. and the State of Tennessee, and is legally responsible for providing Basic and Adequate Medical Care to Plaintiff in accordance of the Eighth and Fourteen Amendment of the United States Constitution. Defendant Keaton's responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Keaton, is sued in her Individual and Corporate Capacity. Defendant Keaton's employment address is Ms. Keaton P.O. Box 279 at 555 Forrest St. Clifton, TN 38425.

**H. Defendant No. 7,** Defendant Dr. Coble is a Contact Physician at SCCF the Correctional Facility where Plaintiff Resides. By Signature he contracted with C.C.A., TDOC and the State of Tennessee, and is legally responsible for providing Basic and Adequate Medical Care to Plaintiff in accordance of the Eighth and Fourteenth Amendment of the United States Constitution. Defendant Coble's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Coble, is sued in his Individual, and Corporate Capacity. Defendant Coble's employment address is: Dr. Coble, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425.

**I. Defendant No. 8,** Lisa Crum, a security officer at SCCF was and is assigned to Discover housing unit, the housing unit where Plaintiff resided during his Cancer treatments and is legally responsible for assuring the "Security Aspects" of Plaintiff interest, through in accordance of the Eighth and Fourteenth Amendment of the United States Constitution.

4

Defendant Crum's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Crum is sued in her Individual, and Corporate Capacity. Defendant Crum's employment address is: Lisa Crum, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425.

**J. Defendant No. 9,** Jessica McElroy, is the Grievance Chair at SCCF the facility Plaintiff resides, and is legally responsible for assuring Due Process Protections of the Constitution providing Plaintiff with Redress, via Grievance Procedures including hearings via the authority of Contractual Agreement with the State of Tennessee in accordance of the; Sixth, Eighth, and Fourteenth Amendment of the United States Constitution. Defendant McElroy's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant McElroy is sued in her Individual, and Corporate Capacity. Defendant McElroy's employment address is: Jessica McElroy, Grievance Chair, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425

**K. Defendant No. 10,** Daniel Prichard, Assistant Warden at SCCF the facility Plaintiff resides, is legally responsible for overseeing his subordinates and the; Safety, Proper, and Constitutional Treatment of Plaintiff in accordance of the United States Constitution. Defendant Prichard's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Daniel Prichard, is sued in his Individual, and Corporate Capacity. Defendant Prichard's employment address is: Daniel Prichard, Asst. Warden, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425

**L. Defendant No. 11,** Arvil Chapman, Warden at SCCF the facility Plaintiff resides, and is legally responsible for overseeing his subordinates and the; Safety, Proper, and Constitutional Treatment of Plaintiff in accordance of the United States Constitution. Defendant Chapman's Responsibility is 'aggrandized' through the Contract with the State of Tennessee, the State Legislature and the TN Dept. of Corrections. Defendant Arvil Chapman, is sued in his Individual, and Corporate Capacity. Defendant Chapman's employment address is: Arvil Chapman Warden, P.O. Box 279 at 555 Forrest St. Clifton, TN 38425

5

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

All claims raised herein have been submitted through the Administrative Grievance Procedure, Policy 501.01 as Required pursuant to; 42 U.S.C. §1997 e (a): *Booth v. Churner*, 532 U.S. 731, 733 (2001); *Brown v. Toombs*, 139 F.3d 1102, 1103-04 (6th Cir. 1998). Defendant McElroy, Grievance Chairperson collectively Dismissed the "All of Plaintiff's Grievances" as non-grievable with the exception of one, appeal was taken. [Exhibits, A, B, C, D E, F, G] Grievances citing the violations were Not Logged in, or Processed to keep from exposure off the books hidden from T.D.O.C..

Plaintiff filed Grievances on Issues that he felt **conformable or Safe** in filing from severe retaliation without fear of retribution from the staff, pursuant to: PLRA> 42: §1997e Notes to Decisions, which holds:

> 1. Generally. Civil Rights of Institutionalized Persons Act which authorizes states to set up prison grievance procedures, is exception to normal non-exhaustion rule and is not intended to apply when civil rights actions raises issues which cannot, in all probability, be resolved by grievance resolution system,...

Defendant McElroy, refused to process Plaintiff's grievances in accordance with Policy 501.01 denied him his Right to Exhaust, Due Process and First amend. Right of Access to the Court refusing Plaintiff a hearing. [see attached Affidavit] Several Grievances were shared among security staff including Defendant Prichard, in violation of the Confidentiality clause of Policy 501.01 §VI. K.1. "Records concerning inmate grievance shall be kept confidential.", wherein retribution followed.

Defendant McElroy, summonsed Plaintiff to the Grievance Board at 9:00 am, with fully aware that Plaintiff was at Maury Regional Medical Center in Columbia TN for treatment every day five (5) days a week from 7:00 am and 10:30 am.

Plaintiff is being denied copies of records in Defendant's possession, reflecting support of denying Plaintiff Medical Treatment and After Care, deliberately complicating his Exhaustion requirements, denying Plaintiff Grievance Hearings, the dismissal of his Grievances as non-grievable and denying the appeal of those grievance.

6

Named Defendant's are continuing to manipulate the process of Plaintiff's redress in their Deliberate attempt while under the impression that their interference will prevent the Exposure of their Civil Rights violations. Plaintiff has No Other, Available or Adequate Remedy. Attached Exhibits, Letters and Grievances will show Plaintiff's diligent effort to inform the defendants of their Violation of his protected Rights to Basic, Adequate Medical Care and how their Deliberate Actions have caused Plaintiff's to Suffer Needlessly, severely diminishing Plaintiff's quality of life.

## V. STATEMENT OF CLAIM

1. Plaintiff continues to suffer as a driect result of Defendant's failure to Diagnose a Suspicious Mass in his neck over a period of ten (10) months, that developed into a Cancerous Tumor. Plaintiff repeatedly requested to see a doctor and even contacted every Corporate and state official that he knew to contact, requesting Medical attention. Defendant's failed to Assess Plaintiff's medical needs, failed to provide Proper Medical Treatment and Denied proper After Care while actively Sabotaging his Recovery, following Aggressive Radiation Treatments. The record will show how by the conscious acts and omissions of the named Defendant's acting under "color of state law" contributed to the development of Stage 4-A Squamous Cell Tonsil Cancer. Plaintiff continues to suffer from a Severely Diminished Quality of Life' as a result of medical negligence. Defendants refused to order a biopsy, refused to refer Plaintiff to a doctor, in spite of Plaintiff informing the Defendant's of a History of Family Cancer. Defendant's ignored the Real Danger and Threat to his life, that Cancer brings, when neglected this making this a Wanton, Capricious and Arbitrary act of Deliberate Indifference. Plaintiff avers the development of this cancer could have been averted had Defendants diagnosed this Mass in the ten (10) months that Plaintiff repeatedly requested a diagnosis for and/or to see a doctor.

7

2. Plaintiff requested a diagnosis between <u>July 2012</u> and <u>May 2013</u> as this concern continued to go ignored as a direct result of the Deliberate Indifference by Defendant's; C.C.A., Hiniger, Garriga, [John/Jane Doe], Martin, and Orton. [Exhibit #'s 1, 2, 3, 4, 5, 6] and Greivances [Exhibits, A B, C, D E, F, G] Collectively.

3. In May 2013 Plaintiff was permitted to see a Dr. Coble, who ordered a biopsy following nine months visiting the clinic asking for an answer to this Mass.

4. On May 22, 2013 Dr. Coble informed Plaintiff that the undiagnosed Mass had grew on his right tonsil and developed into Tonsil Cancer.

5. Defendant Martin and Orton's refusal to Diagnose this Mass, order laboratory work or allow Plaintiff to see a doctor **Contributed to** the development of Throat Cancer.

6. Defendant['s] Martin and Orton, repeatedly stated to Plaintiff:

<u>"...not to worry, it was nothing to be concerned about"</u>.

7. Defendant's violated the protocol in accordance with CCA Policy 113.11, not referring Plaintiff to a Doctor for a diagnoses, i.e.; C.C.A.'s Clinical and Nursing Protocols, states in relevant part;

> §II. PURPOSE: To establish safe and effective medical treatment of incarcerated offenders by establishing uniform guidelines for the identification and care of minor and emergency situations.

