# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **CALVIN TANKESLY, JR. # 90944,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 3:14-00911** |
| ) | **Judge Trauger/Brown** |
| **CORRECTIONS CORPORATION** ) | |
| **OF AMERICA, ET AL.,** ) | |
| ) | |
| **Defendants.** ) | |

## REPORT AND RECOMMENDATION

Before the court are plaintiff's motions for: **1)** a preliminary injunction and temporary restraining order (TRO) with supporting affidavit filed May 28, 2014 (Docs. 11, 13); **2)** a preliminary injunction and TRO with supporting affidavit filed June 23, 2014 (Docs. 18-19); and **3)** appointment of counsel with supporting memorandum and affidavit filed August 25, 2014 (Docs. 51-53). For the reasons explained below, the Magistrate Judge recommends that plaintiff's motions **(Docs. 11, 18, 51) be DENIED**.

## I. INTRODUCTION AND BACKGROUND

Plaintiff seeks injunctive relief to prevent what he characterizes as arbitrary and capricious retaliatory acts including: 1) termination of his prison job; 2) denial of medical care; and 3) deductions from his trust fund account for medical care in connection with a "chronic" medical problem. Plaintiff asserts that the alleged actions are in retaliation for his having filed this lawsuit, and that the actions alleged violate both the First Amendment and 42 U.S.C. § 12203(a)-(b)(Americans With Disabilities Act (ADA)). Plaintiff also demands that he be reinstated to his prison job, and that he be paid his lost wages.

## II. ANALYSIS

### A. Demand for Injunctive Relief

In deciding motion for a preliminary injunction, the district court considers: 1) whether the movant has a strong likelihood of success on the merits; 2) whether the movant would suffer irreparable injury without the injunction; 3) whether issuance of the injunction would cause substantial harm to others; and 4) whether the public interest would be served by issuance of the injunction. *City of Pontiac Retired Employees Ass'n. v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014)(internal citations and quotation marks omitted). The court considers the same four factor when deciding a motion for a TRO. *See Kentucky v. U.S. ex rel. Hagel*, ___ F.3d ___ , 2014 WL 3558044 (6th Cir. 2014).

While none of the four factors enumerated above generally has controlling weight, injunctive relief may not issue where there is no likelihood of success on the merits. *See Farnsworth v. Nationstar Mortg.*, LLC, __ Fed.Appx. ___, 2014 WL 2743508 *4 (6th Cir. 2014)(citing *Mich. State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). The party seeking injunctive relief bears the burden of justifying such relief. *Mich. Catholic Conf. & Catholic Family Serv's. v. Burwell*, 755 F.3d 372, 382 (6th Cir. 2014)(internal citations and quotation marks omitted). The proof required for injunctive relief is more stringent than the proof required to survive summary judgment. *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)(internal citation and quotation marks omitted).

As an initial matter, the Magistrate Judge notes that, to make a *prima facie* showing under the ADA, plaintiff must demonstrate three things, key among which is that an alleged adverse employment action, *i.e.*, in this case, plaintiff's loss of his prison job, was due to a disability. *Henschel v. Clare County Road Com'n.*, 737 F.3d 1017, 1022 (6th Cir. 2013). Plaintiff, however, claims that the alleged retaliatory actions against him were due to his having filed the instant

2

lawsuit, not because of any disability that he might have. Consequently, the ADA does not apply in the context of the motions pending before the court. On the other hand, filing a lawsuit constitutes protected conduct under the First Amendment. Therefore, the First Amendment does apply.

To state a claim for relief on a First Amendment retaliation claim – the subject of the first two motions – plaintiff must show that: 1) he engaged in protected conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two, *i.e.*, the adverse action alleged was motivated at least in part by the plaintiff's protected conduct. *Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010)(internal citations and quotation marks omitted).

**1. Job Termination**

Plaintiff avers in his May 28, 2014 affidavit that he was terminated from his job as a library assistant "for a rules violation." (Doc. 13, ¶ 17, p. 2) Although he claims that thirty of the forty inmates in his unit violate/have violated the same rule(s), he does not deny that he violated prison rules. (Doc. 13, ¶ 19, p. 3) In his June 23, 2014 affidavit, plaintiff states that defendant Daniel Pritchard, the prison official at the South Central Correctional Facility (SCCF) who terminated plaintiff's job, "discover[ed] an alleged unit rule violation" on May 8, 2014. (Doc. 19, ¶ 18, p. 3) Although plaintiff claims in his second affidavit that twenty to sixty inmates in his unit violate/have violated the same rule(s) (Doc. 19, ¶ 24, p. 2), he once again does not deny that he violated the rules. Instead, he argues that, "[p]ursuant to TDOC [Tennessee Department of Correction] Policy both men in a cell are normally disciplined," but his cell mate was not punished. (Doc. 19, ¶ 18, p. 3)

The only clarification on the matter comes from defendant Pritchard who states in his July 28, 2014 declaration that "the locking mechanism in [plaintiff's] cell door had been tampered with,"

