| | | |
|---|---|---|
| CALVIN TANKESLY, JR. # 90944, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-00911 |
| | ) | Judge Trauger/Brown |
| CORRECTIONS CORPORATION | ) | |
| OF AMERICA, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that: **1)** the motion for judgment on the pleadings (Doc. 106) be **GRANTED**; **2)** all federal law claims be **DISMISSED WITH PREJUDICE** as to all defendants; **3)** the district court **DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION** over plaintiff's state law claims; **4)** this case be **DISMISSED WITHOUT PREJUDICE** as to whatever relief plaintiff may be entitled in state court on his state law claims; **5)** acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; **6)** all pending motions be terminated as **MOOT**.

## I.  INTRODUCTION
## AND
## BACKGROUND

Plaintiff proceeding *pro se* and *in forma pauperis* was a prisoner in the South Central Correctional Facility (SCCF) in Clifton, Tennessee when he brought this action on April 3, 2014 alleging violations of his rights under the First, Fifth, Sixth, Eighth, and Fourteenth Amendments; the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. §§ 12101 *et seq*; 42 U.S.C. § 1983; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); §§ 504 and 704(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*; 42 U.S.C. §§ 1981(a) & "1981 2(b)(3)." Plaintiff also alleges that defendants violated his rights under Article I §§ 8, 13, 16 and 32 of the

Tennessee Constitution, as well as Tenn. Code Ann. §§ 4-3-603 and 606.

Plaintiff named the following defendants to this action: 1) Corrections Corporation of America (CCA); 2) Damon Hininger, CCA Chief Executive Officer (CEO); 3) Dr. Jose Garriga, M.D., CCA Director of Health Services; 4) Susan Martin, a nurse practitioner at SCCF; 5) Karen Orton, a nurse at SCCF; 6) Brandi Keaton, a nurse at SCCF; 7) Dr. Robert Coble, M.D., the contract physician at SCCF; 8) Lisa Crum, SCCF security officer; 9) Jessica McElroy, the SCCF grievance chairperson; 10) Daniel Prichard, SCCF Assistant Warden; 11) Avril Chapman, SCCF Warden. Plaintiff is suing defendants in their individual and "corporate" capacity, the latter of which the Magistrate Judge construes as defendants in their "official capacity." Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs, failed to treat his tonsil cancer properly and/or in a timely fashion, and interfered with his rights to file grievances and access to the courts.

This matter was referred to the Magistrate Judge on May 16, 2014 with the following instruction:

> [E]nter a scheduling order for the management of the case . . . dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B) . . . conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court . . . .

(Doc. 5, p. 6) The District Judge also authorized the Magistrate Judge to "recommend the dismissal of any claim for the reasons set forth in 28 U.S.C. § 1915(e)(2)." (Doc. 5, p. 6)

Plaintiff filed a motion for a preliminary injunction and temporary restraining order (TRO) on June 23, 2014. (Doc. 18) Defendants responded in opposition to plaintiff's motion on July 28, 2014. (Doc. 40) Defendants provided copies filed under seal of plaintiff's medical records, including the period at issue. (Doc. 43) Plaintiff replied on September 10, 2014. (Doc. 64) In his reply, plaintiff filed additional copies of his medical records. The Magistrate Judge entered a R&R

on September 17, 2014, recommending that plaintiff's motion for a preliminary injunction and TRO be denied. (Doc. 65) Thereafter, the District Judge entered an order on September 29, 2014 adopting and approving the Magistrate Judge's R&R. (Docs. 81-82)

In an order entered on August 28, 2014, the District Judge set this case for trial on September 15, 2015. (Doc. 56) The trial date has not been changed.

Chief Executive Officer Hininger and Director Garriga filed a motion for judgment on the pleadings on February 9, 2015. (Doc. 106) Plaintiff filed a response to the motion on April 3, 2015. (Doc. 135) The motion for judgment on the pleadings filed by CEO Hininger and Director Garriga is properly before the court.

## II.  ANALYSIS

### A.  Motion for Judgment on the Pleadings Filed by
### CEO Hininger and Director Garriga
### (Doc. 106)

Plaintiff alleges that CEO Hininger and Director Garriga violated his rights under the Eighth and Fourteenth Amendments. Plaintiff alleges specifically that CEO Hininger and Director Garriga: 1) are legally responsible for overseeing the CCA contract staff at SCCF, and for providing adequate medical care to inmates there (Doc. 1, pp. 3, 17-19); 2) did not respond to plaintiff's letters about his medical situation (Doc. 1, p. 3 n. 1); 3) were deliberately indifferent to his serious medical needs (Doc. 1, pp. 8, 18); 4) did not ensure the CCA medical staff at SCCF followed the clinical and nursing protocols established to ensure the medical well being of the inmates  (Doc. 1, p. 8); 5) did not ensure the CCA medical staff at SCCF adhered to the letters of agreement that CCA required the staff to sign in which the staff acknowledged in writing they understood their duties and responsibilities to the inmates (Doc. 1, p. 8); 6) developed a protocol to keep inmates from seeing the doctor unless they were "'unconscious, or bleeding to death'" (Doc. 1, pp. 9 n. 2, 15); 7)

"consistently" delayed the approval of necessary funds "*for every individual medical need*" (Doc. 1, p. 16)(italics in the original); 8) failed to supervise the CCA staff at SCCF to make sure the staff complied with CCA's contract with the State of Tennessee (Doc. 1, pp. 17-19); 9) "failed to ensure Plaintiff's essential, 'life saving' and timely Medical Care, deliberately delayed essential Cancer Treatments . . . while permitting his subordinates to work diligently and without 'Time Restraints' to find a way to defer their cost to state tax payers . . . ." (Doc. 1, p. 18); 10) played a "direct role" in CCA's policy encouraging departmental savings to maximize corporate profits and year-end bonuses (Doc. 1, pp. 18-19, 30).

Chief Executive Officer Hininger and Director Garriga argue that they are entitled to judgment on the pleadings because plaintiff's allegations against them are conclusory, and because they are not liable under the doctrine of *respondeat superior* based on the acts and/or omissions alleged against CCA employees at SCCF. Both defendants argue their motion solely in terms of § 1983 notwithstanding that, as noted previously, plaintiff asserts that he is entitled to relief under several other federal acts and statutes, as well as state law.

"'The standard of review applicable to a motion for judgment on the pleadings . . . is the same . . . standard applicable to a motion to dismiss under Rule 12(b)(6).'" *Hayward v. Cleveland Clinig Foundation*, 759 F.3d 601, 608 (6th Cir. 2014)(citations omitted). In assessing a motion to dismiss under Rule 12(b)(6), the court is required to construe the complaint in the light most favorable to the plaintiff, accept the plaintiff's factual allegations as true, and determine whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Heinrich v. Waiting Angels Adoption Services, Inc.,* 668 F.3d 393, 403 (6th Cir. 2012)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A motion to dismiss under Rule 12(b)(6) "should not be granted 'unless it appears beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to relief.'" *Dubay v. Wells*, 506 F.3d 422, 427 (6th Cir. 2007)(quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir. 2004)).  Review under Rule 12(b)(6) generally is limited to the pleadings. *See Tellabs, Inc. v. Makor Issues & rights, Ltd.*, 551 U.S. 308, 322-23 (2007); *see also Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010).

To state a claim under § 1983, the plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution and/or laws of the United States; <u>and</u> 2) that the deprivation was caused by a person acting under color of state law. *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014)(citing *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010)).  Both parts of this two-part test must be satisfied to support a claim under § 1983. *See Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).  A successful § 1983 claimant also must establish that defendants acted knowingly or intentionally to violate his rights. *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986); *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013); *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

Private entities performing traditional state functions like prison management, including health care, act under the color of state law. *See Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir. 1996)(citing *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993)("it is clear that a private entity which contracts with the state to perform a traditional function such as providing medical services to prison inmates may be sued under § 1983 as one acting 'under color of state law.'").  Having established that CEO Hininger and Director Garriga are state actors for purposes of § 1983, the next question is whether CEO Hininger and Director Garriga deprived plaintiff of a right secured by the Constitution and/or laws of the United States.

A close reading of the complaint reveals that the claims enumerated above at pp. 3-4 are

conclusory, naked claims unsupported by any factual allegations. Although *pro se* complaints are held to less stringent standards than complaints prepared by an attorney, *see Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), the courts are not willing to "abrogate basic pleading essentials in *pro se* suits," *see Clark v. Johnston*, 413 Fed.Appx. 804, 817 (6th Cir. 2011)(quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1990)). A "complaint must 'contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.'" *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012)(quoting *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007)). Conclusory claims such as those enumerated above are subject to dismissal. *See Ashcroft*, 556 U.S. at 678; *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (1995); *Erie County, Ohio v. Morton Salt, Inc.* 702 F.3d 860, 867 (6th Cir. 2012).

In the event it were determined on subsequent review that the claims enumerated above are not conclusory, CEO Hininger and Director Garriga also argue that the complaint against them should be dismissed because they are not liable under the doctrine of *respondeat superior* based on the facts alleged. The law is settled that actions brought against state actors such as CEO Hininger and Defendant Garriga cannot be maintained under § 1983 on a theory of *respondeat superior, see Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 122 (1992); *Monell v. Dept. of Social Serv's of The City of New York, et al.*, 436 U.S. 658, 691-95 (1978); *Flagg*, 715 F.3d at 174, unless they "directly participated" in the alleged violations of the plaintiff's constitutional rights, *see Flagg*, 715 F.3d at 174; *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). For vicarious liability to attach, plaintiff must demonstrate that CEO Hininger and Director Garriga "'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct if not carrying it out [themselves]." *Flagg*, 715 F.3d at 174 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999)).

Plaintiff does not allege, nor can it be liberally construed from the complaint, that CEO Hininger and Director Garriga were <u>personally</u> responsible for any of the acts and/or omissions alleged in the complaint against the CCA staff at SCCF, *i.e.*, that they encouraged, directly participated in, authorized, approved, or knowingly acquiesced in the acts and/or omissions alleged. Neither does plaintiff allege that CEO Hininger and/or Director Garriga personally acted pursuant to any policy or custom intended to violate his constitutional rights. *See Collins*, 503 U.S. at 122; *Stemler Hininger City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997). On the contrary, plaintiff states numerous times that CEO Hiniger and Director Garriga promulgated policies that were intended to ensure his medical well being while incarcerated in SCCF. (Doc. 1, pp. 8, 18, 20, 21)

Chief Executive Officer Hiniger and Director Garriga's motion for judgment on the pleadings should be granted for the reasons explained above, and plaintiff's claims against them under § 1983 dismissed with prejudice for failure to state a claim on which relief may be granted. For the reasons explained in ¶¶ II.A.2.a-e below, plaintiff's remaining claims against CEO Hiniger and Director Garriga also should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 2. Plaintiff's Other Grounds for Relief

As previously noted, plaintiff alleges that his rights were violated under various acts and/or statutes other than §1983. A plain reading of the complaint reveals that plaintiff's demand for relief under those other acts and/or statutes warrants dismissal under 28 U.S.C. § 1915(e)(2))(2)(B(ii).

### a. Americans with Disabilities Act (ADA) of 1990 42 U.S.C. §§ 12101 *et seq*

Plaintiff asserts in the *Jurisdiction and Venue* section of his complaint that defendants

violated his rights under the ADA. (Doc. 1, p. 1) The ADA bars employment discrimination "against a qualified individual on the basis of disability in regard to the . . . terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Plaintiff does not mention the ADA anywhere in body of his complaint, he makes no effort to establish a *prima facie* case under the ADA, nor does he allege that he suffered an adverse employment action due to defendants' alleged acts and/or omissions. Plaintiff's claim(s) under the ADA should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as to all defendants for failure to state a claim on which relief may be granted.

### b. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)

Plaintiff asserts in the *Jurisdiction and Venue* section of his complaint that defendants violated his rights under Title VII of the Civil Rights Act of 1964. (Doc. 1, p. 1) Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment because of . . . race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not mention Title VII anywhere in body of his complaint, he makes no effort to establish a *prima facie* case under Title VII, nor does he allege that defendants' acts and/or omissions were motivated by his race, color, religion, sex, and/or national origin. Plaintiff's claim(s) under Title VII should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as to all defendants for failure to state a claim on which relief may be granted.

### c. §§ 504 and 704(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*

Plaintiff asserts in the *Jurisdiction and Venue* section of his complaint that defendants violated his rights under Title §§ 504 and 704(a) of the Rehabilitation Act of 1973. (Doc. 1, p. 1) "The Rehabilitation Act prohibits an employer (who receives federal funding) from imposing an

adverse employment action against an employee 'solely by reason of her of his disability.'" *Ellis v. Tennessee*, __ Fed.Appx. __, 2015 WL 221629 * 3 (6th Cir. 2015)(quoting 29 U.S.C. § 794(a)). Plaintiff does not mention the Rehabilitation Act anywhere in body of his complaint, he makes no effort to make a *prima facie* showing under the Rehabilitation Act, nor does he allege he suffered an adverse employment action due to the alleged acts and/or omissions of defendants. Plaintiff's claim(s) under the Rehabilitation Act should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as to all defendants for failure to state a claim on which relief may be granted.

### d. 42 U.S.C. §§ 1981(a) & "1981 2(b)(3)"

Plaintiff asserts in the *Jurisdiction and Venue* section of his complaint that defendants violated his rights under 42 U.S.C. §§ 1981(a) and "1981 2(b)(3)". (Doc. 1, p. 1) Section 1981 establishes four protected interests: 1) the right to make and enforce contracts; 2) the right to sue, be parties, and give evidence; 3) the right to the full and equal benefit of the laws; 4) the right not to be subject to different punishments. 42 U.S.C. § 1981. To establish a *prima facie* showing under § 1981, plaintiff must show that: 1) he belongs to an identifiable class of persons who are subject to discrimination based on their race; 2) defendants intended to discriminate against him because of his race; 3) that the alleged discrimination abridged a right enumerated in § 1981(a). *Carmichael v. City of Cleveland*, 571 Fed.Appx. 426, 432 (6th Cir. 2014)(citing *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006)). Plaintiff does not mention § 1981(a) anywhere in body of his complaint, he makes no effort to make a *prima facie* showing under § 1981(a), nor does he allege that the alleged acts and/or omissions of defendants were because of his race. As for § "1981 2(b)(3)," there is no such statute, nor can it be liberally construed from the complaint what "1981 2(b)(3)" might be. Plaintiff's claim(s) under §§ 1981(a) and "1981 2(b)(3)" should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as to all defendants for failure to state a

claim on which relief may be granted.

### e. Due Process Clause of the Fourteenth Amendment

Plaintiff argues repeatedly that defendants' alleged acts and/or omissions regarding his medical care violated both the Fourteenth Amendment and the Eighth Amendment. The Due Process Clause of the Fourteenth Amendment protects pretrial detainees from unnecessarily and wantonly inflicted pain, including deliberate indifference to a pretrial detainee's serious medical needs, whereas the Eighth Amendment protects convicted prisoners. *Smith v. Erie County Sheriff's Dept.*, __Fed.Appx.__, 2015 WL 831730 *4 (6th Cir. 2015)(citing *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001)). Because plaintiff is a convicted prisoner and not a pretrial detainee, the Eighth Amendment – not the Due Process Clause of the Fourteenth Amendment – applies to plaintiff's allegations that defendants were deliberately indifferent to his serious medical needs. Plaintiff's claims of deliberate indifference under Due Process Clause of the Fourteenth Amendment should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) as to all defendants for failure to state a claim on which relief may be granted.

### B. Plaintiff's § 1983 Claims Against the Remaining Defendants

#### 1. CCA

Plaintiff alleges that CCA violated his rights under the First and Eighth Amendments. (Doc. 1, pp. 2, 17) Plaintiff asserts specifically that CCA: 1) endorses the "standing" policy that, "if they [are] breathing, or not bleeding to death, don't bother" (Doc. 1, p. 15)(bold and underline omitted); 2) has a bonus system that encourages negligence by linking bonuses to cost savings (Doc. 1, pp. 15, 17, 29); 3) does not equip the medical staff at SCCF to provide for the medical needs of cancer patients (Doc. 1, p. 16); 4) "delays the approval of necessary funds for *every individual medical need*, resulting in **'essential treatment'** being <u>delayed</u>, often <u>completely denied</u>" (Doc. 1, p.

16)(italics, bold, and underline in the original); 5) "acted with malice, demonstrated Obdurate and Wanton desire to Plaintiff's 'Urgent Medical Needs', ignoring the urgency of plaintiff's medical condition . . . ." (Doc. 1, p. 17); 6) is liable under the deliberate indifference standard (Doc. 1, p. 17); 7) has a "blanket '*Standing Policy and Practice*'" that encourages departmental savings in exchange for year end bonuses over providing needed medical care (Doc. 1, pp 17-18)(italics in the original); 8) is legally responsible for the actions of all its employees (Doc. 1, pp. 17); 9) supports grievance chairwoman McElroy's practice of holding grievances until after the filing deadline, then dismissing them without a hearing thereby effectively blocking his access to the courts (Doc. 1, p. 26); 10) "contracted with a "Single Doctor" who is only at this facility two (2) times a week . . . ." (Doc. 1, p. 30)

As to plaintiff's Eighth Amendment claim against CCA, "a prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013)(quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An Eighth Amendment claim for the denial of adequate medical care has an objective and subjective component. *Quigley,* 707 F.3d at 681 (citing *Comstock*, 273 F.3d at 702). The objective component requires that the alleged deprivation be sufficiently severe, while the subjective component requires that the defendant(s) acted with a sufficiently culpable state of mind. *Quigley,* 707 F.3d at 681.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief under § 1983. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. Finally, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess prison officials' medical judgments and

constitutionalize claims which sound in state tort law. *Graham ex rel. Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)(citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)).

It is clear from the record before the court, including medical records provided by both plaintiff and defendants, that plaintiff received frequent medical care during the period at issue, including care for issues pertaining to his cancer. (Docs. 43 & 64) Given that the record shows plaintiff received frequent care, including care related to his cancer, it is obvious that plaintiff disputes the adequacy of that care. As noted previously, plaintiff's disagreement with medical care provided does not rise to the level of an Eighth Amendment violation. Moreover, lacking any supporting factual allegations, a close reading of the complaint reveals that 1)-7) and 10) above are conclusory. As to 8) above, this is an allegation that CCA failed to supervise its medical staff at SCCF. As previously explained, CCA is not liable in a § 1983 action under the doctrine of *respondeat superior* where no direct participation is alleged. Plaintiff does not allege that CCA participated directly in the alleged acts and/or omissions of the CCA medical staff at SCCF. Therefore, CCA is not liable to plaintiff under the doctrine of *respondeat superior* for those alleged acts and/or omissions.

Turning to plaintiff's First Amendment claims, while prisoners have an undisputed First Amendment right to file grievances, *see Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010); *Thomas v. Eby*, 481 F.3d 434, 440 (6th Cir. 2007), state law does not create a liberty interest in the grievance procedure, *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983). More particularly, a state has no federal due process obligation to follow all of its grievance procedures, *see Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir.1993)(overruled in part on other grounds by *Thompson v. Keohane*, 516 U.S. 99, 111 (1995). In other words, plaintiff cannot premise a § 1983 claim on allegations that the grievance

procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an adequate and/or responsive grievance procedure in the first place. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995)).

As for plaintiff's access-to-the-courts claim, the law also is settled that a prisoner has a First Amendment right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821-823 (1977). However, to state a claim for denial of access to the courts, plaintiff must plead and prove prejudice stemming from the alleged violation(s). *Lewis v. Casey*, 518 U.S. 343, 351-55 (1996); *see Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). Plaintiff does not plead – much less prove – that he was prejudiced by the alleged interference with his access to the court. Certainly nothing in the record before the court supports such an inference in this case.

Finally, the Magistrate Judge notes that plaintiff's First Amendment claims against CCA are couched in terms of chairwoman McElroy's alleged practice of holding grievances beyond the deadline, and then dismissing those grievances without a hearing on grounds of timeliness, discussed below. As previously explained, CCA is not liable under the doctrine of *respondeat superior* where no direct involvement is alleged. Plaintiff does not allege that CCA was directly involved in chairwoman McElroy's alleged practices, much less that CCA even knew of those alleged practices.

For the reasons explained above, plaintiff's First and Eighth Amendment claims against CCA should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 2. Nurse Practitioner Martin

Plaintiff asserts that nurse practitioner Martin failed to provide him with adequate medical care in violation of the Eighth Amendment. (Doc. 1, pp. 3, 8) Plaintiff alleges specifically that nurse Martin: 1) ignored his request for diagnosis for 9 months (Doc. 1, pp. 8, 15); 2) repeatedly told

him not to worry, that his condition was nothing to be concerned about, and that lab work was not necessary (Doc. 1, pp. 8-9, 15); 3) failed to provide adequate medical care in accordance with a letter of agreement she signed acknowledging her responsibilities to that end (Doc. 1, pp. 8-9); 4) engaged with others in a "deliberate campaign to misdiagnose" his condition, and prevent him from seeing the doctor (Doc. 1, pp. 9, 15, 20); 5) contributed to his developing Stage 4-A tonsil cancer (Doc. 1, p. 9); 6) adhered to the standing policy of "if they [are] breathing, or not bleeding to death, don't bother" (Doc. 1, p. 15)(bold and underline omitted); 7) failed to follow the guidelines and protocol for inmate health care (Doc. 1, p. 20); 8) failed to provide an "objective examination" of his condition (Doc. 1, p. 20); 9) established a "'Pattern or Design' through 'Policy Practices'" that stressed cost cutting to secure annual bonuses (Doc. 1, p. 30).

Allegations 1) and 2) above amount to medical malpractice at most, because plaintiff fails to allege any facts to establish the *mens rea* necessary to support a deliberate indifference claim under the Eighth Amendment. More particularly, plaintiff does not allege, nor can it be liberally construed from the complaint, that nurse practitioner Martin would not/did not treat him, *i.e.*, that she turned him away without providing any care, only that she would not permit him to see the doctor after she saw plaintiff. Additionally, as previously established, where as here a prisoner has received some medical care but disputes the adequacy of that care, the courts will not second guess the judgment of prison officials, in this case nurse practitioner Martin's judgment. Finally, a close reading of the complaint shows that 1)-9) above are conclusory.

For the reasons explained above, plaintiff's Eighth Amendment claim against nurse practitioner Martin should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 3. Nurse Orton

Plaintiff alleges that nurse Orton failed to provide him with adequate medical care in violation of the Eighth Amendment. (Doc. 1, pp. 3, 8)  Plaintiff levels many of the same allegations against nurse Orton as he did against nurse practitioner Martin. (Doc. 1, pp. 8-9, 15, 20-21)  For the reasons explained above at p. 14, those allegations do not rise to the level of an Eighth Amendment violation.

Plaintiff also alleges that nurse Orton: 1) "set out" to sabotage his recovery by disregarding her supervisor's directive to not to issue "his Flavored Ensures to every inmate prescribed Boost Nutrition Drink," thereby leaving him with no nutritional intake for up to 30-plus days (Doc. 1, pp. 12-14, 21, 34-35); 2) deliberately and with malice substituted an unknown substance for his pain medication causing him severe pain (Doc. 1, pp. 14, 21); 3) refused to deliver chronic pain medication for acid reflux during a prison lockdown (Doc. 1, pp. 14, 22); 4) refused to communicate with plaintiff when plaintiff inquired about his medications (Doc. 1, p. 14); 5) misinformed Dr. Coble causing Dr. Coble to alter plaintiff's treatment (Doc. 1, p. 14); 6) posted notes on a board that "Tankesly gets no Boost with a Smiley Face" (Doc. 1, p. 14); 7) acted with malice to cause unnecessary pain and suffering in a conscious, wanton, and arbitrary attempt to sabotage his recovery (Doc. 1, p. 21); 8) denied plaintiff's access to a scale to document his claim that he had regained only 7 lbs. of the 67 lbs. he lost during and after treatment (Doc. 1, p. 33).

Plaintiff asserts in 1) above that nurse Orton issued "Flavored Ensures" "to every inmate prescribed Boost Nutrition Drinks . . . ," the inference being that the "Flavored Ensures" plaintiff considered "his" were given to other inmates who also had a prescription for nutritional drinks. (Doc. 1, p. 13)  Although plaintiff alleges that nurse Orton "deliberately" left him with "NO Nutritional intake for as long as 30(+) days," the medical records provided by defendants show that

plaintiff actually refused his "Flavored Ensure" at least 18 times between August 26, 2013 and January 11, 2014, often more than once in a given day. (Docs. 43-4, pp. 1-4, 11-12, 40; 43-5, pp. 1-4, 8-9) Given these facts, this claim is disingenuous at best.

With respect to 2) above, plaintiff asserts that nurse Orton acted deliberately and with malice in giving him an "unknown substance" instead of his regular pain medication. However, plaintiff does not provide any factual allegations to support his assertion that nurse acted deliberately and with malice. Absent any supporting facts, 2) above is conclusory, representing little more than plaintiff's opinion as to nurse Orton's intent. Consequently, plaintiff fails to establish that nurse Orton acted with deliberate indifference with respect to the alleged "unknown substance."

Absent any supporting facts, a close reading of the complaint reveals that 3)-7) above are conclusory. Finally, plaintiff's claim that nurse Orton has denied him access to a scale – 8) above – to document that he had only regained 7 lbs. of the 67 lbs. he lost does not constitute deliberate indifference under the Eighth Amendment.

As explained above, plaintiff fails to make a showing under the Eighth Amendment against nurse Orton. Therefore, this claim should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 4. Nurse Keaton

Plaintiff alleges that nurse Keaton denied him adequate medical care in violation of the Eighth Amendment. (Doc. 1, pp. 4, 14) Plaintiff alleges specifically that nurse Keaton: 1) "set out" to sabotage his recovery by disregarding her supervisor's directive to not to issue his Flavored Ensures to every inmate prescribed "Boost Nutrition Drink," thereby leaving him with no nutritional intake for up to 30-plus days (Doc. 1, pp. 13-14); 2) deliberately misinformed Dr. Coble after reviewing plaintiff's inmate trust fund account and determining that plaintiff was eating food

obtained from the commissary thereby causing Dr. Coble to discontinue plaintiff's "Flavored Ensures" which, in turn, allegedly resulted in plaintiff not having any nutritional intake for prolonged periods of time (Doc. 1, p. 13 and n. 3); 3) substituted an "unknown substance" for his pain medication, causing severe pain (Doc. 1, p. 14); 4) actively blocked plaintiff from seeing Dr. Coble (Doc. 1, p. 16); 5) denied plaintiff's use of a scale to document he had regained only 7 lbs. of the 67 lbs. he claims to have lost during and after treatment (Doc. 1, p. 33).

For reasons previously explained, allegations 1), 3) and 5) above do not give rise to an Eighth Amendment violation. Plaintiff's claim that nurse Keaton <u>misinformed</u> Dr. Coble that plaintiff was eating – 2) above – is not supported by the facts. Plaintiff admits in the complaint that he purchased commissary items he then used to purchase or trade for kitchen items, e.g., bread, butter, oatmeal, etc. (Doc. 1, p. 13 & n. 3) Based on plaintiff's admission, nurse Keaton did not misinform Dr. Coble of plaintiff's commissary purchases. Even assuming for the sake of argument that nurse Keaton's characterization of plaintiff's commissary purchases was inaccurate, plaintiff does not provide any facts to support the inference that nurse Keaton acted knowingly and intentionally to violate his rights.

Lacking any supporting factual allegations, 4) above is conclusory. Finally, as previously noted, denial of access to a scale – 5) above – does not constitute deliberate indifference under the Eighth Amendment.

As explained above, plaintiff fails to make a showing under the Eighth Amendment against nurse Keaton. Therefore, plaintiff's claim against nurse Keaton should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

**5. Dr. Coble**

Plaintiff alleges that Dr. Coble denied him adequate medical care in violation of the Eighth Amendment. (Doc. 1, pp. 4, 23) Plaintiff alleges specifically that Dr. Coble: 1) examined his neck on May 3, 2013, ordered a CAT scan, and subsequently a biopsy (Doc. 1, pp. 8-9); 2) informed him on May 22, 2013 that he had tonsil cancer (Doc. 1, p. 9); 3) substituted Lortab instead of time released morphine prescribed by the oncologist (Doc. 1, pp. 11, 22); 4) ordered plaintiff's medications changed from pill to liquid form (Doc. 1, p. 11); 5) "arranged for a Liquid Diet . . . ." (Doc. 1, p. 12); 6) discontinued plaintiff's "Flavored Ensures" without examining him, having been informed that plaintiff was purchasing food from the commissary (Doc. 1, pp. 13, 16, 22-23, 33, 35); 7) refused to treat plaintiff's weight and muscle loss (Doc. 1, p. 13); 8) reduced plaintiff's pain medication after he was examined by another doctor, but without examining him himself (Doc. 1, pp. 15-16, 34); 9) is not equipped to treat any cancer patient (Doc. 1, p. 16); 10); refuses to assist plaintiff with problems arising from his cancer treatment during recovery (Doc. 1, pp. 16, 34); 11) told plaintiff that he is not plaintiff's doctor, and he should take up his cancer-related issues with his oncologist (Doc. 1, p. 16); 12); 12) refuses to communicate with plaintiff's oncologists (Doc. 1, p. 22); 13) told plaintiff that he was trying to have moved to another facility, and that he should be glad he was alive (Doc. 1, p. 23); 14) refused to check his weight (Doc. 1, p. 23); 15) acted knowingly, deliberately, capriciously, and arbitrarily with the intent to cause pain and suffering (Doc. 1, p. 23); 16) denied plaintiff access to a scale to show that he has regained only 7 lbs. of the 67 lbs. he claims he lost during and after treatment (Doc. 1, p. 33).

The medical records before the court show that Dr. Coble treated plaintiff repeatedly during the period at issue, including treatment for plaintiff's cancer related issues. (Doc. 1, ¶¶ V.3-4, 13, 16, 28-29, 31, 40, 49-50, pp. 8-9, 11-14, 15-16, 22-23, 33, 35) Although plaintiff obviously

disagrees with the care provided, as previously established, disagreement with medical care provided, *i.e.*, 1)-9), 14) and 15) above – does not give rise to a claim under the Eighth Amendment. Absent any supporting factual allegations, allegations 10)-13) are conclusory. Finally, as previously explained, 16) above does not give rise to a clam under the Eighth Amendment.

As explained above, plaintiff fails to make a showing under the Eighth Amendment against Dr. Coble. Therefore, plaintiff's claim against Dr. Coble should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 6. Officer Crum

Plaintiff alleges that officer Crum violated his rights under the Eighth Amendment. More particularly, plaintiff alleges that officer Crum: 1) did not awaken him during security check in August and September 2013 during his cancer treatments to "'*check if he was alive*'[] during his aggressive Radiation Cancer Treatment that left him in an extremely weaken[ed] state . . . ." (Doc. 1, p. 23)(italics and underline in the original); 2) awakened him every hour of the night in October 2013 by shining her laser pointer or flashlight in his face, or by banging on his cell door window when he did not respond to the light, disrupting his sleep and interfering with his recovery (Doc. 1, p. 24); 3) fabricated multiple fraudulent disciplines alleging that plaintiff was screaming and cursing (Doc. 1, p. 24); 4) acted deliberately and maliciously in a conscious, wanton, and arbitrary effort to impede his recovery by denying him undisturbed sleep (Doc. 1, pp. 24, 35).

Plaintiff admits as to 1) above that he filed a grievance against officer Crum because she did not awaken him in August and September 2013 to "check if he was alive." (Doc. 1, p. 23 n. 5) Plaintiff states that officer Crum defended her actions against plaintiff's grievance as not wishing to disturb plaintiff's sleep because of his extremely weakened state. (Doc. 1, p. 23 n. 5) Although

plaintiff does not say so specifically, a reasonable juror would infer from the pleadings that officer Crum began checking on plaintiff in October because of the grievance plaintiff filed against her for not doing so in the months prior. Although plaintiff alleges that officer Crum would shine her light in his eyes while he slept, plaintiff does not allege that officer Crum continued to shine it in his eyes once he opened them and determined that he "was alive." Although plaintiff asserts that officer Crum banged on his cell door to awaken him, he admits that officer Crum resorted to banging on his cell door only if she was unable to awaken him with her light. Again, plaintiff does not allege, nor can it be liberally construed from the complaint, that officer Crum continued to bang on the cell door to prevent plaintiff from going back to sleep. Plaintiff's alleged actions in 1) and 2) simply do not establish the culpable state of mind necessary to support a deliberate indifference claim under the Eighth Amendment against officer Crum.

Taking 3) above as true, *i.e.*, that officer Crum filed fraudulent disciplines against him, a prisoner has no constitutionally protected right not to be falsely accused where there is not deprivation of a constitutionally protected liberty. *See Jackson v. Hamlin*, 61 Fed.Appx. 131, 132 (6th Cir. 2003). Plaintiff does not allege that he was deprived of a constitutionally protected liberty because of the allegedly "fraudulent disciplines," or that he was otherwise punished because of them.

Finally, as to 4) above, plaintiff has failed to show that officer Crum's alleged actions constituted a conscious, wanton, and arbitrary effort to impede his discovery by denying him undisturbed sleep.

As explained above, plaintiff fails to make a showing under the Eighth Amendment against officer Crum. Therefore, plaintiff's claim against officer Crum should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be

granted.

### 7. Grievance Chairwoman McElroy

Plaintiff alleges that chairwoman McElroy violated his rights under the First, Fifth, Sixth, Eighth and Fourteenth Amendments. (Doc. 1, pp. 5, 6, 25) Plaintiff asserts that chairwoman McElroy: 1) "collectively" dismissed all but one of plaintiff's grievances as non-grievable (Doc. 1, p. 6); 2) did not log in or process other grievances (Doc. 1, p. 6); 3) denied him his due process right to file grievances and his First Amendment right of access to the courts (Doc. 1, pp. 6, 25, 27); 4) shared his grievances with the security staff resulting in "retribution"; 5) summoned plaintiff to the grievance board when she knew he was at the hospital for treatment (Doc. 1, p. 6); 6) prevented and/or denied plaintiff from obtaining copies of 6 of the 12 grievances he filed (Doc. 1, p. 25); 7) prevented him from filing grievances against Warden Chapman, Assistant Warden Prichard, nurse Keaton, and officer Crum (Doc. 1, p. 25); 8) failed to follow published procedures to permit him to correct an error in a grievance he filed (Doc. 1, p. 26); 9) was motivated by protecting CCA's financial interests and keeping CCA's medical "incompetence" from being made public (Doc. 1, p. 27).

As previously established, plaintiff cannot premise a § 1983 claim under the First Amendment or the Fourteenth Amendment's procedural Due Process Clause, *i.e.*, 1)-3) and 5)-8) above, on grounds that the grievance procedure at SCCF was inadequate and/or unconstitutional nor, as previously shown, has plaintiff made a showing that his First Amendment right of access to the courts was violated. With respect to 4) and 9) above, absent any supporting factual allegations, both are conclusory. Finally, neither the Fifth Amendment substantive due process clause nor the Sixth Amendment apply under any of the facts alleged, nor does the Eighth Amendment apply inasmuch as plaintiff does not allege, nor can it be liberally construed from the complaint, that chairwoman

McElroy's alleged acts and/or omissions amounted to cruel and unusual punishment.

As explained above, plaintiff fails to make a showing under § 1983 against chairwoman McElroy. Therefore, plaintiff's claim against chairwoman McElroy should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### h. Assistant Warden Prichard

Plaintiff asserts that Assistant Warden Prichard is "legally responsible for overseeing his subordinates" at SCCF. (Doc. 1, p. 5) Plaintiff alleges that Assistant Warden Prichard: 1) endorsed the policy of "if they [are] breathing, of not bleeding to death, don't bother . . . ." (Doc. 1, p. 15)(bold and underline omitted); 2) endorsed chairwoman McElroy's policy of holding grievances beyond the 7-day deadline, and then dismissing them without a hearing (Doc. 1, p. 26); 3) has been delegated authority over food service and medical without benefit of food service or medical experience (Doc. 1, p. 27); 4) failed to provide plaintiff's most basic needs, including medical and nutritional needs during his after-care by delegating those responsibilities to his "underlings" who, in turn, failed to provide for those needs (Doc. 1, p. 27); 5) negligently allowed plaintiff to reach a point of near starvation, allowing his subordinates to provide plaintiff with cooking broth rather than broth designed for human consumption (Doc. 1, p. 28); 6) failed to oversee his subordinates in meeting plaintiff's needs (Doc. 1, p. 28).

Absent any supporting factual allegations, 1) above is conclusory. As to 2) above, even if Assistant Warden Prichard supported chairwoman McElroy's alleged actions, there is no constitutional violation for the reasons previously explained. Finally, as to 3)-5) above, all pertain to Assistant Warden Prichard's alleged failure to supervise his subordinates. As previously established, there is no liability under § 1983 under the doctrine of *respondeat superior* where no

direct participation is alleged. Plaintiff does not allege that the problems he allegedly experienced were the result of Assistant Warden Prichard's direct involvement. Consequently, liability under the doctrine of *respondeat superior* does not attach.

Plaintiff fails to state a cognizable claim under § 1983 against Assistant Warden Prichard. Therefore, plaintiff's claim against Assistant Warden Prichard should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### 9. Warden Chapman

Plaintiff asserts that Warden Chapman is "legally responsible for overseeing his subordinates" at SCCF. (Doc. 1, p. 5) Plaintiff alleges that Warden Chapman: 1) endorsed the policy of "if they [are] breathing, or not bleeding to death, don't bother" (Doc. 1, p. 15)(bold and underline omitted); 2) supported chairwoman McElroy's policy of holding grievances beyond the 7-day deadline, and then dismissing them without a hearing (Doc. 1, p. 26); 3) "negligently failed to correct the [c]ivil and [c]onstitutional violations of his employees . . . by delegating his authority[] and responsibilities to underlings while failing to oversee their [a]cts, [b]ehavior[] as well as [policy and [c]onstitutional [v]iolations . . . ." (Doc. 1, p. 28); 4) deliberately kept matters from the Commissioner's office to protect share holder profits (Doc. 1, p. 29); 5) failed to monitor or correct the actions and behavior of the staff at SCCF (Doc. 1, p. 29).

Absent any supporting allegations, 1) and 4) above are conclusory. As to 2) above, even if Warden Chapman supported chairwoman McElroy's alleged actions, there is no constitutional violation for reasons previously explained. As for 3) and 5), Warden Chapman is not liable under the doctrine of *respondeat superior* for the alleged acts and/or omissions of his subordinates, where no direct participation is alleged. Plaintiff does not assert that Warden Chapman participated

directly in the violations alleged.

Plaintiff fails to state a cognizable claim under § 1983 against Warden Chapman. Therefore, plaintiff's claim against Warden Chapman should be dismissed *sua sponte* with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted.

### C. Plaintiff's State Law Claims

As noted above at p. 1, plaintiff alleges that defendants violated his rights under the Tennessee law. However, because all of plaintiff's federal claims should be dismissed for the reasons explained herein, the District Court should decline to exercise its supplemental jurisdiction over plaintiff's state law claims and dismiss them without prejudice to whatever relief plaintiff may be entitled in state court.

### III. CONCLUSION

The Magistrate Judge has analyzed plaintiff's many allegations against each of the defendants. Careful analysis of the facts alleged – viewed both in an individual <u>and</u> collective sense – establish that plaintiff fails to state a claim under § 1983 on which relief may be granted as to any of the defendants.

### IV. RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that: **1)** the motion for judgment on the pleadings (Doc. 106) be **GRANTED**; **2)** all federal law claims be **DISMISSED WITH PREJUDICE** as to all defendants; **3)** the district court **DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION** over plaintiff's state law claims; **4)** this case be **DISMISSED WITHOUT PREJUDICE** as to whatever relief plaintiff may be entitled in state court on his state law claims; **5)** acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; **6)** all pending motions be terminated as **MOOT**.

Under Rule 72(b), Fed. R. Civ. P., any party has fourteen (14) days from service of this R&R within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this R&R within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal of this R&R. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

**ENTERED** this the 9th day of June, 2015.


s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge