IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CALVIN O. TANKESLY, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-0911 |
| ) | |
| CORRECTIONS CORPORATION OF AMERICA, ) | Judge Trauger |
| DAMON HINIGER, [F/N/U] GARRIGA, ) | |
| SUSAN MARTIN, KAREN ORTON, ) | |
| [F/N/U] COBLE, LISA CRUM, JESSICA ) | |
| McELROY, DANIEL PRITCHARD, AVRIL ) | |
| CHAPMAN, and BRANDI KEATON, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

The court having granted the plaintiff's motion for relief from judgment, the court now considers *de novo* the plaintiff's objections (ECF No. 185) to the magistrate judge's June 9, 2015 Report and Recommendation ("R&R") (ECF No. 145).

As set forth herein the court will accept in part and reject in part the R&R. Specifically, the court will reject the recommendation that the claims under 42 U.S.C. § 1983 and state law against defendants Susan Martin, Karen Orton, and Dr. Coble be dismissed. The court will accept the recommendation that all claims against the remaining defendants and all claims under the ADA, Title VII, the RA, 42 U.S.C. § 1981, and the Fourteenth Amendment be dismissed.

**I.  BACKGROUND**

The plaintiff instituted this action by filing a verified complaint in April 2014, asserting claims against the defendants under the "42 U.S.C. §§ 12101–12213 [the Americans with Disabilities Act]; U.S.C. § 1983 [sic]; Title VII of the Civil Rights Act of 1964; §§ 504 and 704(a) of the Rehabilitation Act of 1973, 42 U.S.C. § 2000e-3(a); 42 U.S.C. §§ 1981(a) & 1981 2(b)(3) [sic], and the Due Process Clause of the 14th Amendment." (Complaint, ECF No. 1, at 1.) The complaint named as defendants Corrections Corporation of America ("CCA"); CCA's Chief Executive Officer, Damon Hininger; CCA Director of Health

Services, Dr. Jose Garriga; the former Warden of South Central Correctional Center ("SCCC"),[1] Arvil Chapman[2]; Assistant Warden Daniel Pritchard; Nurse Susan Martin; Nurse Karen Orton; Nurse Brandi Keaton; Dr. Coble; Lisa Crum; and Jessica McElroy. In summary, the plaintiff complained that the nursing staff at SCCC, the CCA-operated prison at which the plaintiff was housed at that time, ignored his complaints of pain and throat swelling for more than ten months before finally referring him to see Dr. Coble. After finally being referred to the doctor in May 2013, he was sent for outside tests and ultimately diagnosed with Stage 4-A tonsil cancer. The plaintiff alleges that the post-cancer treatment he received by the medical staff at SCCC also amounted to deliberate indifference insofar as his pain complaints and nutritional needs were intentionally ignored.

The court conducted an initial review of the complaint and, construing it liberally, found that it stated colorable claims for relief under 42 U.S.C. § 1983 based on allegations that the defendants were deliberately indifferent to the plaintiff's serious medical needs and had purposefully deprived him of appropriate food and nutrition. (ECF No. 5.) The court directed that the complaint be served on the defendants and that the matter be referred to the magistrate judge for case management and to dispose of or recommend disposition of any pretrial motions.

On February 9, 2015, defendants Hininger and Garriga moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, arguing that (1) the claims against these two defendants were based on legal conclusions rather than concrete factual allegations and that legal conclusions are not entitled to a presumption of truth; and (2) the plaintiff failed to allege that defendants Hininger and Garriga were personally involved in the denial of medical care to the plaintiff. (Motion and Memorandum, ECF Nos. 106, 107.) After being granted an extension of the deadline for doing so, the plaintiff filed his response (ECF No. 135) in opposition to the motion.

## II. THE JUNE 9 R&R

The magistrate judge issued an R&R (ECF No. 145) recommending that the court grant the

---

[1] CCA's website identifies this prison as "South Central Correctional Center," while TDOC's website identifies it as "South Central Correctional Facility."

[2] The plaintiff identifies the former warden of SCCC as "Avril" Chapman. The court takes judicial notice that Chapman, currently the warden at the West Tennessee Detention Facility, also operated by CCA, is named "Arvil" Chapman.

motion for judgment on the pleadings and, further, that the court dismiss *sua sponte* all federal claims against all defendants, with prejudice, and decline to exercise supplemental jurisdiction over any remaining state-law claims.

More specifically, the R&R found that defendants Hininger and Garriga were entitled to judgment on the pleadings because (1) the statements supporting the claims against them were entirely conclusory, unsupported by factual allegations, and (2) the complaint failed to assert facts showing that they had any personal involvement in the decisions regarding the plaintiff's medical treatment, and § 1983 liability may not be based upon the doctrine of *respondeat superior*.

Although no other motion was then pending, the R&R went on to consider the other claims in the complaint and to conclude that all of them were subject to dismissal for "fail[ure] to state a claim on which relief may be granted," under 28 U.S.C. § 1915(e)(2)(B)(ii). Based on that standard, the R&R recommended dismissal of the plaintiff's claims brought under the Americans with Disabilities Act ("ADA"), Title VII, the Rehabilitation Act ("RA"), § 1981, and the Due Process Clause of the Fourteenth Amendment. The R&R also reviewed the factual allegations in the complaint and concluded that they failed to support a colorable claim under § 1983 against any of the other named defendants, particularly when considered in conjunction with the medical records that were already in the court file by that date. (*See, e.g.*, ECF Nos. 43 and 64.[3]) The magistrate judge found that it was "clear" from the record before the court that the plaintiff had received "frequent medical care during the period at issue," in light of which it was "obvious that plaintiff disputes the adequacy of that care" rather than the absence of any care at all. (ECF No. 145, at 12.)

The magistrate judge recommended dismissal of the claims against Corrections Corporation of America ("CCA") on the basis that the plaintiff's allegations against the corporate defendant were wholly conclusory and did not show the direct participation of CCA in the alleged acts and omissions of the CCA medical staff.

Regarding the claims against defendant Susan Martin, the magistrate judge observed that the

---

[3] Document No. 43 includes "a true and accurate copy of the relevant medical records of Inmate Calvin Tanksely" submitted by Dr. Coble in support of his declaration in opposition to the plaintiff's motion for a preliminary injunction. Document No. 64 is the plaintiff's reply in support of his motion for a preliminary injunction, to which he attached as exhibits additional records.

plaintiff alleged that this defendant had ignored his requests for a diagnosis and lab tests for nine months, repeatedly told him not to worry, engaged with others in a "deliberate campaign to misdiagnose his condition," and prevented him from seeing the doctor, thus contributing to his development of Stage 4-A tonsil cancer. (ECF No. 145, at 14 (citing ECF No. 1, at 9, 15, 20).) He also alleged that Martin "adhered to a policy of "if they [are] breathing, or not bleeding to death, don't bother." (*Id.* (citing ECF No. 1, at 15).) The magistrate judge concluded that the plaintiff's allegations were "conclusory" and that they supported, at most, a claim of medical malpractice, because "plaintiff fails to allege any facts to establish the *mens rea* necessary to support a deliberate indifference claim under the Eighth Amendment." (ECF No. 145, at 14.) On that basis, the magistrate judge recommended dismissal of the claims against Martin under § 1915(e)(2)(B)(ii).

Because the plaintiff's allegations against defendant Karen Orton largely paralleled those against Martin, the magistrate judge recommended dismissal of the claims against Orton for the same reasons as he recommended dismissal of the claims against defendant Martin. The plaintiff also alleged that Orton attempted in various ways to "sabotage" his recovery, acting with malice to cause unnecessary pain and suffering. The magistrate judge again found these allegations to be conclusory and further that they failed to establish that the defendant acted deliberately and with malice.

The magistrate judge reviewed the specific allegations in the complaint supporting the claim against Dr. Coble in conjunction with the plaintiff's actual medical records, and concluded that the medical records "show[ed] that Dr. Coble treated plaintiff repeatedly during the period at issue, including treatment for plaintiff's cancer related issues. Although plaintiff obviously disagrees with the care provided, as previously established, disagreement with medical care provided . . . does not give rise to a claim under the Eighth Amendment." (ECF No. 145, at 19 (citations to the record omitted).) The magistrate judge therefore recommended dismissal of the claims against Dr. Coble for failure to state a claim for which relief could be granted under § 1983.

The magistrate judge recommended that the claims against defendant Daniel Pritchard, assistant warden at SCCC, be dismissed as well. The plaintiff's claims against Pritchard are premised upon his allegations that Pritchard (1) endorsed the policy of "if they [are] breathing, of not bleeding to death, don't bother . . . ." (ECF No. 1, at 15); (2) endorsed defendant McElroy's policy of holding grievances beyond

the 7-day deadline and then dismissing them without a hearing; (3) failed to ensure the provision of the plaintiff's medical and nutritional needs during his after-care, thus negligently allowed plaintiff to reach a point of near starvation; and (4) failed to oversee his subordinates in meeting the plaintiff's needs. As with the plaintiff's claims against other supervisory officials, the magistrate judge found that the plaintiff's allegations were conclusory statements of liability unsupported by factual allegations, failed to rise to the level of a constitutional violation, or pertained only to an alleged failure to adequately supervise subordinates without personal involvement in the disputed actions. Because there is no *respondeat superior* liability under § 1983, the magistrate judge recommends dismissal of the claims against defendant Pritchard.

The magistrate judge recommended that the claims against defendants Brandi Keaton, Lisa Crum, Jessica McElroy, and Arvil Chapman be dismissed on the basis that the plaintiff's allegations against these defendants either failed to rise to the level of an Eighth Amendment violation, were not supported by the factual record, were conclusory, or failed to support an inference that the defendants participated in or acted knowingly and intentionally to violate the plaintiff's rights.

### III.    THE PLAINTIFF'S OBJECTIONS

In his objections, the plaintiff first concedes that the complaint fails to state a colorable claim against any of the defendants under the ADA, Title VII of the Civil Rights Act of 1964, the RA, § 1981, or the Fourteenth Amendment. He also concedes that the complaint fails to state a claim under federal law against defendants Keaton, McElroy, Crum, and Chapman. Accordingly, the court will accept without further analysis the magistrate judge's recommendation that the claims under the referenced statutes and against those defendants be dismissed.

In support of his § 1983 claim against the remaining defendants, CCA, Hininger, Garriga, Martin, Orton, Coble, and Pritchard, the plaintiff insists that: (1) he has not had the opportunity to obtain discovery in the form of depositions or to obtain expert testimony to assist him in presenting his claims; (2) the medical evidence in the record supports the plaintiff's claims of deliberate indifference; and (3) the magistrate judge's finding that the record establishes that "plaintiff received frequent medical care during the period at issue, including care for issues pertaining to his cancer" overlooks the plaintiff's allegations pertaining to the period prior to his cancer diagnosis and overlooks his allegations that the defendants did

not adequately address his complaints of pain and his nutritional needs during and after his treatment. The plaintiff's more specific objections are discussed below.

## IV. STANDARD OF REVIEW

The district court must review *de novo* any portion of the report and recommendation to which objections are properly lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). An objection is properly made if it is sufficiently specific to "enable[] the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Thomas v. Arn*, 474 U.S. 140, 147 (1985). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001) (citing *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995)).

## V. DISCUSSION

Any claim in a complaint filed *in forma pauperis* is subject to *sua sponte* dismissal if the court determines that such claim fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [that provision] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to avoid a *sua sponte* dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint to determine whether it states a plausible claim, "a district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). A *pro se* pleading must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

The plaintiff here seeks to pursue claims under 42 U.S.C. § 1983 to vindicate alleged violations of his federal constitutional rights. Section 1983 confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a § 1983 claim, a plaintiff must allege facts supporting two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that "the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F. 3d 584, 590 (6th Cir. 2003) (citations omitted); 42 U.S.C. § 1983.

In general, the plaintiff alleges that the defendants were deliberately indifferent with respect to the diagnosis and treatment of his tonsil cancer, which was diagnosed in May 2013. The plaintiff's claims of constitutional violations are based on the alleged failure by prison officials and medical personnel employed at the prison to provide adequate medical care. There is no dispute that the defendants qualify as "persons acting under color of state law" for purposes of stating a § 1983 claim. The question is whether the plaintiff's allegations, if proven to be true, are sufficient to establish a constitutional violation.

The Eighth Amendment, by its terms, prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. In its application by the courts, the Eighth Amendment has been specifically construed to prohibit the "unnecessary and wanton infliction of pain," *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (plurality opinion), and conduct repugnant to "evolving standards of decency," *Trop v. Dulles*, 356 U.S. 86, 101 (1958) (plurality opinion). While the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), it does require humane ones, and it is clear that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The amendment imposes affirmative duties on prison officials to "assume some responsibility for [each prisoner's] safety and general well-being," and to "provide for his basic human needs," including medical care. *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199–200 (1989). "Contemporary standards of decency require no less." *Helling*, 509 U.S. at 32 (citing *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976)).

In *Estelle*, the Supreme Court concluded that, although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, "deliberate indifference to the serious medical needs of prisoners" violates the Eighth Amendment, because it constitutes the "unnecessary and wanton infliction of pain" contrary to contemporary standards of decency. *Estelle*, 429 U.S. at 104. Under this analysis, what constitutes "unnecessary and wanton infliction of pain" will vary depending on the nature of the alleged constitutional violation, but the Supreme Court has clarified that the question of whether a prisoner's claim based on prison officials' failure to provide adequate medical care involves both a subjective and an objective component: The objective prong asks whether the harm inflicted by the conduct is sufficiently "serious" to warrant Eighth Amendment protection. *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992). The Sixth Circuit has defined a "serious medical need" as "either one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 570 (6th Cir. 2013) (quotation marks and citations omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference "entails something more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

To establish the subjective component of an Eighth Amendment *Estelle* violation for purposes of the initial review, a prisoner must plead facts showing that "prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). In other words, a plaintiff does not have to allege and show that the defendant stated out loud or wrote in the plaintiff's medical file, "I am deliberately and maliciously refusing care for this inmate's admittedly serious medical need" in order to prove the subjective component of the test. A defendant's intent can be inferred from the factual circumstances, including the seriousness of the

plaintiff's medical needs and the defendant's knowledge about and response to the plaintiff's condition. As the Sixth Circuit has acknowledged, in proving subjective intent,

> [t]he question of whether an official actually perceived, inferred, or disregarded a risk is a question of fact for the jury subject to demonstration in the usual ways, including inference from circumstantial evidence. Yet a court must also consider other factors—such as the obviousness of the risk, the information available to the official, the observable symptoms, and the expected level of knowledge of the particular official. If a risk is obvious or if it is well-documented and circumstances suggest that the official has been exposed to information such that she must have known of the risk, the evidence is sufficient for a jury to find that the official had knowledge.

*Sours v. Big Sandy Reg'l Jail Auth.*, 593 F. App'x 478, 484 (6th Cir. 2014) (internal quotation marks and citations omitted).

A defendant's state of mind is sufficiently culpable to satisfy the subjective component of an Eighth Amendment claim when it amounts to a reckless disregard of a substantial risk of serious harm; behavior that is merely negligent will not suffice. *Farmer*, 511 U.S. at 835–36. Consequently, allegations of medical malpractice or negligent diagnosis and treatment fail to state an Eighth Amendment claim of cruel and unusual punishment. *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."). Thus, when a prisoner has received some medical attention but disputes the adequacy of that treatment, the federal courts are generally reluctant to second-guess the medical judgments of prison officials and thus to constitutionalize claims which sound in state tort law. *Westlake*, 537 F.2d at 860 n.5. Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs., Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Notwithstanding, the Sixth Circuit has also recognized that "in some cases the medical attention rendered may be so woefully inadequate as to amount to no treatment at all." *Westlake*, 537 F.2d at 860 n.5.

### A. The Claims Against Martin and Orton

As set forth above, the complaint alleges that Martin and Orton (1) ignored the plaintiff's requests for referral to the doctor and a diagnosis of the cause of his neck pain, swelling, and other symptoms for a period of ten months (ECF No. 1, at 8, 15); (2) refused to order lab work or allow the plaintiff to see the doctor; (3) repeatedly told the plaintiff "not to worry, it was nothing to be concerned about" (*id.* at 8, 15); (4) failed to provide adequate medical care and a treatment plan in accordance with a letter of agreement they signed acknowledging their duties and responsibilities (*id.*); (5) failed to provide an "objective"

examination (*id.* at 9); (6) engaged in a "deliberate campaign to misdiagnose" the plaintiff's condition and prevented him from seeing a doctor (ECF No. 1, at 9, 15, 20), which contributed to his development of Stage 4-A tonsil cancer; and (7) adhered to a standing policy of "if they [are] breathing, or not bleeding to death, don't bother" (*id.* at 15) (emphasis omitted). The plaintiff also alleges that defendant Martin failed to follow protocol for inmate health care and that her deliberate actions allowed for the development of a preventable cancer. (*Id.* at 20.) He alleges that defendant Orton deliberately and maliciously sabotaged his recovery by, among other things, distributing Ensures ordered for the plaintiff to other inmates, even though she had been directed not to do so, thus leaving the plaintiff without sufficient Ensure to provide for his nutritional needs at a time when he could not eat solid food. She also allegedly substituted some other substance for his Lortab pain medication, which burned his throat when he tried to swallow it and did not provide adequate pain control, and on other occasions deliberately withheld medication that was supposed to go to the plaintiff to treat his chronic acid reflux.

The magistrate judge found that the plaintiff's allegations against Martin and Orton were generally "conclusory" and that they showed "medical malpractice at most, because plaintiff fails to allege any facts to establish the *mens rea* necessary to support a deliberate indifference claim under the Eighth Amendment." (ECF No. 145, at 14.) The magistrate judge concluded that the plaintiff's allegations failed to establish that Martin refused to treat him or turned him away without providing any care, and that the plaintiff's complaint that she failed to allow him to see the treating doctor established that the plaintiff received some care but simply disputes the adequacy of that care. The magistrate judge found that the allegations against Orton that she deprived the plaintiff of the Ensure necessary to his recovery were refuted by the medical record, which showed that the plaintiff refused his Ensure at least 18 times between August 26, 2013 and January 11, 2014, sometimes more than once a day. The magistrate judge concluded that the plaintiff's statement that Orton acted deliberately and with malice in giving him an "unknown substance" instead of his regular pain medication was without factual support regarding Orton's actual intentions.

The plaintiff objects to the magistrate judge's conclusion that he disputed the adequacy of the care received, insisting that Martin and Orton acted as "gatekeepers" who were made aware of the plaintiff's condition (the swelling in his neck that increased over time) but refused to provide any treatment

for it or to refer him to be seen by Dr. Coble. Thus, he argues, he is not disputing the adequacy of care but the failure to provide any care. He also refutes the magistrate judge's finding that his factual allegations are merely "conclusory"; he argues that his allegations are sufficient to satisfy Rule 8's requirement that a claimant provide a "short and plain statement of the claim showing that the pleader is entitled to relief." (ECF No. 173, at 17–18.)

The court finds that the allegations against defendants Martin and Orton are adequate for purposes of Rule 8 and *Twombly/Iqbal*. The plaintiff alleged facts suggesting that defendants Martin and Orton were aware of but consciously ignored an arguably serious health need for many months, until it became much more serious. A reasonable factfinder could infer from the facts and circumstances presented by the plaintiff that the defendants were deliberately indifferent to the plaintiff's serious medical need by failing to refer him to the doctor or provide treatment for a demonstrable need. In addition, the allegations that Orton actively sabotaged the plaintiff's recovery, if believed by a jury, could also establish deliberate indifference.

The court finds that the complaint states a colorable claim against defendants Martin and Orton and that if a reasonable jury believes the plaintiff's allegations, it could find in favor of the plaintiff. The court will reject the magistrate judge's recommendation that the claims against defendants Martin and Orton be dismissed *sua sponte* for failure to state a claim for which relief may be granted.

### B. The Claims Against Dr. Coble

The claims against Dr. Coble present a somewhat closer call. The plaintiff alleges that once he was permitted to see Dr. Coble in May 2013, Dr. Coble immediately ordered a CT Scan and then a biopsy, which confirmed that the plaintiff had cancer of the tonsil. Notwithstanding this relatively prompt response once the plaintiff was able to see Dr. Coble, the plaintiff alleges that, after that point, Dr. Coble acted with deliberate indifference to his serious medical needs by delaying treatment and failing to ensure his recovery from the treatment. More specifically, the plaintiff claims that: (1) although the plaintiff's outside oncologist prescribed immediate treatment of the life-threatening cancer, Dr. Coble delayed implementation of the treatment plan for more than 65 days while he attempted to get the plaintiff transferred to a different facility, so CCA would not have to cover the cost of his cancer treatments; (2) another full week's delay was caused by "defendants'" negligence in failing to administer steroid

medication the night and morning before the plaintiff's first scheduled chemotherapy session; (3) Dr. Coble substituted less effective pain medication than that prescribed by the plaintiff's cancer doctors, and also prescribed less pain medication than the plaintiff's condition warranted, causing the plaintiff to suffer unnecessarily for seven months; (4) Dr. Coble failed to schedule examinations to monitor the plaintiff's recovery and refused to communicate with the plaintiff's oncologist and chemotherapy doctor; (5) Dr. Coble "toyed" with the plaintiff's prescriptions for nutritional supplements without actually examining the plaintiff or checking on his progress, hampering the plaintiff's recovery and causing the plaintiff to lose a substantial amount of weight during and after his cancer treatments; and (6) Dr. Coble told the plaintiff that he was not the plaintiff's doctor and that he should take up his cancer-related issues with his oncologists, while knowing that the plaintiff had no ability to communicate independently with outside doctors. The plaintiff alleges that Dr. Coble acted knowingly and deliberately in failing to ensure adequate pain control and sufficient nutrition.

The magistrate judge found that the medical records before the court establish that Dr. Coble treated the plaintiff repeatedly during the period at issue, including treatment for the plaintiff's cancer-related issues. Consequently, he concluded that the plaintiff disputed the quality of care provided and failed to show a complete absence of care. The magistrate judge also found the factual allegations to be conclusory. The magistrate judge therefore recommends dismissal of the claims against Dr. Coble for failure to state a violation of the Eighth Amendment.

The allegations specifically concerning Dr. Coble are not as clear as those concerning Martin and Orton, and some of the claims clearly amount only to negligence. Notwithstanding, the court again finds that the allegations are not completely conclusory and that the plaintiff alleges facts that, if believed, would permit a reasonable jury to conclude that Dr. Coble's treatment of the plaintiff was not merely negligent but that, instead, Dr. Coble was deliberately indifferent to the plaintiff's need for better pain control and nutritional intervention. The court will therefore reject the magistrate judge's recommendation that the claims against Dr. Coble be dismissed under § 1915(e)(2)(B)(ii) for failure to state a claim for which relief can be granted.

### C. The Claims Against CCA

The plaintiff asserts that CCA is responsible for ensuring that the plaintiff's health care is at least

equal in quality to what he would receive if he were housed in a state-run prison and that CCA failed to meet that obligation. He asserts that CCA "acted with malice, . . . ignoring the urgency of Plaintiff's medical condition, refused to diagnose a 'Preventable' 'growing cancerous tumor' in the Primary interest of 'profits' for a Publicly held 'for profit Corporation' resulting in Cruel and Unusual Punishment." (ECF No. 1, at 17.) The plaintiff also alleges that CCA has a widely publicized standing policy of encouraging departmental savings by offering year-end bonuses.

The magistrate judge recommends dismissal of the claims against CCA based on his finding that the allegations against CCA are conclusory and apparently based on a *respondeat superior* theory. The plaintiff objects to that recommendation, insisting that CCA can be liable based on a failure to train and based on its continuing to operate under an unconstitutional policy. The court agrees with the magistrate judge that the plaintiff's factual allegations concerning CCA are largely conclusory and are based on a *respondeat superior* theory.

CCA, a private prison operator, may be subject to suit under § 1983 as the entity to which the obligation to provide medical care to individuals in state custody has been contractually delegated. *West v. Atkins*, 487 U.S. 42, 56 (1988) (holding that a private medical provider contracted to provide medical care to prisoners is a state actor for purposes of § 1983); *see also Street v. Corrs. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996) (CCA acts under color of state law because it performs the traditional state function of operating a prison). However, CCA cannot be liable solely on the basis that it employs a tortfeasor, because "*[r]espondeat superior* is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Schs.*, 433 F.3d 460, 470 (6th Cir. 2006). Instead, a private entity cannot be held responsible for an alleged constitutional deprivation unless there is a direct causal link between a policy or custom of the entity and the alleged constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Johnson v. Karnes*, 398 F.3d 868, 877 (6th Cir. 2005) ("Like a municipality, a government contractor cannot be held liable on a *respondeat superior* theory. . . . [A] private contractor is liable for a policy or custom *of that private contractor*. . . ."). Simply stated, the plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill.*

*of Bradford*, 245 F.3d 869 (6th Cir. 2001)).

The plaintiff in this case alleges conflicting policies, including a policy with which the individuals allegedly failed to comply when they denied medical care, and another policy of encouraging cost-savings measures by promising year-end bonuses. The plaintiff's allegations that CCA operated under a cost-saving policy that resulted in the denial of necessary medical care is, frankly, a legitimate concern associated with the privatization of an arena that is technically the state's responsibility. In fact, although it is the law in this and every circuit that a private-entity defendant cannot be liable under § 1983 on the basis of *respondeat superior*, the Seventh Circuit has recently observed that the matter is deserving of "fresh consideration." *Shields v. Ill. Dep't of Corrs.*, 746 F.3d 782, 789 (7th Cir. 2014), *cert. denied*, 135 S. Ct. 1024 (2015). In *Shields*, the court noted that the Supreme Court has never directly considered the question of whether *Monell* applies to private corporations, and that "there are substantial grounds to question the extension of the *Monell* holding for municipalities to private corporations." *Id.* at 790. Specifically, "[i]nsulating private corporations from *respondeat superior* liability significantly reduces their incentives to control their employees' tortious behavior and to ensure respect for prisoners' rights. The results of the current legal approach are *increased profits for the corporation and substandard services both for prisoners and the public.*" Id. at 794 (emphasis added).

Neither the Sixth Circuit nor the Supreme Court has taken up this call, however, and the fact remains that, although the plaintiff can speculate as to the existence of an entrenched policy of cutting savings at the expense of providing care for inmates, he points to no actual facts to support the existence of such a policy or to show how he came to possess knowledge of the existence of this policy.

The court therefore concludes that the complaint fails to allege concrete and particularized facts showing that CCA could be liable for the plaintiff's alleged injuries. The court will accept the magistrate judge's recommendation that the claims against CCA be dismissed.

### D. The Claims Against Hininger and Garriga

The plaintiff asserts that defendant Hininger is the CEO of CCA, and as such is "legally responsible" for the actions of all CCA and SCCC employees and for ensuring that the plaintiff's medical needs are met and that he is treated humanely. (ECF No. 1, at 17.) He alleges that Hininger failed to oversee his staff, negligently failed to ensure that staff at SCCC provided safe and effective medical

treatment, and thus failed to ensure that the plaintiff received proper treatment. He insists that Hininger acted maliciously and arbitrarily, with deliberate indifference, and that Hininger's failure to ensure the plaintiff's humane treatment resulted from his interest in protecting CCA's profits and promoting CCA's policy of encouraging departmental saving in exchange for year-end bonuses. (*Id.* at 18.)

Similarly, the plaintiff alleges that Dr. Garriga, as CCA's Medical Director at SCCC, was responsible for approving the expenditures for the plaintiff's treatment. The plaintiff claims that Dr. Garriga was responsible for the delay in the plaintiff's treatment and the attempt to transfer the plaintiff to a state prison in order to permit CCA to avoid the expense associated with his cancer treatment. The plaintiff also alleges that Dr. Garriga failed to adequately oversee the SCCC medical staff and failed to comply with his responsibility to ensure that the plaintiff received humane treatment. (ECF No. 1, at 19.) He claims that Dr. Garriga "Arbitrarily and Capriciously set aside his/her Moral Compass in the 'interest of profit,' by failing to provide Plaintiff basic and 'timely' Medical Treatment intrusted to him/her and his/her staff [sic]," thus violating the plaintiff's constitutional rights and protecting CCA's profits. (*Id.* (emphasis omitted).)

Hininger and Garriga moved for judgment on the pleadings, and the magistrate judge recommends that their motion be granted on the basis that the allegations against them are conclusory and because these defendants cannot be liable under a *respondeat superior* theory. The plaintiff objects, arguing that (1) Hininger and Garriga are policy makers who should be liable based on a failure to train their subordinates; (2) Hininger and Garriga were aware of the plaintiff's complaints and grievances but failed to act or respond.

"The standard of review applicable to a motion for judgment on the pleadings . . . is the same . . . standard applicable to a motion to dismiss under Rule 12(b)(6)." *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 608 (6th Cir. 2014) (citations and internal quotation marks omitted). Under that standard, the court finds that the complaint fails to state a claim against defendants Hininger and Garriga. First, supervisory liability cannot be imposed in a § 1983 action based on the theory of *respondeat superior* without proof of personal involvement. *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995). At the pleading stage, the plaintiff must allege facts showing personal involvement. Notably, "[s]upervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002) (quoting *Leach v.*

*Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)). As the Sixth Circuit has stated, "[a] supervisor is not liable under § 1983 for failing to train unless the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) ((quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).

Here, the plaintiff does not allege facts suggesting that Hininger or Garriga "implicitly authorized, approved, or knowingly acquiesced" in Martin's, Orton's, or Coble's allegedly deliberate indifference to the plaintiff's serious medical needs. He appears to allege only that Hininger and Garriga were or should have been aware of the plaintiff's complaints about his treatment but failed to act. In the Sixth Circuit, however, officials whose only involvement in allegedly unconstitutional behavior is to deny or ignore grievances and to fail to remedy the allegedly unconstitutional behavior generally cannot be liable under § 1983. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ("[L]iability under § 1983 must be based on active unconstitutional behavior and cannot be based upon a mere failure to act." (citation and internal quotation marks omitted)).

The court will therefore accept the magistrate judge's recommendation that these defendants' motion for judgment on the pleadings be granted.

### E. The Claims Against Pritchard

According to the plaintiff, defendant Pritchard had "authority over decisions related to Food Service and the Medical Department" even though he lacked any experience or training in those areas. (ECF No. 1, at 27.) In particular, Pritchard was allegedly responsible for ensuring communication between Food Service and Medical to ensure that the nutritional needs of inmates with medical problems were met. The plaintiff asserts that Pritchard "failed to provide the Most Basic needs of Plaintiff, allowing Plaintiff to suffer Life Threatening Injuries" by delegating his responsibilities to his staff, who failed to provide for the plaintiff's basic medical and nutritional needs during and after his cancer treatment. (*Id.*) He alleges that Pritchard "negligently" allowed the plaintiff to reach a point of near starvation and failed to oversee his subordinates.

In other words, the plaintiff alleges that defendant Pritchard was negligent in his supervision of his

subordinates. The plaintiff does not allege that Pritchard acted with deliberate indifference or that he was personally involved in or even aware of the decisions affecting the plaintiff's care and well-being. The court finds that the complaint fails to state a colorable claim against defendant Pritchard based on his supervisory status. The court will therefore accept the magistrate judge's recommendation that the claims against this defendant be dismissed.

**VI.     CONCLUSION**

For the reasons set forth herein, the court will reject the recommendation that the claims against defendants Martin, Orton, and Coble be dismissed.

However, the court accepts the recommendation that the remaining federal claims against all remaining defendants be dismissed for failure to state a claim for which relief may be granted. Because there is a possibility, however remote, that the plaintiff could seek to amend his pleading to allege additional concrete facts that would support his claims against these defendants, the dismissal of the federal claims against them will be without prejudice. Any supplemental state-law claims against these defendants will likewise be dismissed without prejudice.

An appropriate order is filed herewith.

ALETA A. TRAUGER
United States District Judge