**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CALVIN TANKESLY, JR. # 90944,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 3:14-00911** |
| | ) | **Judge Trauger/Brown** |
| **CORRECTIONS CORPORATION** | ) | |
| **OF AMERICA, ET AL.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## REPORT AND RECOMMENDATION

For the reasons explained below, the Magistrate Judge **RECOMMENDS** that: **1)** the motions for summary judgment filed by Dr. Robert Coble, M.D., Nurse Practitioner (NP) Susan Martin, and Nurse Karen Orton (Docs. 218, 223) be **GRANTED**; **2)** all federal law claims against Dr. Coble, NP Martin, and Nurse Orton be **DISMISSED WITH PREJUDICE**; **3)** the district court **DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION** over plaintiff's state law claims against Dr. Coble, NP Martin and Nurse Orton; **4)** plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to whatever relief plaintiff may be entitled in state court; **5)** acceptance and adoption of this Report and Recommendation (R&R) constitute the **FINAL JUDGMENT** in this action; **6)** any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

## I.  INTRODUCTION
## AND
## BACKGROUND

Plaintiff proceeding *pro se* and *in forma pauperis* was a prisoner in the South Central Correctional Facility (SCCF) in Clifton, Tennessee when he brought this action on April 1, 2014[1]

---

[1]  The envelope in which plaintiff mailed his complaint to the district court is not stamped with the date it was delivered to the SCCF mailroom to be mailed to the district court.  (Doc. 1-1)  Under the mailbox rule, the date plaintiff delivered his complaint to the prison mail room constitutes the date he filed his complaint.  *See Richard v. Ray*, 290 F.3d

alleging violations under 42 U.S.C. 1983; the Americans with Disabilities Act (ADA) of 1990, 42 U.S.C. §§ 12101 *et seq*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a); §§ 504 and 704(a) of the Rehabilitation Act of 1973, 29 U.S.C. § 794 *et seq*; 42 U.S.C. §§ 1981(a) and "1981 2(b)(3)."  Plaintiff also alleged that defendants violated his rights under Article I §§ 8, 13, 16 and 32 of the Tennessee Constitution, as well as Tenn. Code Ann. §§ 4-3-603 and 606.

The Magistrate Judge entered a R&R on June 9, 2015 ("previous R&R") recommending that all federal law claims be dismissed against all defendants, and that the court decline to exercise its supplemental jurisdiction over plaintiff's state law claims.  (Doc. 145)  The Magistrate Judge incorporates the introduction and background section of the previous R&R herein by reference.

On December 31, 2015, the District Judge accepted the previous R&R in part and rejected it in part.  (Doc. 192)  The District Judge rejected the recommendation that the claims under 42 U.S.C. § 1983 and state law against Dr. Coble, NP Martin, and Nurse Orton be dismissed.  (Doc. 192)  The District Judge accepted "the recommendation that all claims against the remaining defendants and all claims under the ADA, Title VII, the RA, 42 U.S.C. § 1981 and the Fourteenth Amendment be dismissed *sua sponte* under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for which relief may be granted."  (Doc. 192)

On May 26, 2016, Dr. Coble and Nurse Orton filed a joint motion for summary judgement (Doc. 218), memorandum of law with attachments (Docs. 219-21), and joint statement of undisputed material facts (Doc. 222).  Plaintiff filed a response in opposition to the joint motion on August 1,

---

810, 813 (6th Cir. 2002)(citing *Houston v. Lack* 487 U.S. 266, 270 (1988)(a *pro se* prisoner filing is deemed filed on the date that the filing is turned over to prison officials for transmittal to the court.)  Because there is no stamp to indicate when plaintiff submitted his complaint to the SCCF mailroom, the complaint is deemed to have been filed on the date plaintiff signed it, *i.e.*, on April 1, 2014.  (Doc. 1, p. 37)  *See e.g. Smith v. United States*, 2014 WL 558401 * 1 (E.D. Tenn. Feb 11, 2014)(Mattice, J).

2016 (Doc. 258), and objections to their consolidated statement of undisputed facts (Doc. 259). Dr. Coble and Nurse Orton filed a reply on August 15, 2016 (Doc. 268), following which plaintiff filed a response to their reply on September 1, 2016 (Doc. 276).

NP Martin filed a motion for summary judgment on June 1, 2016 (Doc. 223), a supporting memorandum of law (Doc. 225), her sworn declaration (Doc. 226), and a statement of undisputed material facts (Doc. 227). Plaintiff filed a response in opposition to NP Martin's motion for summary judgment on August 15, 2016 (Doc. 270), and opposition to NP Martin's statement of undisputed material facts (Doc. 271). NP Martin filed a reply on August 29, 2016 (Doc. 274), following which plaintiff filed a response to NP Martin's reply on September 19, 2016 (Doc. 282).

This matter is now properly before the court.

## II. STANDARD OF REVIEW

### A. Summary Judgment

Summary Judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law." Rule 56(a), Fed. R. Civ. P.; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Williams v. AT&T Mobility Services LLC*, 847 F.3d 384, 387 (6th Cir. 2017). The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 249-50; *Stiles ex. Rel. D.S. v. Grainger County, Tenn.*, 819 F.3d 834, 847 (6th Cir. 2016). Inferences from underlying facts "must be viewed in the light most favorable to the party opposing the motion." *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587 (1986); *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

In considering whether summary judgment is appropriate, the court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." *Sowards v. Loudon County*, 203 F.3d 426, 431 (6th Cir.), *cert. denied*, 531 U.S. 875 (2000). If there is a genuine issue of material fact, then summary judgment should be denied. *Sowards*, 203 F.3d at 431. However, "[t]he moving party need not support its motion with evidence; instead, it only must point out the deficiencies in the nonmoving party's case." *Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 507 (6th Cir. 2006)(citing *Celotex Corp.*, 477 U.S. at 324-25).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Jones v. City of Franklin, et al.*, __ Fed.Appx. __, 2017 WL 383383 * 2 (6th Cir. 2017)(citing *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991)). "[T]o withstand a properly supported motion for summary judgment, plaintiff must do more than rely merely on the allegations of h[is] pleadings or identify a 'metaphysical doubt' of hypothetical 'plausibility' based on a lack of evidence; [h]e is obliged to come forward with 'specific facts,' based on 'discovery and disclosure materials on file, and any affidavits,' showing that there is a genuine issue for trial." Rule 56(c), Fed. R. Civ. P.; *Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009)(citing *Matsushita Elec. Indus. Co.*, Ltd., 475 U.S. at 586-87). Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *Jones*, __ Fed.Appx. __, 2017 WL 383383 * 2 (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888 (1990)). In other words, to

defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere scintilla of evidence is insufficient. *See Brown v. Battle Creek Police Department*, 844 F.3d 556, 565 (6th Cir. 2016); *Bell v. Ohio State University*, 351 F.3d 240, 247 (6th Cir. 2003)(citing *Anderson*, 477 U.S. at 252).

### B. 42 U.S.C. § 1983

To state a claim under § 1983, plaintiff must allege and show: 1) that he was deprived of a right secured by the Constitution or laws of the United States; and 2) that the deprivation was caused by a person acting under color of state law. *Wershe v. Combs*, 763 F.3d 500, 504-05 (6th Cir. 2014) (citing *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010)). Plaintiff also "must establish that the defendant acted knowingly or intentionally to violate his . . . constitutional rights . . . mere negligence or recklessness is insufficient." *Rainey v. Patton*, 534 Fed.Appx. 391, 393 (6th Cir. 2013)(quoting *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999)(citing *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982)).

### C. ANALYSIS

#### 1. Dr. Coble's Motion for Summary Judgment

The complaint alleges that Dr. Coble was deliberately indifferent to plaintiff's serious medical needs in violation of his rights under the Eighth Amendment.[2] Plaintiff alleges specifically

---

[2] The Magistrate Judge notes for the record that plaintiff makes the following statements in his objection to Dr. Coble's motion for summary judgment:

> Defendant's have known of the[] constitutional violations [alleged in the complaint] and have continued to operate under these . . . policies, customs and practices since 1993. . . . Plaintiff . . . has illustrated that this practice has continued long before Plaintiff's cancer was discovered [at a minimum] for twenty two years, and the defendant[]s have refused to correct these practices. . . .
>
> Plaintiff has illustrated . . . the defendants conscious and knowingly acquiesced of the unconstitutional conduct at SCCF's medical dept. since 1994 when defendant

that Dr. Coble: 1) acted knowingly, deliberately, capriciously, and arbitrarily with the intent to cause pain and suffering (Doc. 1, p. 23); 2) substituted Lortab instead of time released morphine prescribed by oncologist Dr. Michael Sattasiri, M.D. (Doc. 1, pp. 11, 22-23); 3) reduced plaintiff's pain medication after he was examined by Dr. f/n/u Conway without examining plaintiff himself (Doc. 1, pp. 15, 34); 4) discontinued plaintiff's "Flavored Ensures" without examining plaintiff, having been deliberately misinformed by other members of the SCCF medical staff that plaintiff was able to eat (Doc. 1, pp. 13, 16, 22-23, 33, 35); 5) refused to treat plaintiff's weight and muscle loss (Doc. 1, p. 13); 6) refused to check plaintiff's weight (Doc. 1, p. 23); 7) denied plaintiff access to a scale to show that he had regained only 7 lbs. of the 67 lbs. he claims to have lost during and after treatment (Doc. 1, p. 33); 8); refused to assist plaintiff with problems arising from his cancer treatment during recovery (Doc. 1, pp. 16, 34).

Dr. Coble argues in his motion for summary judgment that: 1) plaintiff was not denied adequate medical care; 2) plaintiff cannot establish that he was deliberately indifferent to plaintiff's serious medical needs; 3) the alleged acts and omissions attributable to Dr. Coble prior to April 1, 2013 are barred by the one-year statute of limitations. Dr. Coble also argues that plaintiff's state law claims should be dismissed with prejudice for failure to comply with state law. (Doc. 219, ¶¶ I.B-C, III, pp. 8-15, 17-18)

"[A] prisoner's Eighth Amendment right is violated when prison doctors or officials are deliberately indifferent to the prisoner's serious medical needs." *Quigley v. Tuong Vinh Thai*, 707

---

Coble was 'under contract', has repeatedly defended claims of his denial of medical care in the interest of profit. . . .

(Doc. 258, pp. 5-6 of 24)(Unnecessary bold and italics omitted here as well as in all further quotes attributable to plaintiff. Internal footnote omitted.) The alleged "policies, customs and practices since 1993" are not before the court.

F.3d 675, 681 (6th Cir. 2013)(quoting *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir.2001)(citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An Eighth Amendment claim for the denial of medical care has an objective and subjective component. *Quigley*, 707 F.3d at 681 (citing *Comstock*, 273 F.3d at 702). Satisfying the objective component establishes that the alleged deprivation was sufficiently severe, while satisfying the subjective component establishes that the defendant prison officials acted with a sufficiently culpable state of mind. *Quigley*, 707 F.3d at 681 (citing *Comstock*, 273 F.3d at 702)).

Notwithstanding the foregoing, complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief under § 1983. *Estelle*, 429 U.S. at 105-06. A prisoner's difference of opinion regarding treatment also does not rise to the level of an Eighth Amendment violation. *Estelle*, 429 U.S. at 107. Finally, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess prison officials' medical judgments and constitutionalize claims which sound in state tort law. *Graham ex rel Estate of Graham v. County of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)(citing *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976)). In such cases, the medical treatment must be so "woefully inadequate as to amount to no treatment at all" to give rise to an actionable claim under § 1983. *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)(citing *Westlake*, 537 F.2d at 860 n. 5).

Dr. Coble addresses plaintiff's Eighth Amendment claim at length in his memorandum of law in support of his motion for summary Judgment. (Doc. 219, ¶¶ I.B, B-2, C, pp. 8-15) Dr. Coble asserts in his sworn declaration dated May 24, 2016 that he took, or caused to be taken, the actions shown below in Fig. 1 with respect to the treatment of plaintiff's cancer.

| Date | Action | Reference |
|------|--------|-----------|
| 04/30/13 | Nurse Martin first refers plaintiff to Dr. Coble for "knot ® side of neck . . . 2-3 cm size mass." | Doc. 219-5, p. 11 of 156 |
| 05/03/13 | Dr. Coble first examined plaintiff and referred him to an Ear, Nose, and Throat (ENT) specialist and to have a CT scan. (Doc. 219-1, ¶ 8, p. 1) | Doc. 219-5, pp. 12, 99 of 156 |
| 05/07/13 | Plaintiff was transported Wayne County Medical Center for a CT Scan of the neck on referral from Dr. Coble. (Doc. 219-1, ¶ 10, p. 2) | Docs. 219-5, pp. 2, 12, 99 of 156; 221, p. 21 of 261 |
| 05/14/13[3] | Plaintiff is evaluated by ENT Dr. Stephen Parey, M.D., on referral from Dr. Coble. (Doc. 219-1, ¶ 11, p. 2) | Docs. 219-5, pp. 12, 99 of 156; 221, pp. 22-25 of 261 |
| 05/30/13 | Plaintiff is examined by oncologist Dr. Mark Messenger, M.D., on referral by Dr. Coble. (Doc. 219-1, ¶ 12, p. 2) | Docs. 219-5, p. 99 of 156; 221 p. 12-13 of 261 |
| 06/17/13 | Plaintiff is examined by radiation oncologist Dr. Joel Kochanski, M.D., at the Maury Regional Medical Center Cancer Center on referral from Dr. Messenger. Dr. Kochanski recommended treating plaintiff with a combination of chemotherapy and radiation, but requested an additional PET/CT scan and dental evaluation. (Doc. 219-1, ¶¶ 13-15, p. 2) | Docs. 219-5, p. 100 of 156; 221, pp. 31-34, 49-53 of 261 |
| 07/08/13 | Plaintiff receives PET/CT scan requested by Dr. Kochanski. (Doc. 219-1, ¶ 15, p. 2) | Docs. 219-5, p. 2, 102 of 156; 221, pp. 26-29, 36-37 of 261 |
| 07/17/13 | Plaintiff is seen by Dr. Messenger on referral from Dr. Coble, and scheduled plaintiff to begin chemotherapy in August 2013. (Doc. 219-1, ¶ 18, p. 2) | Docs. 219-5, pp. 16, 102 of 156; 221, p. 39 of 261 |

---

[3] There are minor inconsistencies – 1 to 2 days – between some of the dates in Dr. Coble's sworn declaration and the dates in plaintiff's medical records. The dates in plaintiff's medical records are used in Fig. 1 above.

| Date | Action | Reference |
|---|---|---|
| 08/13 thru 09/13 | Plaintiff is transferred to and from chemotherapy and radiation treatment at the Maury Regional Medical Center throughout this period. (Doc. 219-1, ¶ 19, p. 2) | Docs. 219-5, pp. 16-32, 106-113 of 156; 221, pp. 14-20, 46-48, 54-67 of 261 |
| 09/04/14 | Dr. Coble orders a PEG (percutaneous endoscopic gastrostomy) tube[4] inserted to allow for rapid nutritional input if necessary after plaintiff began to lose weight. (Doc. 219-1, ¶ 23, p. 2) The PEG tube was implanted on September 16, 2013 | Docs. 1, ¶ 24, p. 12; 219-5, p. 109 of 156 |
| 12/06/13 | Dr. Coble Orders the PEG tube removed after plaintiff began to gain weight. (Doc. 219-1, ¶ 23, p. 2) The PEG tube was removed on January 3, 2014. | Docs. 1, ¶ 35, p. 12; 221-5, p. 116 of 156 |
| 02/25/14 | Physical examination, CT, and PET scans reveal plaintiff's cancer had been resolved. (Doc. 219-1, ¶ 24, pp. 2-3) | Doc. 221, pp. 104-108 of 261 |
| 10/15/14 | A subsequent CT scan ordered by Dr. Coble showed no significant abnormalities. (Doc. 219-1, ¶ 25, p. 3) | Doc. 221, pp. 109-110 |
| 03/03/15 | Dr. Parey reported to Dr. Coble that there was "no evidence of disease" and that the "[m]alignant neoplasm metastis to the cervical lymph nodes [was] resolved." (Doc. 219-1. ¶ 26, p. 3) | Doc. 221, p. 124 of 261. |

**Fig. 1**
**Dr. Coble's Principle Documented Actions in**
**Treating Plaintiff's Cancer**

Dr. Coble also makes the following summary arguments in support of his sworn declaration:

> During Tankesly's stay at SCCF, I treated Tankesly's cancer by providing and/or ordering him numerous treatments and/or medications including, but not limited to: [E]nsures; [B]oosts; pain medication, including Lortab; other medications; referrals to other providers; and a PEG tube placement. (See generally Pltf.'s Med. Rec., Bates Stamp No. 8-56, 98-136, 169-236.)[5]

---

[4]  A PEG tube is used to provide a means of feeding a patient when oral intake is not adequate. Http://my.clevelandclinic.org/health/articles/percutaneous-endoscopic-gastrostomy-peg.

[5]  The Bates Stamp numbers referred to above appear in red ink at the top of the pages of the medical records accompanying Dr. Coble's motion for summary judgment.

From the first time I saw Tankesly regarding his swollen neck through the date he was transferred from SCCF, I entered, approved, or reviewed over 60 orders related to Tankesly's cancer treatment via telephone, voice, or hand written notes. (Pltf.'s Med. Rec., Bates Stamp No. 99-100, 102, 104, 106, 108-126, 129-136.)

These orders included but were not limited to: orders referring him to outside providers (Pltf.'s Med. Rec. Bates Stamp No. 99), orders for CT scans (Id.), transport orders (Id.), orders for pain medication like Lortab (Id., at 100, 109, 114, 117, 119), [E]nsure orders (Id. at 100, 116), orders for phenegran (Id. Bates Stamp No. 108), orders for feeding tube placements (Id. at 109), miracle mouth wash orders (Id. at 116.), orders for PET and CT scans (Id. at 120), and [B]oost orders, (Id at 134).

(Doc. 219-1, ¶¶ 28-30, p. 3) Dr. Coble repeats the foregoing in his statement of undisputed material facts. (Doc. 222, ¶¶ 7-8, 10-13, 15, 17-19, 24, 26, pp. 4-8, 10)

The medical records before the court show that Dr. Coble did, in fact, either take the specific medical actions referenced in Fig. 1 above after plaintiff was referred to him by the SCCF medical staff, or that the events described in Fig. 1 were directly attributable to actions that Dr. Coble took. A page-by-page review of the references to plaintiff's medical records (Pltf.'s Med. Rec.) made in the summary arguments above shows that Dr. Coble was, in fact, actively engaged in plaintiff's treatment after he first examined plaintiff on May 5, 2013. This page-by-page review also reveals that Dr. Coble made the first of several referrals to outside medical specialists immediately after he first examined plaintiff, he did not delay or prevent treatment provided by those outside medical specialists, he referred plaintiff to additional specialized treatment or tests recommended by those outside medical specialists, he provided plaintiff with continuing medical care at SCCF between his outside treatments, and he continued to provide related medical care during plaintiff's recovery. In short, the actions shown in Fig. 1, and the references to "Pltf.'s Med. Rec." above do not support plaintiff's overarching argument that Dr. Coble acted knowingly, deliberately, capriciously, and

arbitrarily with the intent to cause pain and suffering.

Turning to plaintiff's remaining specific claims enumerated above at p. 6, plaintiff alleges that Dr. Coble violated his Eighth Amendment rights by substituting Lortab[6] for "time released morphine" prescribed by Dr. Sattasiri, and that Dr. Coble reduced the Lortab dosage three days after he had Dr. f/n/u Conway "from a state prison" examine him in the March 2014 time frame.[7] At most, plaintiff's allegations amount to a disagreement with Dr. Coble's decision to substitute one approved medication to treat cancer pain for another, and to manage the dosage of that medication during the course of plaintiff's treatment and recovery. As previously established above at p. 7, plaintiff's disagreement with Dr. Coble's treatment does not give rise to an Eighth Amendment violation. Dr. Coble's alleged failure to examine plaintiff before reducing the Lortab dosage three days after plaintiff was examined by another physician may amount to negligence, perhaps even malpractice. However, as noted above at p. 7, neither negligence nor malpractice are actionable under § 1983.

Plaintiff alleges next that Dr. Coble discontinued his Ensures in early April 2014[8] based on misinformation provided to him deliberately by other members of the SCCF medical staff,[9] and that Dr. Coble discontinued his Ensures without first examining him personally. As noted above at p.

---

[6] Lortab is an opiod commonly used to treat moderate to severe pain in cancer patients. Https://www.cancer.org/treatment/treatments-and-side-effects/physical-side-effects/pain/opiod-pain-medicines-for-cancer.

[7] Plaintiff asserts that Dr. Coble initially prescribed one 5. Mg. Lortab twice a day, raising the dosage to 7.5 mg twice a day, and finally increasing the dosage to two 7.5 mg twice a day. (Doc. 1, ¶ D, p. 22) On March 10, 2014, Dr. Coble reduced the Lortab to 7.5 mg once a day. (Doc. 1, ¶ D, p. 23)

[8] This date is derived from plaintiff's statement that Dr. Coble stopped his Ensures "[t]wo (2) weeks" after Dr. Conway examined him on March 20, 2014. (Doc. 1, pp. 15-16)

[9] Plaintiff asserts that this deliberate misinformation "left [him] with zero nutritional intake for twenty five (25) to thirty (30) days straight, multiple times." (Doc. 1, ¶¶ 43-44, p. 13)

5, plaintiff must show that Dr. Coble acted knowingly or intentionally to make a showing under § 1983. Because Dr. Coble acted on misinformation allegedly provided to him by other members of the SCCF medical staff, he did not act knowingly or intentionally. Consequently, plaintiff is not entitled to relief under § 1983 for those actions. As to Dr. Coble's decision to discontinue plaintiff's Ensures without personally examining him first, Dr. Coble's decision so close on the heels of Dr. Conway's examination once again may amount to negligence, perhaps even malpractice. Again, however, neither negligence nor malpractice is actionable under § 1983.

Plaintiff asserts next that Dr. Coble refused to treat his weight loss, alleging first that Dr. Coble denied him proper nutrition when he discontinued plaintiff's Ensure. As previously discussed above, plaintiff avers that Dr. Coble's decisions to reduce or discontinue his Ensures were based on deliberate misinformation allegedly provided to him by other members of the SCCF medical staff. Again, plaintiff is not entitled to relief under § 1983 if Dr. Coble did not act knowingly. Plaintiff also argues that Dr. Coble would not weigh him, nor would he provide plaintiff access to a scale so that he could check his weight. Dr. Coble does not have a constitutional obligation to weigh plaintiff on demand for the purpose of demonstrating that, having lost 67 lbs., plaintiff's weight gain was minimal, nor does plaintiff have a constitutional right to have access to a scale to weigh himself. In any event, plaintiff fails to allege that Dr. Coble's alleged refusal caused him any injury. As to Dr. Coble's affirmative actions with respect to plaintiff's weight, the record shows that he and Ms. Wendy Ashe, the Health Administrator at SCCF, arranged for plaintiff to receive a liquid diet during his recovery. (Doc. 1, ¶ 40, p. 12) Although plaintiff asserts that he did not always receive these meals, he does not allege that Dr. Coble prevented him from receiving them. Finally, the record shows that Dr. Coble ordered a PET tube implanted because of plaintiff's weight loss, and ordered

it to be removed when plaintiff began to gain weight. In sum, plaintiff's claim that Dr. Coble refused to treat his weight loss is not supported by the record.

Finally, plaintiff claims that Dr. Coble refused to assist him for problems arising during his recovery. (Doc. 1, ¶ 19, p. 16) As shown in the paragraph above, Dr. Coble ordered a liquid diet for plaintiff during his recovery, and ordered that a PET tube be installed during his recovery. As shown above at Fig. 1, and in the references to the "Pltf.'s Med. Rec." in the summary arguments at pp. 9-10, Dr. Coble also took several actions involving outside medical sources during the period of plaintiff's after care. In short, the record before the court does not support plaintiff's allegation that Dr. Coble refused to assist him during the course of his recovery.

As shown above, plaintiff either disagrees with the care Dr. Coble provided, or challenges the adequacy of that care. The case before the court also is not one where Dr. Coble's care was so woefully inadequate as to amount to no care or treatment at all. Accordingly, Dr. Coble's motion for summary judgment should be granted, plaintiff's federal claims against him dismissed with prejudice, and plaintiff's state law claims dismissed without prejudice as to any relief plaintiff might be entitled in state court.

### 2. Nurse Practitioner Martin's Motion for Summary Judgment

NP Martin makes several arguments in support of her motion for summary judgment, including the argument that plaintiff's claims are time barred because they were filed beyond the one-year statute of limitations. (Doc. 225, ¶ A, pp. 7-9) NP Martin's statute-of-limitations argument is dispositive; therefore, the other arguments need not be addressed.

Congress did not establish a limitations period applicable to § 1983 actions. Instead, the federal courts apply the state personal injury statute of limitations. *See Owens v. Okure*, 488 U.S.

235, 249-250 (1989); *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)(superseded by statute on other grounds as recognized in *Jones v. R.R. Donnelley & Sons, Co.*, 541 U.S. 369, 379-380 (2004)); *Wolfe v. Perry*, 412 F.3d 707, 713-714 (6th Cir. 2005); *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). The statute of limitations for personal injury arising in Tennessee is one year. Tenn. Code Ann. § 28-3-104(a)(1)(A); *see Roberson*, 399 F.3d at 794.

Although the duration of the statute of limitations is governed by state law, federal standards govern when the statute begins to run. *See Wilson*, 471 U.S. at 267; *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003); *Hughes v. Vanderbilt Univ.*, 215 F.3d 543, 548 (6th Cir. 2000); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir.1986). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kelly v. Burks*, 415 F.3d 558, 561 (6th Cir. 2005)(quoting *Sevier*, 742 F.2d at 273). "A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." *Ruiz-Bueno v. Maxim Healthcare Services, Inc.*, 659 Fed.Appx. 830, 834 (6th Cir. 2016)(quoting *Sevier*, 742 F.2d at 273). At that point, the plaintiff has a "complete and present cause of action" such that he may "file suit and obtain relief." *Johnson v. Memphis Light Gas & Water Div.*, 777 F.3d 838, 843 (6th Cir. 2015)(quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007)). This inquiry is objective and federal courts look "to what event should have alerted the typical lay person to protect his or her rights." *Hughes*, 215 F.3d at 548.[10]

_____

[10] Plaintiff did not respond to NP Martin's statute-of-limitations argument in his response to her motion for summary judgment. (Doc. 270) Plaintiff did not address the statute-of-limitations issue until he filed his response to NP Martin's reply to his objection to her motion for summary judgment, wherein he asserts: "Defendant Martin's argument on the Statute of Limitations has no merit. The honorable Judge Alet[]a Trauger or Magistrate Judge Joe B. Brown would have dismissed this cause in April 2013 had Plaintiff failed to comply with the statute of limitations." (Doc. 282, ¶ A, p. 1 of 8) Beyond that, plaintiff avers only that the statute of limitations did not begin to run until April 30, 2013, and that he "clearly filed this cause within the one year statute of limitations." (Doc. 282, ¶ A, pp. 1-2 of 8) Plaintiff's response is insufficient to prevail against NP Martin's motion for summary judgment for failure to file within the prescribed statute of limitations. Given plaintiff's unresponsiveness, NP Martin is entitled to summary judgment on

14

The first task in a statute-of-limitations analysis is to determine what date applies in determining whether the statute of limitations had run prior to plaintiff filing his complaint. NP Martin asserts in her memorandum of law that she saw plaintiff on July 16, 2012, August 16, 2012, and January 8, 2013.[11] (Doc. 225, ¶ III.A, p. 8) NP Martin also asserts in her sworn declaration that, in addition to the foregoing dates, she also saw plaintiff on April 30, 2013.[12] (Doc. 226, ¶¶ 4, 7, 13, 15, pp. 1-2, 4 of 7) NP Martin asserts in her undisputed statement material facts that the dates above are the dates she saw plaintiff. (Doc. 227, ¶¶ 1, 4, 7, 9, 11,13, pp. 1-4 of 6)

Although plaintiff objects to NP Martin's statement of undisputed facts in legalistic terms (Doc. 271), he does not dispute the actual dates on which NP Martin claims to have seen him, *i.e.*, July 16, 2012, August 16, 2012, and January 8, 2013 (Doc. 227, ¶¶ 1, 4, 7, 9, 11, pp. 1-4 of 6). Plaintiff's failure to challenge these dates means that he does not dispute the dates themselves for purposes of summary judgment. LR56.01, Local Rules of Court. The next question is which of these three dates, if any, establishes the date that plaintiff knew, or should have known, that he had a cause of action against NP Martin.

Plaintiff asserts in his objections to NP Martin's statement of undisputed material facts that NP Martin "documented [his] Cancer as early as December 27, 2011." (Doc. 271, p. 2) Plaintiff

---

these grounds without further ado. Nevertheless, the Magistrate Judge will analyze NP Martin's statute-of-limitations argument for the sake of completeness.

[11] NP Martin noted the following in her July 16, 2012 clinical note: CBC (complete blood count) with "diff" (differential), return to clinic in one month for followup for "lymphadenopathy" (disease of the lymph nodes), "submental" (inferior to the chin) on the right side, administration of multiple medications. (Doc.43-5, p. 22 of 40) Presented for back pain. NP Martin noted the following in her August 16, 2012 clinical note: CBC normal, right "submental lymph node palpable – size of pea," "palpable lymph node." (Doc. 43-5, p. 26 of 40) NP Martin noted the following in her January 8, 2013 clinical note: administration of multiple medications, including medications for hemorrhoids. (Doc. 3-5, p. 21 of 40)

[12] As noted in Fig. 1 above, April 30, 2013 is that date that NP Martin referred plaintiff to see Dr. Coble for the mass in his neck. Therefore, April 30, 2013 does not figure into when the statute of limitations began to run.

also alleged the following in his October 16, 2013 grievance against NP Martin: "For more than 10 months Ms. Martin repeatedly told me, 'Not to [w]orry, it (the lump) is nothing to be concerned about' . . . while she [r]efused to test it, [d]iagnose it and [r]efused to permit me to se[e] a doctor." (Doc. 2-6, p. 4 of 5)  The beginning of the "10 months" to which plaintiff refers in his grievance corresponds to mid-December 2011 which, in turn, corresponds closely to the December 27, 2011 date to which plaintiff refers in his objections to NP Martin's statement of undisputed material facts.

It is apparent from the foregoing that plaintiff knew, or should have known, that he had a cause of action against NP Martin at least as early as December 27, 2011.  Consequently, December 27, 2011 is the date on which the one-year statute of limitations began to run.  That said, the Magistrate Judge elects to use July 16, 2012 as the date on which the one-year statute of limitations began to run because it is closest in time of the three dates in question to the beginning of the ten-month period described above, because it may have taken additional time for plaintiff to conclude that NP Martin's alleged acts and omissions amounted to deliberate indifference, and because July 16, 2012 is more advantageous – by 7 ½ months (228 days) – to plaintiff in the following analysis than December 27, 2011.  The Magistrate Judge also selects the July 16, 2012 date because, in his objection to Nurse Orton's statement of undisputed material facts, plaintiff states unambiguously that "Gate Keepers Martin and Orton prohibited [him] from seeing Dr. Coble for 304 days (10 months) until May 2013 for testing.[13]"  (Doc. 259, ¶ 8, p. 6)  Backing off 304 days from May 3,

---

[13]  The Magistrate Judge looked to plaintiff's December 15, 2013 grievance against Nurse Orton in an effort to zero in on the start date, but without luck.  (Doc. 2-9)  The grievance does not pertain to the claims that the complaint alleges; it grievance merely accuses Nurse Orton of disrespect, contempt, lack of compassion, and failure to follow protocol in the distribution of medications on December 13 and 15, 2013, and the three months preceding those dates. (Doc. 2-9, p. 4 of 9)  Although the complaint against Nurse Orton appears to be subject to dismissal for failure to exhaust, failure to exhaust is an affirmative defense, and Nurse Orton does not argue that plaintiff's claims against her are subject to dismissal for failure to exhaust.

2013, the first time Dr. Coble saw plaintiff, yields July 3, 2012 which, in turn, corresponds favorably with the date of July 16, 2012.

With July 16, 2012 as the date on which the one-year statute of limitations began, the statute of limitations would have run one year later on July 16, 2013. As established above at pp. 1-2 n. 1, plaintiff did not file his complaint against her until April 1, 2014. Therefore, with July 16, 2012 as the start date, plaintiff filed his complaint approximately 8 ½ months (259 days) beyond the statute of limitations in a strictly chronological sense.

As explained above, NP Martin's argument that plaintiff filed his complaint against her after the one-year statute of limitations had run is correct as far as it goes. However, she does not address the various tolling exceptions to the statute of limitations. Neither does plaintiff. Therefore, the Magistrate Judge provides the tolling analysis below pursuant to the authority under 28 U.S.C. § 1915(e)(2).

The statute of limitations in § 1983 actions is tolled while prisoners exhaust their administrative remedies. *Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000). Plaintiff has attached a copy of a grievances to his complaint that he filed against NP Martin on October 16, 2013 alleging that NP Martin had been deliberately indifferent to his serious medical needs. (Doc. 2-6) The grievance board's response was unfavorable, and plaintiff appealed at every level. (Doc. 2-6, pp. 2-3 of 5) On December 19, 2013, the Deputy Commissioner of Operations for the Tennessee Department of Corrections concurred in the decision below, and the Deputy Commissioner's decision was received back at SCCF on December 23, 2013. (Doc. 2-6, p. 1 of 5)

As shown above, plaintiff began to pursue his administrative remedies against NP Martin on October 16, 2013 – three months (92 days) after the one year statute of limitations ran on July

16, 2013.  Consequently, the grievance plaintiff filed against NP Martin had no tolling effect on the statute of limitations.  Even giving plaintiff credit for the first of the seven grievances that he filed in connection with this case beginning on August 2, 2013, *i.e.*, grievance # 19758 against Dr. Jose Garriga, M.D., CCA Director of Health Services filed on August 2, 2013 (Doc. 2-3), using the July 16, 2012 start date, plaintiff filed that first grievance 17 days after the statute of limitations had run.  Consequently, none of the seven grievances filed by plaintiff, either individually or collectively, tolled the statute of limitations.

The doctrine of equitable tolling also applies to civil rights actions.  *See e.g., Brown v. Cuyahoga County, Ohio*, 517 Fed.Appx. 431, 434-35 (6ᵗʰ Cir. 2013).  The period of time when plaintiff underwent chemotherapy and radiation, and his recovery period thereafter, are obvious candidates for equitable tolling.

The record shows that plaintiff underwent chemotherapy and radiation from August 6 through September 23, 2013.  (Docs. 1, ¶ 23, p. 10; 270, p. 3)  As shown above at Fig. 1, p. 9, plaintiff's cancer was deemed to "resolved" on February 25, 2014.  The Magistrate Judge assumes without deciding that, all things considered equal, the statute of limitations would have been equitably tolled the entire time from August 6, 2013 to February 25, 2014 during plaintiff's chemotherapy and radiation treatment, and recovery thereafter.  However, because the one-year statute of limitations already had run on July 16, 2013, and because equitable tolling period would not have begun until August 6, 2013, *i.e.*, 21 days later, plaintiff's chemotherapy and radiation treatment, and recovery had no tolling effect on the statute of limitations.

As explained above, plaintiff did not file his complaint against NP Martin within the one-year statute of limitations required for § 1983 actions.  Consequently, NP Martin's motion for

summary judgment should be granted as a matter of law, plaintiff's federal claims against her should be dismissed with prejudice, and plaintiff's state law claims should be dismissed without prejudice to whatever relief plaintiff might be entitled in state court.

### 3. Nurse Karen Orton's Motion for Summary Judgment

Nurse Orton makes several arguments in support of her motion for summary judgment, including that plaintiff's claims are time barred because they were filed beyond the one-year statute of limitations. (Doc. 225, ¶ A, pp. 7-9) As shown below, Nurse Orton's statute-of-limitations argument is dispositive.

Once again, the first task is to determine when the one year statute of limitations began to run. The complaint alleges generally that Nurse Orton ignored him between July 2012 and May 2013. (Doc. 1, ¶ 2, p. 8) Plaintiff also asserts generally that Nurse Orton "had . . . s[een] [him] many times between July 2012 and April 2013 and repeatedly refused to order testing on the suspicious mass, until after cancer had developed . . . ." (Doc. 259, ¶ 35, p. 18) On the other hand, plaintiff notes specifically in his objection to Nurse Orton's declaration and statement of undisputed material facts that Nurse Orton prohibited from him from seeing Dr. Coble for "304 days" prior to May 3, 2013 when Dr. Coble first examined him. (Doc. 259, ¶ 8, p. 6) This unambiguous 304-day reference pinpoints the start date of the statute of limitations as to Nurse Orton as July 3, 2012.[14]

Based on the information provided by plaintiff in the pleadings, the one-year statute of

---

[14] The Magistrate Judge looked to plaintiff's December 15, 2013 grievance against Nurse Orton in an effort to zero in on the start date, but without luck. (Doc. 2-9) The grievance does not pertain to the claims that the complaint alleges; it grievance merely accuses Nurse Orton of disrespect, contempt, lack of compassion, and failure to follow protocol in the distribution of medications on December 13 and 15, 2013, and during the three months preceding those dates. (Doc. 2-9, p. 4 of 9) Although the complaint against Nurse Orton appears to be subject to dismissal for failure to exhaust, failure to exhaust is an affirmative defense, and Nurse Orton does not argue that plaintiff's claims against her are subject to dismissal on those grounds.

limitations as to Nurse Orton would have run on July 3, 2013. As previously established, plaintiff did not file his complaint until April 1, 2014. Therefore, unless otherwise tolled, plaintiff filed his complaint as to Nurse Orton nearly 9 months (272 days) after the statute of limitations had run. For the reasons explained above at pp. 18-19, the statute of limitations would not have been tolled while plaintiff pursued his administrative remedies or during his treatment and recovery because the time frame for both of those events occurred after the statute of limitations already had run.

As explained above, plaintiff did not file his complaint against Nurse Orton within the one-year statute of limitations required for § 1983 actions. Consequently, Nurse Orton's motion for summary judgment should be granted as a matter of law, plaintiff's federal claims against her should be dismissed with prejudice, and plaintiff's state law claims should be dismissed without prejudice to whatever relief plaintiff might be entitled in state court.

### III. CONCLUSION
### AND
### RECOMMENDATIONS

For the reasons explained above, the Magistrate Judge **RECOMMENDS** that: **1)** the motions for summary judgment filed by Dr. Coble, NP Martin, and Nurse Orton (Docs. 218, 223) be **GRANTED**; **2)** all federal law claims against Dr. Coble, NP Martin, and Nurse Orton be **DISMISSED WITH PREJUDICE**; **3)** the district court **DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION** over plaintiff's state law claims against Dr. Coble, NP Martin and Nurse Orton; **4)** plaintiff's state law claims be **DISMISSED WITHOUT PREJUDICE** to whatever relief plaintiff may be entitled in state court; **5)** acceptance and adoption of this R&R constitute the **FINAL JUDGMENT** in this action; **6)** any appeal **NOT BE CERTIFIED** as taken in good faith pursuant to 28 U.S.C. § 1915(a)(3).

**ENTERED** this the 2nd day of March 2017.

s/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge