# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

CALVIN O. TANKESLY, JR.,     )
                               )
    Plaintiff,             )
                               )     3:14 C 911
        v.               )     Hon. Marvin E. Aspen
                               )
KAREN ORTON,           )
                               )
    Defendant.         )

## MEMORANDUM OPINION AND ORDER

Calvin O. Tankesly, Jr. filed this 42 U.S.C. § 1983 action against Defendant Karen Orton, a nurse who provided medical care at the correctional facility where Plaintiff was a former inmate. Plaintiff alleges Defendant violated his Eighth Amendment rights under the United States Constitution through deliberate indifference to his medical needs during his cancer treatment and recovery. Presently before us are Plaintiff's motion in limine, Defendant's nine motions in limine, and Defendant's motion to bifurcate the trial. (Dkt. Nos. 330–39, 356.)

## STANDARD OF REVIEW

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S. Ct. 460, 463 (1984)). "The Federal Rules of Evidence, the Federal Rules of Criminal and Civil Procedure and interpretive rulings of the Supreme Court and this court all encourage, and in some cases require, parties and the court to utilize extensive pretrial procedures—including motions *in limine*—in order to narrow the issues remaining for trial and to minimize disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). Because a ruling on a

motion in limine is "subject to change as the case unfolds," this ruling constitutes a preliminary

determination in preparation for trial. *Luce*, 469 U.S. at 41, 105 S. Ct. at 463; *United*

*States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

The decision to bifurcate trial lies within the district court's discretion. *Specialty*

*Minerals, Inc. v. Dunbar Mech., Inc.*, 164 F. App'x 539, 541 (6th Cir. 2005); *In re Beverly Hills*

*Fire Litig.*, 695 F.2d 207, 216 (6th Cir. 1982). "For convenience, to avoid prejudice, or to

expedite and economize, the court may order a separate trial of one or more separate issues . . . ."

Fed. R. Civ. P. 42(b). *See also Saxion v. Titan-C-Mfg., Inc.*, 86 F.3d 553, 556 (6th Cir. 1996)

("A district court may bifurcate a trial 'in furtherance of convenience or to avoid prejudice, or

when separate trials will be conducive to expedition and economy.'" (quoting

Fed. R. Civ. P. 42(b)). However, bifurcation is "not to be the usual course" and is advisable only

when the court "believes that separation will achieve the purposes of the separate trial rule."

Wright & Miller, *Federal Practice and Procedure* § 2888 at 96 (3d ed. 2008).

## ANALYSIS

Plaintiff brings one motion in limine, which Defendant opposes. Defendant in turn

brings nine motions in limine, to which Plaintiff has responded. In addition, Defendant moves to

bifurcate the trial. We address each motion below.

## I. PLAINTIFF'S MOTION IN LIMINE

Plaintiff's sole motion in limine seeks to prevent Defendant from introducing evidence of

Plaintiff's two consecutive life sentences and the convictions and conduct that led to those

sentences. (Pl.'s Mot. (Dkt. No. 330).) Plaintiff has been in prison since 1997 when he was

sentenced to two life terms without parole for rape of a child, attempted rape of a child, and

attempted aggravated battery. (*See* Dkt. No. 354–1.) Plaintiff argues that the nature of these

crimes is "so abhorrent" that their disclosure to the jury would cause substantial prejudice and

mislead the jury.  (Pl.'s Mot. at 1; Mem. in Support of Pl.'s Mot. ("Mem.") (Dkt. No. 330–1)

at 2–3.)  Plaintiff seeks to limit references used to describe him at trial to "convicted felon,

inmate, prisoner, or any other generic nomenclature for one incarcerated."  (Pl.'s Mot. at 2.)

Federal Rule of Evidence 609(a)(1) provides that in a civil case, evidence of a felony

conviction "must be admitted, subject to Rule 403" for the purpose of "attacking a witness's

character for truthfulness by evidence of a criminal conviction."  Under Rule 403, a court "may

exclude relevant evidence if its probative value is substantially outweighed by a danger of one or

more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay,

wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Per Rule 403,

we must balance the probative value of the conviction evidence against its prejudicial potential,

and the "decision whether to admit prior convictions for impeachment is committed to the

discretion of the district court . . . ."  *United States v. Gaitan-Acevedo*, 148 F.3d 577, 591

(6th Cir. 1998).

There is no question that the fact of Plaintiff's status as a convicted felon is admissible.

Fed. R. Evid. 609(a) (evidence of prior felony conviction "must be admitted" unless substantially

outweighed by unfair prejudice per Rule 403).  Plaintiff does not dispute the jury will hear he is

in the custody of the state and he received his care through a state prison, South Central

Correctional Facility ("SCCF").  Plaintiff further concedes that references to him as a "convicted

felon, inmate, prisoner," or other terms for someone incarcerated are proper.  (Pl.'s Mot. at 2.)

Thus, the fact that Plaintiff is a convicted felon will be known to the jury.  *See Donald v. Wilson*,

847 F.2d 1191, 1198 (6th Cir. 1988), *abrogated on other grounds*, *Green v. Brock Laundry*

*Mach. Co.*, 490 U.S. 504, 525–26, 109 S. Ct. 1981, 1993 (1989) (finding of reduced prejudice of

conviction evidence "influenced by the fact that the jury already knew the plaintiff was a

convicted felon as the entire scenario unfolds in a jail"); *Moore v. Parker*, No. 5:13-CV-00081, 2016 WL 6871264, at *2 n.1 (W.D. Ky. Nov. 21, 2016) (recognizing *Donald* as good law).

Disclosure of Plaintiff's term of sentence, number of convictions, and nature of crimes, however, poses more difficult questions when balancing under Rule 403. Defendant opposes Plaintiff's motion, urging that the nature and seriousness of Plaintiff's crimes are essential to allow the jury to assess his credibility. (Resp. (Dkt. No. 354) at 2–3.) Defendant argues that sex crime convictions are "especially probative" of a witness's truthfulness in a case where "the central difference" pits the Plaintiff's credibility against the Defendant's. (*Id.*) Plaintiff would have us exclude all of these facts because their admission would make him out to be a "monster, full of evil, deserving no mercy" before a jury called to decide a case of a felon against healthcare providers who administered life-saving cancer treatment. (Mem. at 1–2.)

The animating rationale behind Rule 609(a) is "the 'proposition that one who has transgressed society's norms by committing a felony is less likely than most to be deterred from lying under oath.'" *King Joseph X v. Liberty Mut. Grp., Inc.*, No. 3:16 C 642, 2018 WL 691709, at *2 (W.D. Ky. Feb. 1, 2018) (quoting *Cummings v. Malone*, 995 F.2d 817, 826 (8th Cir. 1993)). However, "an appropriate case might exclude the names of specific crimes under Rule 403." *Cummings*, 995 F.2d at 826.

We believe "this is a close case" and, in balancing the equities, we weigh each piece of evidence accordingly. *Thomas v. McDowell*, No. 2:10 CV 152, 2014 WL 5305501, at *7 (S.D. Ohio Oct. 15, 2014) (allowing basic conviction evidence but remarking that the balancing "is a close case"); *see also, e.g.*, *Moore*, 2016 WL 6871264, at *2–3 (allowing basic conviction evidence but excluding substance or details of those convictions or references to plaintiff's status as a "death row" inmate). On the one hand, Plaintiff's main evidence appears to rely primarily on his testimony, making his credibility of "central" importance. (Resp. at 3.) The jury is

entitled to assess the seriousness of Plaintiff's crimes in determining his credibility and may do so through impeachment evidence of Plaintiff's term of years and number of convictions. *See, e.g.*, *Cummings*, 995 F.2d at 826 (finding number of convictions important to assess credibility).

The nature of Plaintiff's crimes, on the other hand, poses a higher risk of serious prejudice without adding much to the jury's credibility determination. Plaintiff's claims arise out of his bout with cancer, radiation therapies, and recovery while in state custody. These claims are wholly distinct from the reason he is incarcerated. We agree with Plaintiff that disclosure of the nature of his convictions would likely distract the jury from the narrow claims that are left for trial. *See United States v. Ford*, 17 F.3d 1100, 1103 (8th Cir. 1994) (upholding district court's determination that disclosure of witness's sexual offense "might inflame the jury" and "could easily . . . distract[] the jury from its task without adding any real probative information to their deliberations"). What is more, we are not convinced that the nature of Plaintiff's crimes would significantly aid the jury in assessing Plaintiff's credibility. *See Christmas v. Sanders*, 759 F.2d 1284, 1292 (7th Cir. 1985) (finding the district court "correctly noted that a conviction for rape was not highly probative of credibility"). On balance, any probative value of disclosing the nature of the Plaintiff's crimes or their details is substantially outweighed by the danger of unfair prejudice. *See, e.g.*, *Corning v. MTD Prod., Inc.*, No. C17-120, 2018 WL 1365822, at *1–2 (W.D. Wash. Mar. 16, 2018) (excluding child rape conviction and status as registered sex offender, but allowing fact of prior convictions for impeachment).

Accordingly, for the foregoing reasons, Plaintiff's motion in limine is granted in part and denied in part. We grant Plaintiff's motion insofar as Defendant is precluded from introducing evidence of the nature of Plaintiff's convictions or their details. However, Plaintiff's motion is denied as to Plaintiff's term of incarceration or number of convictions, which shall be allowed

into evidence.  We will also allow Defendant to refer to Plaintiff as a convicted felon, prisoner, inmate, or other term for a person who is incarcerated.[1]  "Of course, if Plaintiff opens the door to the details or identities of his prior convictions, then Defendant[] should be permitted to introduce evidence regarding the same."  *Corning*, 2018 WL 1365822, at *1.

## II.    DEFENDANT'S MOTIONS IN LIMINE

### A.    Defendant's Motions in Limine One and Eight

Defendant's Motion in Limine No. 1 seeks to exclude evidence about the care Plaintiff received (or allegedly failed to receive) from providers other than Defendant during the relevant timeframe.  (Dkt. No. 331.)  Specifically, Defendant moves to prevent Plaintiff from introducing evidence about any medical care he received prior to his cancer diagnosis or against dismissed defendants in Plaintiff's suit, including SCCF, where Plaintiff was formerly housed, or CoreCivic (formerly Corrections Corporation of America), the Defendant's employer.  (*Id.* at 1.) Defendant argues such evidence is irrelevant, will confuse the jury, and will substantially prejudice her because the Court dismissed all claims arising out of Plaintiff's care before his cancer diagnosis and all defendants named in Plaintiff's complaint except Defendant Orton. (*Id.* at 1–3 (citing Fed. R. Evid. 401–03).)

Likewise, Defendant's Motion in Limine No. 8 seeks to exclude evidence about aspects of Plaintiff's medical care that Defendant argues were beyond her control or that occurred without her personal involvement.  (Dkt. No. 338.)  Defendant asserts that evidence, for example, that doctors provided inadequate prescriptions to Plaintiff or that nutrition supplements

---

[1] Defendant also seeks to admit evidence of Plaintiff's conviction because it would allow the jury to assess Plaintiff's claim for mental damages by comparing the "loss of dignity" he suffered from his life sentence to that which he claims to have suffered under Defendant's care.

were in short supply during prison lockdowns were beyond Defendant's purview and, thus, irrelevant to proving Plaintiff's claims.[2]  (*Id.* at 1–2.)

In response, Plaintiff accedes to several of Defendant's points.  Plaintiff agrees that the trial is limited to "just" the Defendant's alleged deliberate indifference and "only" matters occurring after Plaintiff's cancer diagnosis.  (Dkt. No. 345 at 1.)  Plaintiff also recognizes that "a nurse cannot control lockdowns where movement is restricted in correctional facilities because of safety issues."  (Dkt. No. 353 at 1.)  However, Plaintiff argues that he should be able to "reference" SCCF, CoreCivic, and "seeing and interacting with other caregivers, guards, or inmates within the physical proximity" of his interactions with Defendant.  (Dkt. No. 345 at 1.)  Plaintiff argues that he should be permitted to testify that he has personally witnessed nurses distribute or withhold medication or supplements from inmates.  (Dkt. No. 353 at 1.)  He also contends he should be allowed to introduce evidence that nurses may order medications or supplements or manage their distribution, presumably for the purpose of showing that Defendant did control these aspects of Plaintiff's care.  (*Id.*)

"Evidence is relevant if it (a) has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401.  Although irrelevant evidence should be excluded, Fed. R. Evid. 402, "the relevance threshold is very low under Rule 401."  *United States v. Whittington*, 455 F.3d 736, 739 (6th Cir. 2006).

The matters remaining in this case are narrow.  The only question is whether Defendant acted with deliberate indifference toward Plaintiff after he was diagnosed with cancer in April or May 2013 and before he went into remission in February 2014.  (Summ. J. Op. (Dkt. No. 309)

---

[2] Although Defendant does not cite a Federal Rule of Evidence as grounds for excluding the evidence of medical care outside of Defendant's control, her argument reduces to one of relevance.  Thus, we will apply the standards under Rules 401 and 402.

at 11, 15, 42.)  Given Plaintiff does not oppose Defendant's motion to bar him from introducing evidence to show mistreatment or deliberate indifference toward him either by persons *other* than Defendant, or by any person *before* his cancer diagnosis, we grant Defendant's Motion in Limine No. 1.  However, it may be impossible for Plaintiff to avoid referring to other persons or entities that may at one time have been named as defendants, like where he lived (SCCF) or other providers (who may have worked for CoreCivic) who were present when he received care from Defendant.  While Plaintiff thus may incidentally reference previously dismissed defendants, he may not relitigate claims or parties this Court has already dispensed with, nor may he reference his prior suits against them.  *See Cooper v. Montgomery Cty., Ohio*, No. 3:13 C 272, 2018 WL 272523, at *3 (S.D. Ohio Jan. 2, 2018) (granting defendant's motion to exclude evidence of dismissed claims as irrelevant and presenting substantial danger of unfair prejudice); *Moore v. Bannon*, No. 10-12801, 2012 WL 2154274, at *7 (E.D. Mich. June 13, 2012) (recognizing the "common practice" of excluding dismissed claims and issues).

As to Defendant's Motion in Limine No. 8, we largely agree that evidence of matters outside Defendant's control are irrelevant to Plaintiff's claims.  Conversely, evidence that Defendant controlled (*i.e.*, could act upon or omit) aspects of Plaintiff's cancer and recovery care is relevant.  *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012) (Eighth Amendment claim requires demonstrating "'acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs'" (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)).  Plaintiff should not pursue argument at trial that seeks to implicate Defendant in a wider web of misfortunes, such as prison lockdowns, that are plainly outside Defendant's control.  However, as we will better be able to assess the relevance of this type of evidence when specific instances arise, we will take Defendant's Motion in Limine No. 8 under advisement at this time.

## B.     Defendant's Motions in Limine Two and Five

Defendant brings two motions seeking to prevent evidence that she argues would amount to improper expert testimony.  Defendant's Motion in Limine No. 2 seeks to prevent Plaintiff from testifying as to the applicable medical standard of care, the medical care Plaintiff believes he should have received, or medical causation.  (Dkt. No. 332 at 1.)  Defendant argues that medical causation requires a medical expert qualified under Rule of Evidence 702, and that Plaintiff has improperly tried to offer such medical evidence throughout the litigation. (*Id.* at 1–2.)  Defendant's Motion in Limine No. 5 argues Plaintiff should be barred from offering evidence that the policies, procedures, or customs of CoreCivic or SCCF were "inappropriate" or demonstrate deliberate indifference toward Plaintiff.  (Dkt. No. 335 at 1.)  Defendant contends that the appropriateness of prison policies or procedures can be assessed only by a qualified expert and, in any event, is irrelevant to Plaintiff's claims.  (Dkt. 335 at 1–2.)

Plaintiff responds to both motions that he may testify to what he witnessed, perceived, and experienced, while acknowledging that he is neither a "medical care expert" nor responsible for prison policies.  (Dkt. Nos. 347, 350.)  Regarding Motion in Limine No. 2, Plaintiff asserts that his testimony is "his own proof of physical injury," which he can relate through his own sense perceptions and eyewitness interactions with Defendant.  (Dkt. No. 347 at 1.)  As for Motion in Limine No. 5, Plaintiff argues that he should be able to testify to his experiences with prison policies during his decades as an inmate.  (Dkt. No. 350.)  In addition, Plaintiff asserts counsel will instruct Plaintiff not to assume specialized knowledge of what is appropriate in a correctional setting.  (*Id.*)

As a lay witness, Plaintiff may testify to what he personally witnessed and experienced through his perceptions if helpful to clearly understand his testimony or to determine a fact in issue, so long as his testimony is not based on specialized knowledge.  Fed. R. Evid. 701.

Plaintiff is competent to testify to his "personal observations of injuries or symptoms that are within the common realm of knowledge" during his cancer care and recovery. *McDonald v. City of Memphis*, No. 2:12 C 2511, 2016 WL 8201168, at *5 (W.D. Tenn. Aug. 26, 2016); *see also Jama v. City of Memphis*, No. 03-2965, 2006 WL 5499283, at *3 (W.D. Tenn. Dec. 29, 2006) (lay witness competent to testify that a laceration was caused by a sharp object, but not causation of non-obvious ailments). However, testimony about the applicable or appropriate medical standard of care would require the "scientific, technical, or other specialized knowledge" of a qualified expert. Fed. R. Evid. 701(c); *see Simpson v. Bredesen*, No. 2:10 C 02950, 2015 WL 5655999, at *6 (W.D. Tenn. Sept. 24, 2015) (incarcerated plaintiff not an expert on adequacy of medical training). As Plaintiff is not a medical expert, his testimony may not reflect opinions on proper medical standards or appropriate care. Likewise, as a lay witness, Plaintiff is not generally qualified to draw connections between treatment he was prescribed or received and its effects. *See United States v. Lang*, 717 F. App'x 523, 537 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 1179 (2018) (doctor called as lay witness permitted to testify about facts and treatment of patient, but not the connection between the two, *i.e.*, "why treatment was medically necessary or appropriate"); *see also Cooper*, 2018 WL 272523, at *3 (lay witness permitted to testify to physical changes experienced and observed, but not to draw conclusion that sleep deprivation caused them); *McDonald*, 2016 WL 8201168, at *5 (observing "limits" to lay testimony on medical causation, which usually requires a medical expert). We thus grant Defendant's Motion in Limine No. 2. (Dkt. No. 332.) Plaintiff is barred from offering testimony as to the applicable medical standard of care, the medical care Plaintiff believes he should have received, or medical causation. However, Plaintiff may testify to his own experiences and sensations.[3]

---

[3] Defendant's Motion in Limine No. 2 also seeks to bar Plaintiff from testifying that Defendant caused Plaintiff's injuries because Plaintiff did not specifically attribute any harm to Defendant

As for Defendant's Motion in Limine No. 5, we have already determined that evidence may not be offered against dismissed defendants, including CoreCivic and SCCF, to show that they mistreated or showed deliberate indifference toward Plaintiff. This includes evidence concerning those entities' policies, procedures, or customs. Plaintiff has offered no reason why such evidence would be relevant to proceedings focused on the sole remaining Defendant. We therefore grant Defendant's Motion in Limine No. 5 to prevent Plaintiff from introducing evidence that CoreCivic or SCCF's policies, procedures, or customs were "inappropriate" or demonstrated deliberate indifference toward Plaintiff or other inmates. (Dkt. No. 335.)

### C. Defendant's Motion in Limine Three

Defendant's Motion in Limine No. 3 requests we bar evidence of (1) healthcare provided (or not) to other inmates; and (2) evidence of grievances, complaints, or lawsuits filed by other inmates involving Defendant, CoreCivic, or SCCF. (Dkt. No. 333 at 1.) Defendant asserts that these two categories of evidence are irrelevant, amount to impermissible character evidence, should not be allowed to establish evidence of Defendant's habit or custom, and constitute improper expert testimony. (*Id.* at 2–3.)

Plaintiff largely agrees that he "must not speak for others," will "speak of his own grievances," and "knows to not bring up the lawsuits of others in the past as proof of his own claims of injury." (Dkt. No. 348 at 1.) Plaintiff's sole objection to Defendant's motion seeks to preserve Plaintiff's ability to testify about Defendant's habits in dealing with Plaintiff. (*Id.* at 1–2.)

---

in an interrogatory filed in discovery. (Dkt. No. 332 at 3–4.) This argument is unavailing. Although Defendant may use the interrogatory response as impeachment material, Plaintiff does not waive the right to testify to these matters at trial because of an inconsistent interrogatory given in discovery. *See Walker v. Mulvihill*, 83 F.3d 423 (table), 1996 WL 200288, at *4 (6th Cir. 1996) (district court erred by failing to admit inconsistent interrogatory as impeachment material); *Freed v. Erie Lackawanna Ry. Co.*, 445 F.2d 619, 621 (6th Cir. 1971) (interrogatory answer is not an admission binding on the trier of fact).

Federal Rule of Evidence 406 allows evidence of habit or routine practice to be admitted "to prove that on a particular occasion the person or organization acted in accordance with the habit or routine practice." Fed. R. Evid. 406. "[T]he offering party must establish the degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature." *Infocision Mgmt. Corp. v. Found. for Moral Law Inc.*, No. 5:08 CV 1342, 2011 WL 3022002, at *4 (N.D. Ohio July 22, 2011) (quoting *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988)). Evidence of less than a habit—that is, a tendency or isolated acts—is not admissible to show conformity with that tendency, but may be used to show something else, "such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); 404(a) (prohibiting character evidence to show conformity); 404(b)(1) (prohibiting evidence of past acts to show conformity).

Plaintiff provides no detail as to how his testimony would show that Defendant's actions with others amounted to a nearly automatic, specific, frequent, and uniform response to the same stimuli. *See Infocision*, 2011 WL 3022002, at *4 (burden of demonstrating habit rests with proponent (citing *Weil v. Seltzer*, 873 F.2d 1453, 1460–61 (D.C. Cir. 1985)). Absent habit evidence, Plaintiff's examples may show only a tendency of Defendant to act a certain way. But Plaintiff may not use Defendant's tendencies toward other inmates to show that she acted likewise with Plaintiff. Fed. R. Evid. 404(a), (b)(1). Plaintiff makes no argument that any permissible reasons to admit such evidence apply in this case, and we can think of none. *See Houchins v. Jefferson Cty. Bd. of Educ.*, No. 3:10-CV-147, 2013 WL 811723, at *1–2 (E.D. Tenn. Mar. 5, 2013) (preventing plaintiff in sexual harassment suit from offering five other witnesses who claimed similar conduct from defendant under both Rules 406 and 404).

As Plaintiff agrees to all aspects but one of Defendant's Motion, and Plaintiff's sole objection is unavailing, we grant Defendant's Motion in Limine No. 3. Plaintiff should not introduce evidence of other inmates' medical treatment or complaints, grievances, or lawsuits filed by other inmates against Defendant or other entities.

### D.    Defendant's Motion in Limine Four

Defendant's Motion in Limine No. 4 seeks to exclude out-of-court statements made by Dr. Robert Coble or any other CoreCivic personnel regarding their opinions or observations of Defendant's care of Plaintiff. (Dkt. No. 334 at 1.) Plaintiff argues he may reference documents "he saw with Dr. Coble, related to CoreCivic or SCCF, or other hospitals where [Plaintiff] went" and may "reference seeing and interacting with other caregivers, guards, or inmates and documents he may have seen in their proximity." (Dkt. No. 349 at 1–2.) Plaintiff also wishes to preserve the right to present documents for impeachment purposes should the need arise under Federal Rules of Evidence 607, 608, 612, and 613. (*Id.* at 1.)

Rule 801(c) defines hearsay as any statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay evidence is inadmissible unless an exception applies by statute or other rule. Fed. R. Evid. 802. Out-of-court statements not offered to prove the truth of their contents are not hearsay. *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009); *King v. Hamblen Cty. Bd. of Educ.*, No. 2:14 CV 00249, 2016 WL 9175508, at *8 (E.D. Tenn. June 8, 2016). For example, a statement offered not for its truth but for its "effect on the listener is not hearsay." *Biegas*, 573 F.3d at 379. Statements not excluded from the hearsay rule may still fall under an exception to allow admissibility. Fed. R. Evid. 803 (listing exceptions).

Plaintiff specifies no hearsay exclusion or exception that would allow substantive testimony about "documents he saw with Dr. Coble" or related to CoreCivic, SCCF, or other hospitals he visited. (Dkt. No. 349 at 1.) We too are hard-pressed to find any that may apply.

However, Plaintiff argues certain out-of-court statements may be used to impeach Defendant's witnesses. (Dkt. No. 349 at 1.) Since Defendant intends to call Dr. Coble to testify (*see* Def.'s Witness List (Dkt. No. 367 at 1)), Plaintiff may have occasion on cross-examination to refresh Dr. Coble's memory through writings that would otherwise be hearsay. *See* Fed. R. Evid. 612; *Rush v. Illinois Cent. R. Co.*, 399 F.3d 705, 716 (6th Cir. 2005) (permitting a writing to refresh witness's memory in district court's discretion and describing proper procedures). Plaintiff may also have opportunity to impeach Dr. Coble through inconsistent statements made in declarations he has filed under penalty of perjury in this case (Dkt. Nos. 42, 148–1).

We agree with Defendant that referencing out-of-court documents Plaintiff saw with Dr. Coble or related to CoreCivic, SCCF, or other hospitals are inadmissible hearsay without an exception and will not be allowed at trial in Plaintiff's affirmative case. However, as Plaintiff may have occasion to use out-of-court statements for impeachment or cross-examination, we will take Defendant's motion under advisement insofar as Plaintiff may argue for the use of such statements in specific cases. Defendant's motion is thus granted in part and taken under advisement in part.

### E. Defendant's Motion in Limine Six

Defendant's Motion in Limine No. 6 seeks to preclude Plaintiff from offering evidence comparing the treatment he received from Defendant to the care he received or is receiving at "other facilities," from "other third party medical providers," or from other SCCF nurses. (Dkt. No. 336 at 1.) For example, Defendant argues we should exclude evidence that she

showed an ill motive when she, unlike other nurses, refused Plaintiff his medication at the pill-call window until he returned with his identification.  (*Id.*)  Defendant argues that these categories of evidence are irrelevant to proving Plaintiff's claims and that comparing Defendant to other providers would allow Plaintiff to present an improper medical opinion.  (*Id.* at 2.)

Plaintiff responds that he will testify to what he personally witnessed or experienced, including "his experiences with Defendant Orton and other caregivers throughout his life." (Dkt. No. 351 at 1.)  Plaintiff also argues that under Rule 701, he may offer a lay opinion comparing the ways he has been treated medically, socially, or physically, including "comparing one instance where he was given comfort and where he was not."  (*Id.*)

Plaintiff's deliberate indifference claim may involve showing that Defendant "intentionally interfer[ed] with the treatment" he had been prescribed.  *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291.  Part of that inquiry includes whether Defendant "subjectively perceived" a "substantial risk" to Plaintiff that she then disregarded.  *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).  Plaintiff may demonstrate Defendant's subjective perceptions "in the usual ways, including inference from circumstantial evidence."  *Farmer v. Brennan*, 511 U.S. 825, 842, 114 S. Ct. 1970, 1981 (1994).  As such, evidence of Defendant's knowledge of the care Plaintiff received from other providers, or of the orders given for care of Plaintiff's serious medical needs, may be probative.  For example, Plaintiff's testimony that other providers dispensed nutritional supplements to Plaintiff in Defendant's presence may be probative to show Defendant's subjective perceptions of the care he was supposed to receive.  Likewise, per Rule 701, a witness may offer an opinion if his testimony is "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [expert testimony]."  Fed. R. Evid. 701.  To the extent Plaintiff's testimony is

15

based on his own perceptions and related to the knowledge Defendant may have had or inferred from Plaintiff's interactions with other providers, that evidence will be allowed.

However, mere comparisons between the care Plaintiff received from Defendant and the care he received from other medical providers, past or current, would not be probative of whether Defendant acted with "deliberate indifference" toward Plaintiff. As Defendant correctly asserts, Plaintiff's claim is not for negligence. (Dkt. No. 336 at 3.) To the degree that such evidence would be used to show simply that Plaintiff received better or more consistent care from other people, it should be excluded as irrelevant. We therefore grant in part this portion of Defendant's Motion.

As for the portion of Defendant's Motion that seeks to exclude Defendant's actions toward Plaintiff at the pill-call window, we think that a jury could find this incident probative of whether Defendant "intentionally interfer[ed] with the treatment once prescribed," *Estelle*, 429 U.S. at 105, 97 S. Ct. at 291. Plaintiff should be free to present evidence to prove these facts, should he choose, and this portion of Defendant's Motion is denied.

### F. Defendant's Motions in Limine Seven and Nine

Plaintiff generally agrees to two of Defendant's motions in limine. One, Defendant's Motion in Limine No. 7, would exclude evidence that Defendant filed a false disciplinary report against Plaintiff or caused Plaintiff to lose his prison job. (Dkt. No. 337 at 1.) Plaintiff agrees that he "should not speak of any false disciplinary reports or retaliation by Defendant, unless they are within the timeframe of the claim before the jury." (Dkt. No. 352.) Plaintiff's previous allegations regarding retaliation or disciplinary reports fall outside the relevant timeframe. (Dkt. No. 13 ¶¶ 16–17 (employment action in May 2014); *see also* Dkt. No. 19 ¶ 29 (alleged false disciplinary report in June 2014).) Seeing no material disagreement, we grant Defendant's Motion in Limine No. 7.

Defendant's Motion in Limine No. 9 is likewise uncontested.  Defendant seeks to bar evidence concerning employment actions, evaluations, complaints or discipline against Defendant.  (Dkt. No. 339 at 1.)  Specifically, she objects to Plaintiff's attempts throughout discovery to submit evidence of other inmates' complaints, suits, and grievances against Defendant.  (*Id.* at 2.)  Plaintiff concedes in response that he will not refer to lawsuits or grievances filed against Defendant except for his own in the relevant time period, May 2013 through February 2014.  (Dkt. No. 355.)  As the parties agree to these limitations, we grant Defendant's Motion in Limine No. 9.

## III.    DEFENDANT'S MOTION TO BIFURCATE

Defendant next moves to bifurcate the trial into two phases.  (Dkt. No. 356 at 1.) Defendant proposes that during the first phase of trial, the jury should consider whether Defendant is liable, and if so, whether compensatory damages should be awarded and in what amount.  (*Id.*)  Defendant asserts the second phase of trial, if necessary, will determine the amount of punitive damages.  (*Id.*)  Defendant simultaneously moves to preclude Plaintiff from offering evidence of Defendant's personal financial condition as "evidence of punitive damages" during the first proposed phase of trial.  (*Id.* at 2–3.)  Defendant argues that Defendant's financial situation is "highly personal and confidential," and admission of such evidence would cause unfair prejudice or confuse the jury.  (*Id.*)  Plaintiff does not object to bifurcating the trial as Defendant proposes.  (Dkt. No. 362 at 1.)

The parties' agreement, however, does not end our inquiry.  The decision to try issues in separate proceedings must advance the goals of convenience, expeditiousness, economy, or avoiding prejudice.  Fed. R. Civ. P. 42(b).  Although the parties fail to specify what goals bifurcation would advance in this case, their agreement to bifurcate suggests at a minimum that it would be convenient for them to adopt this format.  We also agree that bifurcation has the

potential to economize proceedings: if the jury finds in the first phase that Defendant is not liable, the need to present evidence going only to the amount of punitive damages would be avoided entirely. *See, e.g.*, *Gilbert v. State Farm Mut. Auto. Ins. Co.*, 311 F.R.D. 685, 687 (M.D. Fla. 2015) (bifurcating liability and damages phases to avoid spending "additional time presenting evidence on Plaintiff's damages in the event Plaintiff is barred from recovery").

In addition, Defendant's argument is well taken that presenting her financial affairs before she is found liable may prejudice her before the jury. (*See* Dkt. No. 356 at 2.) Evidence of a defendant's financial condition is not relevant to either the liability or compensatory damages determinations and may instead mislead the jury on those inquiries. *Vasbinder v. Ambach*, 926 F.2d 1333, 1344 (2nd Cir. 1991); *Rotello v. Clayton Homes of Del., Inc.*, No. 303CV-573, 2006 WL 842931, at *1 (E.D. Tenn. Mar. 28, 2006) (finding that "a single trial including both liability for and amount of punitive damages would be unduly prejudicial . . . and potentially confusing to the jury"). Although this case sounds in federal law, we find persuasive authority in the common practice of the state in which we sit, which will bifurcate as a matter of course when punitive damages are possible. *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (mandating bifurcation upon defendant's motion when punitive damages are sought). In Tennessee, trials are routinely split into a first phase to determine liability, compensatory damages, and entitlement to punitive damages, and a second phase to determine amount of punitive damages. *Id.* Only during the second phase is evidence of a defendant's financial affairs, condition, or net worth admissible. *Id.*; *see also Werner v. Bell Family Med. Ctr., Inc.*, No. 3:09 C 0701, 2012 WL 1514872, at *4 (M.D. Tenn. May 1, 2012)

(deferring consideration of defendant's financial affairs until second phase of bifurcated trial).

Defendant proposes, without objection, precisely this model.[4]

We thus elect to exercise our discretion to grant bifurcation in this case. As proposed by the parties, during the first phase of trial, the jury will be instructed to decide Defendant's liability, the liability and amount of compensatory damages, and liability for (but not amount of) punitive damages. No evidence of Defendant's net worth or financial position, condition, or affairs shall be allowed to enter into evidence in the first phase of trial. If the jury determines punitive damages are warranted, the parties may present additional evidence as to the amount of punitive damages during the second phase of trial, and the jury will then be called to determine the award. If Defendant wishes for the jury to consider a lower punitive damage award due to her inability to pay, the burden is on her to show evidence of her limited financial means during the second phase of trial. *Johnson v. Howard*, 24 F. App'x 480, 488 (6th Cir. 2001). To avoid any additional delay, the parties should be prepared to proceed to the punitive damages phase immediately after the jury returns a verdict on the first phase, if necessary. *Werner*, 2012 WL 1514872, at *4 (citing *Hodges*, 833 S.W.2d at 901).

Although we grant bifurcation, Defendant's motion also seeks to bar Plaintiff from introducing other evidence that might impact the eventual amount of punitive damages during the first phase of trial. (Dkt. No. 356 at 1.) Defendant's request is broad and would exclude any reference to punitive damages during the first phase of trial, including during opening statements. (*Id.* at 3.) Defendant argues that evidence of punitive damages in any part of the

---

[4] Although Defendant is silent as to when the jury would determine liability for punitive damages, she has submitted a proposed verdict form that would have the jury simultaneously determine Defendant's liability, amount of compensatory damages, and Plaintiff's entitlement to punitive damages. (Dkt. No. 373.) Defendant also suggests a punitive damage jury instruction to be given at the end of the first phase of trial. (Dkt. No. 381 at 1.) We thus assume that entitlement to punitive damages would be determined in the first phase under Defendant's proposal.

first phase would be "irrelevant" before the jury finds Defendant liable. (*Id.* at 3.) Plaintiff strongly objects to a bar on discussing punitive damages, arguing that he is entitled to seek punitive damages in this case and that the facts presented in the first phase of trial would necessarily go to whether Defendant's conduct reached the requisite standard to award punitive damages.[5] (Dkt. No. 362 at 1–2.)

Plaintiff is correct that punitive damages are available in cases brought under 42 U.S.C. § 1983. *Smith v. Wade*, 461 U.S. 30, 56, 103 S. Ct. 1625, 1640 (1983); *King v. Zamiara*, 788 F.3d 207, 216 (6th Cir. 2015). In assessing liability for punitive damages, the jury must determine whether a defendant's conduct evinced "evil motive and intent," "callous indifference," or "reckless disregard of the plaintiff's rights." *King*, 788 F.3d at 216. Neither Plaintiff nor the Court can be expected to parse which evidence of Defendant's conduct might speak only to Defendant's deliberate indifference to Plaintiff's rights, to be addressed in the first phase of trial, and Defendant's "callous indifference" or "reckless disregard" of those rights, to be addressed second, as Defendant proposes. *Estelle*, 429 U.S. at 104, 97 S. Ct. at 291; *King*, 788 F.3d at 216. Indeed, the jury will be called upon at the end of the first phase to decide whether punitive damages are appropriate, and both Plaintiff and Defendant have filed jury instructions calling for an instruction on punitive damages to be given at the end of this first phase. (Dkt. Nos. 378, 381.)

Because the jury will be asked to determine the availability of punitive damages simultaneous with liability and compensatory damages, we deny the portion of Defendant's motion that would bar all reference to punitive damages in the first phase of trial.

---

[5] Plaintiff also argues that punitive damages would be appropriate to deter Defendant's employer, CoreCivic, from similar conduct in the future. (Dkt. No. 362 at 2.) However, only Defendant Orton's conduct will be assessed in this trial. (Summ. J. Op. at 48.)

(Dkt. No. 356.)  Per our order to bifurcate, the only evidence that will be reserved exclusively for the second phase of trial will be that regarding Defendant's financial affairs or net worth.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion in Limine is granted in part to exclude references to the nature and details of Plaintiff's convictions, and denied in part as to disclosure of Plaintiff's term of sentence, number of convictions, or status as a felon.  (Dkt. No. 330.) Defendant's Motion in Limine Nos. 1, 2, 3, 5, 7, and 9 are granted.  (Dkt. Nos. 331, 332, 333, 335, 337, 339.)  Defendant's Motion in Limine No. 4 is granted in part to exclude out-of-court statements or documents relating to Dr. Coble, CoreCivic, SCCF, or other hospitals, and taken under advisement in part if such statements become relevant for impeachment.  (Dkt. No. 334.) Defendant's Motion in Limine No. 6 is granted in part to exclude comparisons between Plaintiff's medical care from Defendant and from other providers.  (Dkt. No. 336.)  It is denied in part insofar as Plaintiff may show care from others within Defendant's knowledge or relate his experiences with Defendant at the pill-call window.  (*Id.*)  Defendant's Motion in Limine No. 8 is taken under advisement.  (Dkt. No. 338.)

Defendant's motion to bifurcate trial is granted in part and denied in part.  (Dkt. No. 356.) The jury shall determine liability, availability and amount of compensatory damages, and availability of punitive damages in the first phase and, if necessary, amount of punitive damages in the second phase.  Plaintiff may refer to punitive damages in the first phase, and the only evidence excluded from the first phase shall be evidence of Defendant's financial condition.

It is so ordered.

_____
Marvin E. Aspen
United States District Judge

Dated: October 11, 2018
　　　　Chicago, Illinois