Those guidelines were established by Defendant's; CCA, Hiniger, and/or Garriga, [John/Jane Doe], (or their protégé) under Medical Department Policy 113.11

§IV. DEFINITIONS: D. SOAP Format: A Medical clinical assessments:

S: = Subjective-patient reported complaint(s), history and symptoms
O: = <u>Objective-examiniations and diagnostic tests</u> **[Emphasis added]**
A: = Assessment-diagnostic impressions, rule-outs
P: = Plan-<u>Treatment plan; intervention, follow-up</u> **[Emphasis added]**

8. Furthermore, Defendant's; C.C.A., Hiniger, and/or Garriga, [John/Jane Doe], developed a policy where all nurses including Defendant's Martin, and Orton, upon employment signed 'letters of agreement' holding that they understood their duties and responsibilities in treating prisoners i.e.,

8

**A.** 3. Nursing Protocols. All health facilities shall maintain a current copy of the TDOC approved nursing protocols in their Health Services unit Manual. Nursing protocols shall have a cover sheet *which serves as a letter of agreement* between the physician and the appropriate nursing staff.

**9.** Defendant's failed to provide an Objective examination, consciously misinformed Plaintiff telling him "...not to worry...", while this mass develop into Cancer. This deliberate and conscious failure to follow protocol, designed to protect Plaintiff or provide a Treatment plan, is in Violation of the TN and U. S. Constitution's, against Cruel and Inhumane Treatment.

**10.** In April 2013 Plaintiff *returned to medical,* complaining of this lump in his right neck, insisting that Defendant's Martin and Orton step aside demanding to see a doctor where this mass now blocked his ability to swallow.

**11.** At every visit to the clinic for ten (10) months Plaintiff requested to see a doctor, Defendant's Martin and Orton continued their deliberate campaign to misdiagnose this ailment and deny Plaintiff, Basic, Adequate Medical Care.[2]

**12.** Plaintiff had 'no option' but to trust Defendant's Martin and Orton's choice not to order lab work, conduct test or permit Plaintiff to see the doctor.

**13.** On May 3, 2013 Doctor Coble examined *suspicious* mass *in* Plaintiff's neck that had gone undiagnosed and ordered a Cat Scan.

**14.** On May 7, 2013 the Cat Scan determined a biopsy was needed and on May 17, 2013 Dr. Parey, E.N.T. Specialist took a sample to biopsy.

**15.** Defendant's Martin and Orton denying Plaintiff's medical needs **contributed to** the developed of Stage 4-A Tonsil Cancer, identified by Oncologist Dr. Sattasiri.

**16.** On May 22, 2013 Dr. Coble informed Plaintiff that he had throat Cancer that developed on his tonsil, from this Undiagnosed Mass in his neck.

---

**2.** Defendant's C.C.A., Hiniger, and Garriga have developed a medical dept. protocol and/or a *Standing Policy and Practice* to keep inmates from seeing the doctor, 'unless they are unconscious, or bleeding to death'.

9

17. On May 30, 2013 Dr. Messenger and Dr. Sattasiri determined due to the late stage of Plaintiff's cancer an Immediate and *"Aggressive Treatment Plan"* of Chemotherapy and Radiation was needed.

18. In spite of the Urgency of this treatment the plan was delayed for more than sixty-five (65) days, as this Cancerous Tumor continued to grow.

19. Plaintiff was "Denied" the option of a Second Opinion, wherein he was told *"...if you want to live you need this treatment 'right away'"*.

20. On July 17, 2013 Dr. Messenger informed Plaintiff of the difficulty in his effort to began treatment as: "...looking into a Black Hole because of the named *Defendant's unnecessary complications*", delaying his treatments.

21. It was discovered that this 'potential deadly delay' for treatment was due to Corporate efforts to transfer Plaintiff to a state prison to circumvent "treatment cost".

22. Plaintiff's first Chemotherapy Treatment was to start Aug. 05, 2013, DELAYED another week because the Defendants negligence continued, yet again when the Defendant's "failed to administer Steroid Medication, the night before and the morning of Plaintiff's scheduled Chemotherapy treatment".

23. Aug. 06, 2013 ★ Plaintiff's First Radiation treatment was administered, seventy six (76) days after being informed of his Cancer, more than thirteen (13) months after Plaintiff pled for a diagnosis of the 'Suspicious Mass' in his neck.

24. Aug. 12, 2013 Plaintiff's First Chemotherapy treatment was administered more than eighty three (83) days after being informed of his Throat Cancer.

25. While the Defendant's DID NOT give Plaintiff Cancer their actions and/or inactions however *contributed to* the unabridged growth: due to their failure to:

(a) Diagnosis the Mass in Plaintiff's neck for ten (10) Months,

(b) their failure to "Timely Treat" Plaintiff after it was determined to be cancer,

(c) focusing their "PRIMARY INTEREST" in Protecting Share Holders Profits,

(d) their effort to transfer Plaintiff to a state Prison delaying Plaintiff's treatment,

10

all of which Directly resulted in *'severely diminishing" Plaintiff's quality of life*, Unnecessarily causing Plaintiff to suffer wherein their acts were Maliciously Arbitrarily and Capricious and clearly demonstrative of an Obdurate and Wanton Desire to Plaintiff's Life threatening disease, as clearly defined under the deliberate indifference standard.

26. Plaintiff avers that this Cancerous Tumor could have been prevented with an earlier diagnosis, allowing for the removal of Plaintiff's Tonsils, wherein Defendant's Conscious Choice Not to Act, was an act of 'deliberate indifference' in their *refusal to schedule Plaintiff to see a doctor* between July 2012 and May 2013,

27. Plaintiff avers as a Direct Result of the Defendant's Deliberate, Capricious, and Malicious acts and omissions, contributed to this growth, that *Realistically could have been prevented*, with a timely diagnosis.

28. On August 22, 2013 Dr. Sattasiri prescribed Plaintiff a widely used common medication for Cancer Patients, 'Timed Release Morphine'. Defendant Coble prescribed Loritabs, 12 hours apart, *Causing Plaintiff to Suffer*, **continuously and needlessly**.

29. Defendant Coble has consciously and continues to contributed to Plaintiff's diminished 'quality' of life, causing unnecessary and *Avoidable Suffering*, by refusing to administer prescribed medications of Plaintiff's Ongcolist, Dr. Sattasiri.

30. Three (3) weeks into Radiation treatments the lining of Plaintiff's throat was *Burned RAW* from the inside out, Radiation Blisters covered his tongue and sores throughout his mouth and palate. Plaintiff has been prohibited from eating solid foods even, the ability to swallow without extreme pain.

31. Plaintiff was having such difficulty swallowing water to take his pain medication that Dr. Coble ordered his medications from pill to liquid form.

32. On August 28, 2013 Dr. Messenger ORDER a Feeding (or PEG Tube) to be surgically implanted, to ease Plaintiff's pain and assure proper nourishment, maintain his overall health and allow for some dignity through these treatments.

11

by delaying the placement of this Peg Tube *until AFTER* his condition **eased naturally** from his body adjusting to this tortuous treatment.

34.	On September 16, 2013 Dr. Amit Choski surgically implanted the peg-tube, Eighteen (18) days **AFTER** Ordered, while Plaintiff suffered sever weight and muscle loss from lack of nourishment, and Avoidable stress.

35.	On January 03, 2014 Dr. Amit Choski surgically removed the peg-tube, One Hundred and Ten (110) days after implanted, while *never being used on a Single Occasion*, causing additional unnecessary weight and muscle loss.

36.	Plaintiff went to the Clinic daily to flush his Peg Tube, a note was Posted instructing that, "No One to was to use Tankesly's Pet Tube", by Wendy Ashe.

37.	Dr. Choski following the removal of the Peg Tube, prescribed monitoring the surgery area and changing the bandage daily at South Central Prison.

38.	During the two (2) weeks between January 03 - 17, 2014 Plaintiff's surgical area was NOT monitored One Time, and the bandage were NOT changed Once.

39.	Plaintiff continues to go without nourishment required for a proper Recovery "Now" (5) Months after his last treatment, healing of Radiation Sores in his mouth and Radiation Blisters on his tongue is **Delayed** due to "Lack of Nourishment".

40.	Wendy Ashe, and Defendant Coble arranged for a Liquid Diet through the Food Service Supervisor and Defendant Prichard, consisting of Chicken and Beef Broth, both **[Cooking Broths]** scheduled three (3) times a day. Plaintiff seldom received this sack twice a day, quite often NEVER receiving this sack.

41.	Plaintiff was instructed to mix with Hot Water and drank, the **Cooking Broth**, LACKING any Nutritional Value and was **NOT INTENDED** to be drank.

42.	Ms. Ashe ordered *Flavored Ensures* for Plaintiff Instructing all Nursing Staff to issue these Ensures to Plaintiff ONLY posting an 8" by 11½" Notice at the Medication Window, to assure sufficient nutrition for Plaintiff's Recovery.

12

**43.** Defendant's Orton and Keaton set out to Sabotage Plaintiff's Recovery defying their supervisors directive by distributing his *Flavored Ensures* to every inmate prescribed Boost Nutrition Drinks, deliberately leaving Plaintiff with NO Nutritional Intake for as long as 30(+) days which continues as this claim is being prepared.

**44.** This campaign to Sabotage Plaintiff's Recovery has only worsened in the later stages of his Struggle to Recover. Defendant Keaton in February and March 2014, [the nurse who sets appointments for Defendant Cobel], monitored Plaintiff's Trust Fund, noting Plaintiff's spending, and without a clue, Deliberately MISINFORMED Defendant Coble that Plaintiff was eating, causing Defendant Coble to discontinue Plaintiff's Only Nutrition **without examining Plaintiff or Monitoring his Recovery progress,** leaving Plaintiff with No Nourishment. This is the same practice that has left Plaintiff with Zero Nutritional intake for twenty five (25) to thirty (30) days straight, multiple times.

**45.** Plaintiff purchased commissary he uses to illegally purchase [or Trade] [3.] for Kitchen Items, i.e.: **Bread, Butter and Oatmeal** for survival, due to the acts of the named Defendants. Plaintiff has and continues to Struggled for his Life to Recover from massive weight and muscle loss that Defendant Coble refuses to treat.

**46.** To survive Plaintiff spreads Butter on the Bread, heats in Microwave until melted, dip in warm coffee, places in mouth, then Literally Washed Down his Throat, [*with 8 oz. of water for every 2 slices of Bread*] to avoid contact with the Radiation Riddled Sores on his Tongue, that prohibits him from eating. Plaintiff uses Lidocaine Hydrochloride [Sub for Xylocaine Viscous] to numb his tongue multiple times during this, what became a *"Ritual to Survive"*.

---

[3.] Rather than Monitor Plaintiff's Health and Recovery Progress Defendant Keaton Underhandedly monitored Plaintiff's "Trust Fund' weekly. Without first examining Plaintiff; for Tongue Inflammation and Radiation Sores Defendant Keaton Deliberately Misinformed Defendant Coble and told him that Plaintiff was eating and didn't need the Ensures. Plaintiff supplied an inventory of his Commissary explaining that Commissary purchase was used to *"TRADE FOR BREAD, BUTTER, and OATMEAL"*, **for his Survival,** and what Inventory was not used was still in Plaintiff's cell. Defendant Keaton supplied this LIE to Defendant Coble was an effort to distract him from or to justify their unauthorized distribution of Ensures purchased for Plaintiff, as she continues to sabotage Plaintiff's Recovery. **Monitoring Plaintiff's Trust Fund was More Important than Monitoring his Health.**

Case 3:14-cv-00911 Document 1 Filed 04/03/14 Page 13 of 37 PageID #: 13

**47.** Plaintiff has been forced on four (4) occasions between Oct. 01, 2013 and Mar. 15, 2014 to provide for himself, in the same manner during his Recovery. *Fighting to survive* leaving Plaintiff to Struggle for his Life in his slowed Recovery.

**48.** Medical Policy requires specific medications to be Crushed before distributed. Defendant Orton crush *'something other than Plaintiff's Pain Medication'* before Plaintiff arrived at the Medication Window, *substituting his Loritab pain medication* with unknown substance Causing Plaintiff to suffer Severe Pain in his; throat, neck and mouth from Radiation Blisters on his tongue, the Pain would Not Subside, his Tongue *Continued to Swell* without his Pain Medication through the night!

**49.** Plaintiff documented Events supporting a deliberate effort to Sabotage his Recovery by Defendant's Orton, Keaton and others. More particularly their effort's to go *'out of their way'* to complicate Plaintiff's Recovery: **(A)** deliberately bringing **Stress** on Plaintiff SLOWING his Recovery, **(B)** Substituting Cancer Pain Medications with unknown substance, **(C)** refusing to deliver chronic medications, that as a nurse knows would cause unnecessary pain from severe Acid Reflux, **(D)** defying their supervisors directive distributing Plaintiff's Ensures/Boosts **(E)** refused to communicate with Plaintiff, when Paintiff inquired about his medication, and **(F)** misinforming Defendant Coble, causing him to *alter his treatment*, **(G)** posting 'notes' on a bill board stating; *"Tankesly gets No Boost"* with a Smiley Face, collectively supporting Plaintiff's claim of their deliberate indifference to Plaintiff. Behavior nurses with twenty years experience, **Knows is Morally Incomprehensible**. [Exhibit's 7, 8, 9, 10]

**50.** Without the deliberte acts of Defendant's Orton and Keaton, distributing Plaintiff's Ensures his Recovery would be further **'Advanced'**. With their "Sole Access" to Defendant Coble Plaintiff was never giving an opportunity to be First Examine before discontinuing his Ensures or lowering the 'little pain medication' Defendant Coble was providing. Without the Deliberate Acts of Sabotage by Defendant's Orton and Keaton, Plaintiff's Recovery would be 90% ahead of where it is

14

## EPITOMIZED

A 'timely diagnosis' by either Defendant's Martin or Orton, Plaintiff would not have suffered throat cancer, timely doctor review Defendant Coble would have discovered the need for Plaintiff's tonsils to be removed, prohibiting the growth of the Stage 4-A Tonsil Cancer. This assessment came from both Dr. Sattasiri, Oncologist and Dr. Messenger, Chemotherapy Specialist, as they explained the Treatment options.

For nearly a year Plaintiff pled for a diagnosis and/or requested to see a doctor, as Defendant's Martin and Orton repeatedly told Plaintiff that the suspicious mass in his neck was "...nothing to be concerned about...". They refused to order lab work, or schedule Plaintiff to see a doctor. The standing 'Policy Practice', of Defendant's C.C.A., Hiniger, Garriga, Martin, Orton, Prichard and Chapman is, "...if they breathing, or not bleeding to death, don't bother...", as if Pain, Suffering or the need for medical care is secondary to protecting their Profit Margin for defendant C.C.A. [A For Profit Corporation]. Defendant C.C.A. actually has a 'bonus system' that encourages negligence, the more savings each Department manages, the larger their annual bonus, a built in Inducement to deny, Basic, even Vital Life Threatening Medical Care. More than twenty weeks following Plaintiff's Radiation Treatment, his throat has what feels like a bowl at the back of his throat. This area prohibits pills, even liquids from free flowing down his throat collecting in this 'bowl' like area. Plaintiff has difficulty with his sinus', as Plaintiff drinks from a cup, liquid flows from: 1. Cup to Mouth, 2. Mouth to Throat, 3. Throat to Nostril, 4. Nostril back into Cup, *without feelings* or *warning*. Defendant Coble summons Dr. Conway from a state prison. Dr. Conway felt Plaintiff's neck, asked eight eight (8) to ten (10) questions then left. Three (3) days later Defendant Coble lessened Plaintiff's Pain Medication without first examining him. On March 20, 2014 Defendant Coble explained Dr. Conway's visit as: "...I was trying to get him to transfer you to a 'fine state prison'".

15

Two (2) weeks later Dr./Defendant Coble stopped Plaintiff's Ensures, again without first examining Plaintiff for his, abnormally slow Recovery, the result of specific nurses acts of Sabotage, and his Constantly failing to provide Plaintiff with Nutrition, [Ensures] and Dr./Defendant Coble Lowering Plaintiff's pain medication an changing Orders time and again without first examing Plaintiff to assure the need for pain medication and/or nutrition is actually needed before altering his orders.

Defendant's C.C.A., and Coble are not equipped to provide the medical needs of Plaintiff or any cancer patient. Defendant's C.C.A., Hiniger and Garriga consistently delays the approval of necessary funds for *every individual medical need*, resulting in 'essential treatment' being delayed, often completely denied. Plaintiff is and has been forced to Endure this "A typical significant hardship" for months while Corporate continues time and again to circumvent the cost associated with his Cancer Treatment and After Care, leaving Plaintiff to SUFFER from their negligence.

Defendant Coble, refuses to assist Plaintiff for problems arising from his cancer treatment during his recovery. Plaintiff has submitted eight request to see Dr./Defendant Coble and Defendant Keaton actively blocks Plaintiff from seeing him to address issues Plaintiff is discovering for the first time, as a cancer patient. It takes 10 to 14 days, [while Plaintiff is forced to suffer], before he can see Dr./Defendant Coble who REFUSES to provide Plaintiff with any Medical Care, Monitoring or After Care[4].

Dr./Defendant Coble has told Plaintiff that, "he is NOT my doctor, I need to address my issues to Dr. Sattasiri or Dr. Messenger", both specialist who did NOT Sign a Contract with the State of TN or the TN Dept. of Corrections to assure Plaintiff's Medical Needs, both who are NOT available to Plaintiff, who is incarcerated.

---

[4]. At a meeting Defendant Coble, Wendy Ashe, Mr. Lambert and Cliff meet with Plaintiff where Defendant Coble, [a contract prison Doctor] stated with anger, "I'm not your Cancer doctor, you need to see the doctors in Columbia". Plaintiff is incarceated an unable to 'Pick up a Phone' or 'Jump into his automobile' and see his doctor in Columbia, for *PAIN RELIEF*, as Plaintiff continues to suffer.

16

## Defendant's Individual, and Corporate Liability
## Acting 'Under the Color of State Law'

### A. Defendant No. 1

Corrections Corporation of America, a Publicly held Corporation contracted with the TN Dept. of Corrections through the State Legislature acting as an entity of the State of Tennessee. C.C.A. is legally responsible for providing Plaintiff with Basic and Adequate Medical Care. Defendant C.C.A's Responsibility is aggrandized through the authority and Conditions of their contract, with the State of Tennessee and Dept of Corrections which states implicitly that inmates "will receive":

> "...a **level and quality of services** which are at least equal to those which would be provided by the state in accordance with the provisions of §41-24-105," [i.e.; TCA §41-24-104(c)(2)(A)]

Defendant C.C.A. a Corporation has acted with malice, demonstrated Obdurate and Wanton desire to Plaintiff's 'Urgent Medical Needs', ignoring the urgency of Plaintiff's medical condition, refused to diagnose a *'Preventable'* "growing cancerous tumor" in their Primary interest of 'profits' for a Publicly held 'for profit Corporation' resulting in Cruel and Unusual Punishment. The deliberate acts identified herein have caused Plaintiff to suffer needlessly, therefore, Defendant C.C.A. is liable under the Deliberate Indifferent standard, as established in *Monell v. Department of Social Sevices*, 436 U.S. 658 (1978) and in Violation of the Eigth and Fourteenth Amdnemendment of the Tenn. and United States Constitution['s].

Furthermore, Defendant C.C.A. has a blanket *"Standing Policy and Practice"* that encourages departmental 'savings' in Exchange for Year End Bonus, over providing needed medical care. This *Standing Policy and Practice* is wildly Publicized throughout Defendant C.C.A.'s Facilities, across America.

### B. Defendant No. 2,

Damon Hiniger the C.E.O. of C.C.A. is legally responsible for all employees of C.C.A. and South Central Correctional Facility whose responsibility includes but is not limited to the Medical Needs and Assuring the Humane Treatment of Plaintiff.

17

Defendant Hiniger has failed to oversee his staff, assure their compliance with the Contract agreed to by his signature between the State of TN, the State Legislature, TDOC and C.C.A., and the U.S. Constitution. Defendant Hiniger, negligently failed to assure his staff at SCCF complied with TN Statute established by TCA §§4-3-603 and 4-3-606 and Departmental CCA Policy 113.11 Clinical and Nursing Protocols, which states;

> II. PURPOSE: To establish safe and effective medical treatment of incarcerated offenders by establishing uniform guidelines for the identification and care of minor and emergency situations.

Defendant Hiniger failed to ensure Plaintiff's essential, 'life saving' and timely Medical Care, deliberately delayed essential Cancer Treatments, [after diagnoses of a Cancerous Tumor] while permitting his subordinates to work diligently and *without* *"Time Restraints"* to find a way to defer their cost to state tax payers, by transferring Plaintiff to a state facility, without concern of potential harm done to Plaintiff's: Health, Quality of Life or Suffering due to their misplaced priorities.

Defendant Hiniger's Malicious, and Arbitrary Acts of deliberate indifference, Realistically contributed to a "Potentially Deadly Delay" in arresting the spread of this cancer possibly contributing to the continued Growth of this Tumor, to additional areas of Plaintiff's body, in the 'sole interest of *protecting C.C.A. Profits*'. Defendant Hiniger acting as the C.E.O. of C.C.A. played a 'direct role' in C.C.A.'s blanket "standing" *Policy and Practice* that encourage departmental 'savings' in Exchange of Year End Bonus, over providing needed medical care.

By these acts, Defendant Hiniger and his Staff, Sanctioned Civil and Constitutional Rights Violations of Plaintiff, under Article['s] 8 and 14 of the United States Constitution, against unnecessary Cruel and Inhumane Punishment.

### C. Defendant No. 3,

Dr. Garriga, [A.K.A. John/Jane Doe] Medical Director for C.C.A. at SCCF and *believed to be*, responsible for approving Expenditures for Plaintiff's Treatment.

18

By Contract Dr. Garriga, [A.K.A. John/Jane Doe] is legally responsible for assuring, Basic, and Adeqate Medical Treatment of Plaintiff. His/her responsibility includes but is not limited to Assuring the **Humane Treatment** of Plaintiff. Defendant Garriga [A.K.A. John/Jane- Doe] failed to oversee his/her staff, who under his/her [or others] directive, attempted to transfer Plaintiff to a state facility, to 'defer' the expense of Plaintiff's; vital, Life Saving, Chemotherapy and Radiation Treatment.

Delaying Plaintiff this 'vital treatment' timely, to prevent the possible spread of his cancer, in the 'sole interest of protecting C.C.A. Profits', is Immoral and Unethical in the Medical Profession. Furthermore, such Deliberate and Arbitrary Acts are Unconstitutional under the Eighth Amendment of the United States Constitution against unnecessary Cruel and Inhumane Punishment, through the Fourteenth Amendment of the United States Constitution. This Immoral and Unethical, Arbitrary and Capricious act; **"Potentially a Deadly Delay"** contributed to the deminished 'quality' of life for Plainiff.

Defendant Garriga, [A.K.A. John/Jane Doe] as the Medical Director for C.C.A., a "Private for Profit Corporation", and as a Medical Professional Arbitrarily and Capriciously *set aside his/her Moral Compass* in the 'interest of profit', by failing to provide Plaintiff basic and 'timely' Medical Treatment intrusted to him/her and his/her staff. Defendant Garriga [A.K.A. John/Jane Doe] Sanctioned Civil and Constitutional Violations of Plaintiff's Protected Constitutional Rights, under Article['s] 8 and 14 of the U.S. Constitution, to protect C.C.A. Profits'.

### D. Defendant No. 4,

Susan Martin, was the Nurse Practitioner at South Central Correctional Facility and her responsibility is to provide Basic, Adequate, and Proper Medical Treatment of Plaintiff. She is entrusted to assess, diagnosis and follow up with the necessary care. She is responsible for identifying, diagnosing, and implementing Proper Medical Treatment of Plaintiff's Medical concerns.

19

She failed to follow her protocol and assure responsibilities intrusted to her, violating her oath to provide Plaintiff appropriate medical care. Defendant Martin did not follow the guidelines established by her superiors, Defendant['s]; C.C.A., Hiniger, Garriga, [A.K.A. John/Jane Doe] and Ashe, as outlined in: Policy 113.11 Clinical and Nursing Protocols, previously identified i.e.; S.O.A.P.. Defendant Martin failed to follow protocol, i.e.; S.O.A.P. refused to further Plaintiff's assessment refusing to schedule him to see a doctor, and by her actions *contributed to* the growth of a Cancerous Tumor in Plaintiff's throat, an actionable decision established under the Deliberate Indifference standard of denying medical treatment, that she agreed to by Contract as an employee of CCA and treatment that is protected by Statute and the U.S. Constitution.

Defendant Martin's failure to ...provide an Objective examination" allowed for a Cancerous Tumor to develop that was 'Preventable', and caused Extraordinary and Unnecessary; Emotional, Psychological, Physical Pain, and Anguish, diminishing Plaintiff's 'Quality of Life'. Under the Deliberate Indifferent" standard Defendant Martin Violated Plaintiff's Constitutional Rights under Article['s] 8 and 14 of the United States Constitution.

## D. Defendant No. 5,

Karen Orton a nurse at South Central Correctional Facility where Plaintiff resides, and her responsibility is to provide Basic, Adequate, and Proper Medical Treatment of Plaintiff. Defendant Orton is entrusted to assess, diagnosis and follow up with the necessary care. She is responsible for identifying, diagnosing and implementing Basic Medical Care of Plaintiff's Medical needs, scheduling Plaintiff to see a doctor when necessary. Defendant Orton failed to follow her protocol and assure responsibilities intrusted to her, violated her oath to provide Plaintiff appropriate medical care.

20

Defendant Orton did not follow the guidelines established by her superiors, Defendant['s]; C.C.A., Hiniger, Garriga, [A.K.A. John/Jane Doe] and Ashe, as outlined in: Policy 113.11 Clinical and Nursing Protocol. Defendant Orton failed to follow protocol, i.e.; S.O.A.P. refused to further Plaintiff's assessment in refusing to schedule Plaintiff to see a doctor, and by her actions *contributed to* the growth of a Cancerous Tumor in Plaintiff's throat, an actionable decision established under the Deliberate Indifference standard, denying medical treatment. Defendant Orton agreed by Contract as an employee of CCA denying rights protected by Statute and the U.S. Constitution. Defendant Orton's failure to provide an Objective examination allowed for a Cancerous Tumor to develop that was 'Preventable', and caused Extraordinary and Unnecessary; Emotional, Psychological, Physical Pain, and Anguish, diminishing Plaintiff's 'Quality of Life'. Under the Deliberate Indifferent" standard. Defendant Orton acted deliberate and with Malice to cause unnecessary and additional Pain and Suffering on Plaintiff in a Conscious, Wanton, and Arbitrary attempt to Sabotage Plaintiff's Speedy and Unabridged Recover by "Actively" causing Plaintiff to go WITHOUT Nourishment during his Recovery.

Defendant Orton consciously and deliberately defied her Supervisor's Directives Not to distributed Ensures ordered for Plaintiff to other inmates throughout the prison. By these Acts and Omissions Defendant Orton Knowingly and with Malice caused Plaintiff to be without Any Nutrition, many times for more than thirty days, at a point that was Essential for his Proper Return to Health and well Being during his Recovery. Please see [Exhibit's 7, 8, 9, 10] Grievance [Exhibit G]

Defendant Orton knowingly, deliberately and with Malice consciously denied Plaintiff essential Pain Medications Crushing an *unknown substance* in place of his Loritab, leaving Plaintiff to **"INHUMANELY SUFFER"** for 12 to 14 hours between medication call while Recovering from Cancer Treatments "Without" his Pain Mediction. [Exhibit 11]

21

Defendant Orton also knowingly and with Malice denied Plaintiff Medications for his Acid Reflux deliberately Refused to Deliver those Medications during a prison lockdown, leaving Plaintiff to suffer "INHUMANELY" for nearly two weeks.

Defendant Orton Knowinlgly, Deliberately, Capriciously and Arbitrarily Violated Plaintiff's Constitutional Rights with Malice and Intent to cause Pain and Suffering under the Deliberate Indifference Standard and in Clear Violation of Article['s] 8 and 14 of the United States Constitution.

### D. Defendant No. 6,

Doctor Coble contract doctor at SCCF who's responsibility is to provide Basic Medical Care. He is responsible for seeing to the necessary and required After Care. Defendant Coble failed to schedule Plaintiff visits to "Monitor his Recovery", refused to communicate with Dr. Sattasiri, Oncologist or Dr. Messenger, Chemotherapy doctor telling Plaintiff; to talk to your cancer doctor, without access to them.

Defendant Coble prescirbed one 5. mg. Loritab twice a day for **CANCER PAIN** eventually raising them to 7.5 mg. twice a day. After 3 weeks of suffering when Plaintiff could NOT bare the PAIN any longer, Defendant Coble increased the Loritab's from One, 7.5 mg. to two twice a day, leaving Plaintiff to suffer Cancer Pain for Seven (7) Months "Many Times at the Point of Tears" from the PAIN of the RADIATION SORES on his tongue and FIRE in his neck. The Pain returned every four hours. Defendant Coble ignored Dr. Sattasiri's prescription for Time Released Morphine, a *UNIVERSALLY accepted Pain Medication for Cancer patients*.

Between **Sept. 2013** and **March 2014** Defendant Coble repeatedly altered Plaintiff's Boost increasing them from 2 a day to 6 a day, without first Monitoring Plaintiff's progress, he would lower them again to 4 per day, slowing Plaintiff's STRUGGLE TO RECOVER. Toying with Plaintiff's ONLY Nutrition during Recovery occurred multiple times causing Plaintiff to suffer INHUMANELY literally starving, while attempting to recover from sever trauma. [Exhibit's: 11, 12, 13, 14, 15, 16, 17]

Case 3:14-cv-00911 Document 1 Filed 04/03/14 Page 22 of 37 PageID #: 22

On March 7, 2014 Defendant Coble stopped issuing Boost without First Monitoring Plaintiff's Progress and on March 10, 2014 lowered his PAIN MEDICATION from Two 7.5 mg. Loritabs to One a day, extending Plaintiffs suffering inhumanely.

On March 20, 2014 Plaintiff was told his cancer was gone. Defendant Coble said he called Dr. Conway trying to move him to a 'fine state prison'". Plaintiff explained he could not eat, and was prescribed 2 Boost a day **[480 Calories]**, for 30 days. Defendant Coble then said, **"you're alive be happy..."** refusing to inspect his: Weight, [a Gain of Six (6) lbs. in Six (6) Months] Radiation Sores on his tongue, and told Plaintiff, **"...best of luck, you can go now..."!**

Plaintiff avers Defendant C.C.A.'s Insurance paid for the Cancer Treatments but clearly is NOT covering the Cost of After Care, forcing Plaintiff to Live a 'Diminished Quality of Life" while suffering, certainly nothing to **"be happy"** about, while Defendant's save a dollar at the expense Plaintiff's Sufferage and/or Life.

Defendant Coble Knowinlgy, Deliberately, Capriciously and Arbitrarily Violated Plaintiff's Constitutional Rights with Malice and Intent to cause Pain and Suffering, denying Appropriate Pain Medication, Proper Nutrition the simple cost of Ensure/Boost, acting under the Color of State Law and under the Deliberate Indifference Standard in Clear Violation of Article['s] 8 and 14 of the United States Constitution.

## D. Defendant No. 7,

Lisa Crum a Correctional Officer was assigned to Plaintiff's housing unit during his Cancer Treatments. From Aug. 05, & Sept. 23, 2013 she awakened Plaintiff at 5:00 a.m. for transit to Columbia Cancer Center. During security checks every hour Defendant Crum **never awakened** Plaintiff to _"check if he was alive'_, during his aggressive Radiation Cancer Treatments that left Plaintiff in an extremely weaken state, physically, mentally and psychologically. 5.

---

5. This was an excuse used in Defendant Crum's reply to Plaintiff's Greivance filed for her Deliberately Interfering with Plaintiff's Recovery from Cancer Treatments. His Immune System Damaged from Treatments can ONLY Rebuild itself as Plaintiff sleeps, UNDISTURBED.

23

In October 2013 without specific orders from her supervisors, or medical personnel Defendant Crum would awaken Plaintiff, Every Hour of the night, by shining a 'laser pointer' or flash light directly into Plaintiff face, while sleeping, causing Plaintiff to open his eyes staring directly at a laser pointer. If this failed to awaken Plaintiff, Defendant Crum would began Banging on his cell door window with her metal laser pointer or flash light until Plaintiff was awakened. This Banging was so prominent that it left indentions in the glass of his cell window and awakened inmates in seven or eight cells on both sides of Plaintiff's cell. [Exhibit's 18, 19, 20]

Plaintiff attempted to address Defendant Crum's disruption to his sleep was physically interfering with his immune systems need to Recover from Cancer Treatments, Defendant Crum responded by fabricating multiple fraudulent disciplines, alleging Plaintiff was screaming and cussing. At this time of Plaintiff's Recovery his throat was Burned So RAW that he couldn't even talk, he could only speak in a raspy whisper, Barley Audible and very difficult to hear. It was physically Impossible for Plaintiff to Scream, from the condition of his throat, and everyone at this facility was aware of this giving cause to dismiss the fabricated disciplines.

Defendant Crum has acted deliberately and with Malice to cause unnecessary Suffering on Plaintiff and in a Conscious, Wanton, and Arbitrary attempt to Sabotage his Recovery by "Actively" causing Plaintiff to go without "Undisturbed sleep" during his Recovery, allowing his Immune System to rebuild or regenerate. This harassment has continued up to the date of Plaintiff being moved from D Unit to A. Unit.

By these Acts and Omissions Defendant Crum Knowinlgly, Deliberately, Capriciously and Arbitrarily Violated Plaintiff's Constitutional Rights acted with Malice and Intent to cause Pain and Suffering under the Deliberate Indifference Standard in Clear Violation of Article['s] 8 and 14 of the United States Constitution.

24

## D. Defendant No. 8,

Jessica McElroy is the Grievance Chair at SCCF the facility Plaintiff resides, and is responsible for providing Plaintiff with the right to Redress wrongs through Due Process hearings via the Institutional Grievance Procedures. [Policy 501.01] Defendant McElroy repeatedly and systematically violated Plaintiff's Due Process Rights to be heard at Grievance Hearings in violation of Administrative Policy 501.01 and the; 1st, 5th, 8th and 14th Amendment[s'] of the Tennessee and United States Constitutions. In Plaintiff's effort to Exhaust Administrative Remedies pursuant to the P.L.R.A. Requirements and 42 U.S.C. §1977(e)(a) he has timely filed Grievances in accordance with Policy, Defendant McElroy continues to Dismiss Every Grievance as Inappropriate and/or untimely, with the Exception of one (1).

Between July 12, 2013 and January 27, 2014 Plaintiff filed twelve Grievances naming ten Defendants, for denying Basic and Adequate Medical Treatment, Plaintiff was given only one hearing. Defendant McElroy's manipulative effort of the proper grievance procedure to protect C.C.A.'s Interest, she has prevented and/or denied Plaintiff from acquiring copies of Six of those Twelve Grievances.

The manipulation of the Grievance Process, has prohibited the Grievance process against: Defendant['s] Prichard, Chapman, and Keaton, as Defendant McElroy "Protects" C.C.A.'s interest over assuring Plaintiff's Due Process Rights to be heard in violation of Policy 501.01. As she continues to interfer with Plaintiff, his Right to Exhaust his Exhaustion requirements can Not be satisfied when Defendant McElroy, refuses to Process Grievances pursuant to Policy, blocking Appeal and Every Redress, while hoarding Plaintiff's original grievances.

On November 16, 2013 Plaintiff filed a grievance on Defendant Crum, Defendant McElroy deemed the grievance inappropriate and dismissed it. Plaintiff inadvertly listed dates of incidents as Oct. 11, through 17 rather than Nov. 11, through 17, 2013.

25

Unit Manager Hacker called Plaintiff to his office showing Plaintiff his need to correct the month of incident. Plaintiff agreed to withdraw this grievance and *resubmit it* the following morning *with the correct date*. Grievance Policy 501.01 allows for "CORRECTION" to grievances within the seven day time bar, however; Exhibit's E, F]

Defendant McElroy refused to follow this Administrative Policy and allow for 'corrections'! Plaintiff immediately typed his grievance, with the necessary corrections, according to Policy 501.01 and "Timely Placed" this grievance in the Locked Grievance Box the following morning. Defendant McElroy picked up the grievance the next morning and rather than log Plaintiff's "Timely Filed" **Resubmitted Grievance** pursuant to Policy, Defendant McElroy Arbitrarily held the grievance, in her office beyond the seven day time bar, returned the grievance [Dismissed] on January 25, 2014 citing: beyond 7 day Limit of incident, as if the Delay was the fault of Plaintiff. This is clearly an abuse of her position as the Grievance Chair in Violation of Policy 501.01. [Exhibit F]

Senior Holly, working the Disciplinary Board pointed out to Plaintiff that she saw his **Resubmitted Greivance** in the grievance office on Nov. 18, 2013, well within the 7 day limit and for No Apparent reason Defendant McElroy held the Grievance beyond the deadline only to dismiss it, again without a hearing. This is a 'Common Practice" supported by Defendant's C.C.A., Hiniger, Prichard, and Chapman. Defendant McElroy has repeatedly denied Plaintiff's First Amendment Right of Access to the Court, refusing to pemit a grievance panel to hear the "Facts" therby deliberately intefering with his effort to Exhaust, Abusing her office in Violatation of policy. Plaintiff cited their decision making authority in his grievances identifying basic medical care and appropriate Nutritional needs being denied during Recovery. Plaintiff cited complete dereliction in their "After Care', resulting in a severly 'diminished quality of life' from their choice to deny Plaintiff medical needs.

26

Plaintiff's Due Process right to redress these wrong and Exhaust his Remedies, have gone astray due to Defendant McElroy routinely dismissing every grievance as inappropriate or untimely denying Plaintiff's 'Access to the Court' and Due Process Protections, in her Primry Focus to protect the financial interest of C.C.A., keeping from publicly Exposing South Central and C.C.A.'s Incompetence in meeting the Serious Medical Needs of Prisoners, under their care.

Defendant McElroy denied Plaintiff a single opportunity to present his Facts before a non-biased Grievance Board. As chairperson of the Grievance Board it is her Duty to provide hearings and with her experience as the auxiliary Chair of the Disciplinary Board Defendant McElroy is very well be aware of Plaintiff's Protected Rights and her Duty and Responsibility to protect those rights.

Defendant McElroy Knowingly, Deliberately, Capriciously and Arbitrarily Violated Plaintiff's Constitutional Right to Redress these wrongs by court action, with Malice and Intent, denying Plaintiff the protections of Access to the Court as guaranteed pursuant to the 1st amend. of the United States Constitution.

## D. Defendant No. 9,

Defendant Prichard, was delegated authority over decisions related to Food Service and the Medical Department, without any Food Service Experience or Medical Training and without knowledge of legal responsibilities associated when denying the necessary Medical Care or Treatment. Defendant Prichard is Responsible for managing open communication between Food Service, and the Medical Dept. to assure Adequate Nutritional Needs through Food Service, when called for between the Medical Dept. and the Food Service supervisors.

Defendant Prichard failed to provide the Most Basic needs of Plaintiff, allowing Plaintiff to suffer Life Threatening Injuries delegating Authority to his underlings, who failed to provide Plaintiff with the Basic Medical Care or Nutritional Needs, during and after Cancer Treatments.

27

Defendant Prichard negligently allowed Plaintiff to reach a point of near starvation, *unable to eat solid foods*, allowing his subordinates to provide Plaintiff with *Cooking Broth* to consume rather than Broth designed for humane consumption. Defendant Prichard insisted that Plaintiff mix the "Cooking Broth" with boiling water while eating with 60(+) inmates in the dinning area[6], this at a time that Plaintiff constantly had to 'hack up' [puke] congestion from the Radiation of his throat every 3 to 5 minutes, spitting into a Styrofoam cup. *A scene No One wants to witness for 20 to 25 minutes, while eating* in a area where everyone is setting 18" apart.

Defendant Prichard's failure to oversee his subordinates, failure to see to Plaintiff's Medical and Nutritional needs and his negligence for failing to arrange for appropriate communication between the Clinic and Food Service, Sanctioned Civil and Constitutional Violations, under Article['s] 1, 5, 6, 8 and 14 of the U.S. Constitution.

### D. Defendant No. 10

Defendant Chapman as the Warden at SCCF is responsible for all Safety, Security, Medical Care and Treatment, Grievance Policies, Procedures, Personnel, Appeals, and assuring the Humane Treatment of Plaintiff. Defendant Chapman has negligently failed to correct the Civil and Constitutional violations of his employees at SCCF by delegating his authority, and responsibilities to underlings while failing to oversee their Acts, Behavior, as well as Policy and Constitutional Violations, allowing his staff to, ...Do As They Wish Without Accountability.

Defendant Chapman has implemented this same Exact Practice throughout this Prison, where Inmates in Possessions of cell phones, Deadly Weapons, or Drugs who Assaults Officers attempting to recover the Contraband, doesn't even

---

6. Plaintiff did NOT have access to Warm water let alone Boiling water in the dining area, ONLY ICED water and was prohibited from leaving the dining area with the cup of powder **Cooking Broth**, once again leaving him again with No nutritional Intake.

28

get disciplined for the contraband or assault on the Officer, deliberately keeping this activity out of the Commissioners Office, C.C.A. Corporate Office to "Protect Share Holder Profits". Defendant Chapman by his Authority while acting Under the Color of State Law, failed to monitor or correct the actions and behavior of his Staff for their refusal to provide Basic Medical Care, failure to provide Adequate Nutritional Needs during Plaintiff's Recovery from Cancer treatments, and he has refused to Address or Correct the Continuing Negligence and Deliberate Denial of Due Process Protections of the grievance process, by simply 'Rubber Stamping' Defendant McElroys refusal to provide Due Process Hearing.

Therein, by Defendant Chapman's Acts and Omissions he has willingly Sanctioned Civil and Constitutional Violations of Plaintiff, under Article['s] 1, 5, 6, 8 and 14 of the U.S. Constitution. This negligence, denial to grievance hearings the right to redress Wrongs, and refusal to correct the violations continues as this claim is being submitted to this Honorable Court.

## CONCLUSION

The named Defendant's consciously choose *to protect their annual Bonuses*, and *Shareholder Profits for Defendant C.C.A., "a Private Prison"*, over providing Basic or Adequate Medical Treatment for Plaintiff. Appropriate and Timely Diagnosis and Treatment *would have prevented* the development of Tonsil Cancer, in Plaintiff's throat and neck. Defendant's have cleverly developed and implemented a "Pattern or Design of Policy Practices", that encourage cost savings over providing essential Medical Care. These immoral, unethical acts and decisions are clearly defined under the deliberate indifference standard to Plaintiff's Medical needs. Plaintiff will show how their primary focus is in personal bonuses and protecting corporate profits operated by a *"Pattern or Design' of 'Policy Practices"* with Corporate E-Mails and Directives to 'Department Heads' of C.C.A. employees.

29

The named Defendant's; C.C.A., Hiniger, Garriga, and Martin established a "Pattern or Design" through "Policy Practices" that **Stressed Cost Cutting** during 'staff meetings' to assure departmental personal secures their "Annual Bonuses". Some Corporate officials have in the past as well as the present attempted to cover up or justify their **Repeated Past Tacit Approval** of their Pattern and Policy Practices of stressing Bonus' over Moral and Constitutional protections.

Through the Defendant's 'Pattern and Policy Practice' of protecting profits for Share Holders their acts... **Induced limited Care** to Medical Needs of inmates, as set forth herein can ultimately result in the *Undiagnosed Growth of a Cancerous Tumor*. Plaintiff has and continues to suffer unnecessarily as a direct result of the Defendant['s], Deliberate Acts of Indifference and Gross Negligence. The Denial of Basic, Adequate or Proper Medical Care, focusing on Profit Protection over sufficient After Care, Untrained in the field of Cancer, and as a ward of the State of Tennessee Particularly, and a ward of C.C.A. Specifically, the Defendant's legally assumed the Responsibility of Plaintiff's medical needs.

Defendant's C.C.A. and South Central contracted with a "Single Doctor" who is only at this facility two (2) times a week, allegedly on call. The named Defendant's are not exempt from Liability for their actions, acting under the Color of State Law, as authorized pursuant to: T.C.A. §§4-3-603, 4-3-606, T.C.A. §41-24-101 through §41-24-117 and the holdings in:

West v. Akins, (1988) wherein the question of liability is answered:

> "The question that arises is whether these private contractors can be sued under §1983 for violating the constitutional rights of inmates. Specifically, do these private contractors act "under color of" state law? The answer to these questions, after the Supreme Court's decision in West v. Atkins, (1988) is clearly yes."

> "...What mattered was his function; he had agreed to assume the government's responsibility, one that the state had delegated to him, for providing inmates with the medical care to which they were constitutionally entitled."

30

The Deliberate, Arbitrary, and Capricious Acts of the Named Defendant['s] *Physically Injured Plaintiff, Caused Severe Psychological, Emotional and Physical Pain, Diminishing his Quality of Life,* and caused *Emotional Stress,* Endangering Plaintiff's Life and Liberty and as a direct result, Plaintiff has Suffered from defendant's actions and/or inaction's.

Plaintiff made an; Honest Extensive, and Diligent effort, to solicit corrective action through correspondence and Grievances for the denial of a proper diagnosis, long before the development of this Cancerous Tumor and the denial of his right to see a doctor, all to No Avail. The Defendants rejected Plaintiff's Grievances in his repeated attempt to: address, correct and stop their, Arbitrary, Capricious and Malicious deliberate acts of indifference. Defendant McElroy's deliberately manipulation of the Grievanc Process, includes denying Plaintiff from securing grievances already filed to submit to this Honorable Court, supporting his Exhaustion Requirement..

The named Defendant's have and continue to violate Plaintiff's Right to Due Process, causing unnecessary Cruel and Inhumane Punishment and these acts were a Conscious, Deliberate effort to "Keep Hidden" the 'Gross Negligence' of their "Lack" of Medical Care and Treatment of Plaintiff and other inmates to Protect their 'Profit Interest'.

The named Defendant['s] Deliberately, and Maliciously refused to Address, Correct, or Stop this Inhumane Treatment of Plaintiff, as he Suffered from Cancer Treatments and attempted to Recover. They consciously refused to review his complaint or act upon his Grievances, and Correspondences presented to them for Corrective Action, wherein Plaintiff clearly put them on Notice and gave every named Defendant Ample Opportunity to correct the Civil and Constitutional Violation of his Rights. Their Actions and/or Inaction's reflect a Clear and Blatant Disregard to Plaintiff's Civil and Constitutional Rights to Humane Treatment and Due Process. see: Chapman v. Slagle, 107 F.3d 380, 384-85 (6th Cir. 1997) @384:

31

> The elements of a §1983 claim in this circuit are clear;
> (1) Plaintiff was deprived of a right secured by the federal
> constitution or laws of the United State; (2) The deprivation
> was caused by a person acting under color of state law; and
> (3) the deprivation occurred without due process of law;"

As a Direct Result of Defendant's Capricious, Arbitrary and Malicious Acts, Plaintiff was made to suffer unnecessarily in violation of the Cruel and Unusual Punishment Clause of the 8th amend. through the 14th amend of the United States Constitution. For more than a year and continuing as this claim is submitted, Defendant's have refused Plaintiff universally acceptable medication to lessen the extraordinary and excruciating pain by rejecting Dr. Sattasiri's prescription for 'Time Released' Morphine.

Defendants provided Plaintiff with .5 mg. of Loritab, [*advanced Tylenol*] twice a day, [12 hours apart] increased it to 7.5 mg. twice a day, and later added a very temporary 3rd dosage for noon which was discontinued without Plaintiff being monitored by a doctor. Plaintiff was prescribed four (4) Ensures nutritional drinks per day with 350 Calories in each drink, totaling *1,400 Calories* per day, when he managed to get those prescribed Ensures, for what was a **Two Hundred and Thirty Four (234) Pound man**, prior to Plaintiff's Cancer. Dietitians across America and World Wide understand, without being told that daily calorie intake is recommended **Two Thousand Four Hundred Calories** (2,400) for a grown man, and at lest 2,000 Every One else, including children.

As a Cancer Patient Plaintiff has NEVER been provided even the 1,400 Calories prescribed, due to the Arbitrary and Capricious acts of the named Defendants, and as a Direct Result Plaintiff's Recovery has Deliberately SLOWED, causing additional suffering and a very real **Diminished Quality of Life.**

Defendant's Primary Focus on Cost Savings for Corporate Profit, has now opted for Boost, **[30 Days only]** with **240 Calories** per drink, or *Nine Hundred and Sixty (960) Calories* per day, for **A Grown Man a Recovering Cancer Patient.**

This is far less than sufficient to aid in a Cancer Patients Life Saving Effort to Recover from a significant Muscle and Weight Loss from Cancer treatments. On March 7, 2014 Dr./Defendant Coble discontinued EVERY Nutritional Drink, without First Monitoring Plaintiff. Records will show that Plaintiff has only regained approximately Seven (7) of the Sixty Seven (67) pounds lost during and after treatment, and is clearly Medically in need of this nutrition. Defendant's Coble, Orton, and Keaton continue to deny Plaintiff access to a scale for deniability purposes. Plaintiff is still unable to eat due to the Radiation Sores on his tongue.

Defendant's actions and Inaction's have caused Plaintiff Severe Psychological and Emotional Stress, Physical and Psychological Pain and Suffering, beyond description from their failure to "Timely Inform Plaintiff" of this Deadly Ailment, and proceeded to continue Plaintiff's suffrage by failing to 'Timely' Treat Plaintiff for this "Deadly Ailment" raising the Potential of permitting this decease to Spread, for Delayed Treatments. The named Defendants, Bickered over Cost Savings in their attemp to transfer Plaintiff to a state facility on multiple occasions, deferring financial responsibility in their primary interest of "Protecting C.C.A. Profits", over saving or lengthening Plaintiff's life without any concern in Plaintiff's Quality of life. The Defendant's Deliberate Indifference resulted in Unnecessary Emotional and Psychological Stress in violation of Plaintiff's Protected Constitutional Rights against Cruel and Inhumane Punishment and/or Treatment. The Actions and/or Inaction's of Defendant's have further caused Plaintiff's family equally Severe Emotional and Psychological Stress by failing to timely diagnose and inform Plaintiff of this Disease before reaching Stage 4 Cancer.

Furthermore, their failure to Timely Treat Plaintiff permitted this decease to Grow and Develope in violation of Plaintiff's constitutional right to humane Treatment. This Unnecessary Emotional and Psychological Stress and is in violation of Plaintiff's Protected Constitutional Rights Against Cruel and Inhumane Treatment.

33

Plaintiff continues suffering daily from "Inappropriate Cancer Medication", [Loritabs] that work to lessen his Pain for **no more than 4 hours**, before the swelling of his tongue returns with the pain associated with it. Plaintiff suffered from 11:00 a.m. to 7:30 p.m., waiting for Medication Call unsure if his Boost or medications will even be there. [Pain Medications stopped on 3-31-14], without First being seen by Defendant Coble, to **"Gage Plaintiff's Pain Level"**, in his continued refusal to see Plaintiff, NOT only as a Recovering Cancer Patient, but as a Prisoner under his "CONTRACT CARE", with the state of Tennessee. The attached Affidavit will show the Mental and Psychological Gauntlet Plaintiff must go through twice a day for Medication Call hoping his Boost is there and that Defendant Orton hasn't substituted his pain medications for unknown substance as she has done multiple times during his Recovery, collectively adding Unnecessary and Avoidable Stress at a time of Recovery that Stress can hasten DEATH. [Exhibit #21]

Six Months after Plaintiff's last Treatments [September 23, 2013] Plaintiff is **Still Unable** eat solid foods. Defendant Coble has made no Assessment of Plaintiff's condition, or the healing of Radiation Sores on his tongue, or in his mouth prohibiting him from eating before Discontinuing the Boost or an Assessment of Plaintiff's **'pain level'** before Discontinuing his Loritab Pain Medications as Plaintiff endures Extreme Emotional and Psychological Suffering. Plaintiff is eating; Oatmeal, Bread, and Butter washed down with water, items *"Illegally Purchased"*, with Plaintiff's Commissary, Defendant's will not provide these items. Defendants were providing two Boost a day, a Total Daily Intake of *Four Hundred and Eighty* **[480]** Daily Calories **FAR Less than recommended** by Plaintiff's Onmocologist for a 234 pound man Fighting for his Very Life. Plaintiff's Recovery from the aggressive Cancer treatments would have been 80% faster without the Conscious, Deliberate Acts of the named defendants. **(1)** The Sabotage of Defendant's Orton and Keaton repeatedly leaving Plaintiff without Nutrition 30 days straight, on multiple occasions,

34

(2) The Conscious, Deliberate Act of Defendant Crum waking Plaintiff EVERY HOUR of the night for no Security or Medical purpose, prohibiting Plaintiff's Immune System from regenerating which would have allowed for Faster Healing, or (3) Defendant Coble stopping Ensure nutrition every 12 to 21 days without first Examining Plaintiff, and adding Enormous Stress repeatedly cutting Pain Medications, without first Examining him.

Plaintiff Moves this Honorable Court to **Issue an Order** declaring that by the Acts and Omissions of the Defendant['s] described herein, incorporated by reference of the records, Violated Plaintiff's 1st, 5th, & 8th amend. Rights of the United States Constitution, through the 14th amend..

That by the acts and omissions of the Defendant's resulted in or directly contributed to the Growth of a Cancerous Tumor that could have been avoided with the 'timely' removal of Plaintiff's tonsils, thereby caused Plaintiff to suffer unnecessarily, from their Deliberte Indifference to Plaintiff's Medical Needs. That their acts and omissions were; Intentional, Arbitrary, Capricious, and Malicious under the Deliberate Indifference standard causing Plaintiff to sufferer the infliction of Extraordinary Emotional, Psychological, and Physical Pain and Anguish, while diminishing his *'quality of life,'* that this suffering could have been prevented with a proper diagnosis, and is in violation of the Cruel and Unusual Punishment Clause in the 8th Amend. of the United States Constitution.

**FURTHERMORE, Issue an Order** declaring that by the acts and omissions of the Defendant's described herein, incorporated by reference of records available as set forth, Violated Plaintiff's First amend. Right to redress wrongs denying Plaintiff's Due Process Rights in his effort to redress, under the Constitutional Clause of Equal Protection of the Law, and Cruel and Inhumane Treatment, under the 1st, 5th, 8th amend. of the United States Constitution, through the 14th amend. and Article One §§§§ 8, 13, 16, and 32 of the Tennessee Constitution.

35

**THEREFORE,** Plaintiff **PRAYS** that this Honorable Court for Review of this Claim, In the Interest of Justice.

## REQUESTED RELIEF

**PREMISES CONSIDERED,** Plaintiff **PRAYS** for this Honorable Court to **GRANT** the following relief.

(A) Issue an Order that by the acts and omissions of the Defendant's described herein, incorporated by reference of records as set forth, that Defendant's did Knowingly Violate Plaintiff's Rights to Humane Treatment, denied Plaintiff Adequate Medical Treatment, and did cause Plaintiff to suffer Unnecessarily in Violation of his Eighth Amendment Clause against Cruel and Unusual Punishment, through the Fourteenth Amendment of the United States Constitution.

(B) Issue an Order for; *Perpetual Medical Treatment and After Care*, for a period of Ten (10) Years [life expectancy] *Including All Cost* Associated with this *Treatment, Proper Medications and After Care*, wherein treatment in the future will most likely prove to be necessary.

(C) Issue an Order of; *Survivorship*, in the names of: Lisa (Gulley) Tankesly,[7.] sons Calvin Tankesly III, James Austin Tankesly and Samantha (Tankesly) Havens, (Niece) [8.].

(D) Award Plaintiff *General Damages*, in the Amount of One Hundred and Twenty Five Thousand Dollars **($125,000.00)** from: Each Defendant.

(E) Award Plaintiff *Compensatory Damages*, in the Amount of One Hundred and Twenty Five Thousand Dollars **($125,000.00)** from: Each Defendant.

---

[7.] Lisa (Gulley) Tankesly, is Plaintiff's former spouse and the Biological Mother of Plaintiff's sons Calvin Tankesly III, James Austin Tankesly.

[8.] Samantha (Tankesly) Havens is Plaintiff's Niece, the daughter of Plaintiff's Deceased Biological Brother, William Donald Tankesly.

36

(F)     Award Plaintiff Punitive Damages, in the Amount of Three Hundred Thousand Dollars **($300,000.00)** from: <u>Each Defendant</u>.

(G)     Award Plaintiff pre-judgment interest.

(H)     Award Plaintiff Reasonable *Attorney Fees*, Copy and Mailing Cost.

( I )     Award Plaintiff the cost of this lawsuit

(J)     Award Plaintiff other such and further relief that this Honorable Court Deems; Proper, Just and Equitable.

(K)     Issue an Order Declaring that the Plaintiff in this cause is Indigent and Financially Unable to pay Cost.

**IT IS PRAYED**

Calvin Tankesly, Jr. Plaintiff, pro se
P.O. Box 279, Clifton, TN 38425

## VERIFICATION AND SELF IMPOSED OATH
### Pursuant to: 28 U.S.C. §1746(2)

    I, <u>Calvin Tankesly</u>, <u>#90944</u> Plaintiff pro se, hereby affirms and verifies, pursuant to the provisions of 28 U.S.C. §1746(2), under the penalty of perjury that the above and foregoing factual allegations are true and correct to the best of my; Knowledge, Belief and Understanding.

    Executed this the 1st day of April 2014.

BY:

Calvin Tankesly, Plaintiff, pro se
P.O. Box 279
Clifton, TN 38425

37