3

and that plaintiff "informed [him] that he had tampered with his lock because he believed that he had to be able to get out of his cell to do his job as a library assistant." (Doc. 41, ¶¶ 4-5, p. 1) Defendant Pritchard states that he terminated plaintiff's job because his "reason for tampering with the door was work related . . . and posed a significant security risk . . . ." (Doc. 41, ¶ 6, p. 1)

Plaintiff tacitly admits that he violated prison rules. The law is well established that courts are ill-equipped to intervene in matters pertaining to the enforcement/management of prison rules and regulations. *See Shaw v. Murphy*, 532 U.S. 223, 229 (2001); *Jones v. Caruso*, 569 F.3d 258, 278 (6th Cir. 2009). Moreover, violating prison rules does not constitute protected conduct. Because violating prison rules, regardless of how many other inmates may have done so, does not constitute protected conduct, plaintiff cannot make a *prima facie* showing of retaliation. Because plaintiff cannot make a *prima facie* showing of retaliation, he cannot succeed on the merits of the grounds alleged. Because plaintiff cannot succeed on the merits, his motion for injunctive relief on these grounds should be denied.

### 2. Alleged Denial of Medical Care

Plaintiff alleges in his first motion that defendants have denied him "essential" chronic medical after care. (Doc. 11, p. 1) Apart from noting that he can no longer "carry a cup of water with him," plaintiff is silent as to this claim in his first motion and accompanying affidavit. (Doc. 13, ¶ 10, p. 2) In his second motion, plaintiff asserts that defendants have failed to provide him with "necessary medical care." (Doc. 18, p. 2) Apart from asserting that he can no longer "carry a cup of water with him," plaintiff is again silent on this claim in his motion and accompanying affidavit. (Doc. 19, ¶ 14, p. 2)

Defendants have submitted the declaration of Dr. Robert Coble, M.D., the physician at SCCF, in response to plaintiff's claim that he is being denied medical care. (Doc. 42) Dr. Coble

4

states the following in his declaration: 1) plaintiff was diagnosed and treated in the past two years for cancer of the throat, "includ[ing] radiation and chemotherapy"; 2) plaintiff "now appears to be cancer free"; 3) plaintiff's weight has increased from 173 to 190 lbs. since being "placed on a liquid diet of Ensure/Boost"; 4) plaintiff has not been "diagnosed with any allergies to any particular flavor of Ensure/Boost"; 5) an earlier order permitting plaintiff to carry a cup of water due to dry mouth expired; 6) there is "no medical reason . . . [for plaintiff] . . . to carry a cup [of water] while in [the] general population"; 7) plaintiff has been provided with "adequate and reasonable medical care that meets the community standard of medical care in a prison setting"; and 8) plaintiff has not been denied "appropriate medical care." (Doc. 42, ¶¶ 6-11, pp. 1-2 of 4)[1] Defendants filed plaintiff's SCCF medical records under seal in response to his claims. (Doc. 42, ¶ 5, p. 1 of 4; Doc. 43)

The medical records noted above cover several years, only a small portion of which are 2014 records. It cannot be determined from the 2014 records which, if any, pertain to the relevant time frame, *i.e.*, to the period after April 3, 2014 when plaintiff filed this lawsuit. The entries either are illegible and/or the dates at the left margin were cut off in the scanning process. To the extent that the 2014 records show that plaintiff received medical care after he filed this lawsuit, but that he merely disputes the adequacy of that care, the federal courts are reluctant to second-guess prison officials' medical judgments and constitutionalize claims which sound in state tort law. *Graham ex rel Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)(citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). In short, to the extent that the records show that plaintiff was provided medical care during the period at issue, he cannot make a *prima facie* showing of retaliation based on the alleged denial of medical care. As noted above, however, it cannot be

---

[1] The pages in Dr. Cobel's declaration are not numbered. The page numbers referred to herein are those assigned by the court's CM/ECF system.

determined from the medical records before the court whether the 2014 records pertain to the period in question.

Notwithstanding the insufficiency of the medical records before the court to decide the issue, plaintiff provides no factual allegations whatsoever in support of this claim for relief and, as such, his claim is conclusory. Conclusory statements pertaining to the need for prospective injunctive relief are insufficient. *See Foster v. Michigan*, ___ Fed.Appx. ___ , 2014 WL 3511734 * 13 (6th Cir. 2014)(citing *Terrance v. Northville Reg. Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Because plaintiff's claim is conclusory, his motion for injunctive relief on these grounds should be denied.

### 3. Trust Fund Deduction

Plaintiff asserts in both of his affidavits that he "went to Sick Call" on April 21, 2014 to renew his medication(s), and was charged a $3.00 fee. (Doc. 13, ¶ 12, p. 2; Doc. 19, ¶ 16, p. 2) Plaintiff asserts that the $3.00 fee has been waived for chronic care patients during the four years he has been at SCCF. (Doc. 13, ¶ 12, p. 2; Doc. 19, ¶ 16, p. 2) Plaintiff does not allege that he was denied the medication(s) he sought to have refilled. Neither does he allege in his second affidavit, filed approximately one month after the first, that there were any further occurrences of the sort alleged in April. Accordingly, the Magistrate Judge liberally construes the alleged April 21, 2014 incident as the only incident at issue.

Dr. Coble states the following in his declaration relevant to this alleged incident:

> At South Central Correctional Facility, inmates who have chronic illnesses are called to medical once every six months to receive treatment for those illnesses. This is called the Chronic care clinic. Inmates are not charged for chronic care visits.
>
> Inmates also have the opportunity to visit medical through the sick call procedure. Through this procedure, inmates may self-initiate a sick call request, and are then permitted to visit medical. Inmates do have to pay for self-initiated sick call visits.

6

>           To my knowledge inmates, including Tankesly, will be charged for
>           self-initiated, sick call visits.

(Doc. 42, ¶¶ 12-14, pp. 2-3)

*TDOC Administrative Policies and Procedures*, Index #: 113.15, <u>Inmate Co-Payment for Health Services</u> (hereinafter Index #: 113.15), establishes the policy on inmate co-payments. Index #: 113.15, with an effective date of June 1, 2011, remains in effect to this day, and sets forth the following provisions relevant to the alleged incident:

> <u>Chargeable Visit</u>: An encounter with institutional health care staff that is provided for an inmate pursuant to the inmate's request or initiation of a visit either through scheduled sick call or an unscheduled walk-in visit. . . .
>
> <u>Co-payment</u>: A fixed fee for medical care paid by inmates for health care designated as chargeable services.
>
> <u>Non-Chargeable Visit</u>: An encounter with institutional health care staff which is generated by . . . TDOC . . . or privately managed facility staff through TDOC policy, as a documented health services staff-directed follow-up to a previously identified condition . . . .
>
> <u>POLICY</u>: The Department shall provide health care treatment to inmates at minimal charge without regard to an inmate's ability to pay.

Index #: 113.15, ¶¶ IV.A-B, V, p. 1 of 8. TDOC policy also lists "[c]hronic care visits initiated by health care staff" as "non-chargeable services." Index #: 113.15, ¶¶ VI.I.2. & I.2.a.(10), p. 3 of 8. TDOC policy further requires that prisoners "be assessed a co-payment of $3.00" for health services initiated by an inmate. Index #: 113.15, ¶¶ VI.I.3.a & I.3.a.(1), p. 4 of 8.

Dr. Coble's declaration squares with the provisions of Index #: 113.15 cited above. Plaintiff's claims do not. Moreover, the law is firmly established that it is not unconstitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of their ability to pay. *See White v. Correctional Medical Services, Inc.*, 94 Fed.Appx. 262, 264 (6th

Cir. 2004)(citing *Reynolds v. Wagner*, 128 F.3d 166, 173-74 (3rd Cir. 1997)). Since charging plaintiff $3.00 for going to sick call under the facts alleged is not unconstitutional, and since charging plaintiff $3.00 was consistent with Index #: 113.15, the $3.00 charge does not constitute an "adverse action." Because there was no "adverse action," plaintiff cannot make a *prima facie* case of retaliation and, because he cannot make a *prima facie* showing of retaliation, he cannot succeed on the merits. Accordingly, plaintiff's motion request for injunctive relief on these grounds should be denied.

### B. Request to Appoint Counsel[2]

The law is firmly established that appointment of counsel in a civil action is not a constitutional right, but a privilege justified only by exceptional circumstances. *See Shavers v. Bergh*, 516 Fed.Appx. 568, 571 (6th Cir. 2013)(citing *Lavado v. Keohane*, 992 F.2d 601, 605-06 (6th Cir. 1993)). In evaluating whether appointment of counsel is warranted, the district court considers the nature of the case, the plaintiff's ability to prosecute the action *pro se*, and the complexity of the factual and legal issues. *Shavers*, 516 Fed.Appx. at 571.

Plaintiff makes the following argument in support of his motion: 1) he cannot afford counsel; 2) the issues in his case are complex and lie outside the knowledge of laymen; 3) he is in prison with limited research materials; 4) he has limited knowledge of the law; 5) damage from radiation treatment limits his ability to address the court and/or jury verbally. (Doc. 51, p. 1) While plaintiff no doubt views the circumstances of his case as unique, his situation is no different than any other *pro se* prisoner seeking relief under 42 U.S.C. § 1983. In fact, plaintiff's filings to date show that he is quite capable of representing himself. As for plaintiff's alleged inability to address the court

---

[2] Although the Magistrate Judge normally decides motions to appoint counsel, the Magistrate Judge has elected to include plaintiff's motion to appoint counsel in this R&R to avoid the possibility of having to respond to multiple objections.

and/or jury, plaintiff appeared before the court on August 25, 2014 for the initial case management conference in this case. Plaintiff had no difficulty addressing the court.

There are no exceptional circumstances that would warrant appointing counsel. Therefore, plaintiff's motion to appoint counsel should be denied.

### III. RECOMMENDATION

For the reasons explained above, the Magistrate Judge recommends that plaintiff's motions **(Docs. 11, 18, 51) be DENIED**.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 17th day of September, 2014.

s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge